## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

BURNS & WILCOX, LTD.          Hon.
a Michigan corporation,          Case No.

      Plaintiff,

v.

CRC INSURANCE SERVICES INC., an Alabama
corporation; DONALD RICHARD CARSON, SR.,
an individual resident of Texas; SHEILA A. HAILEY, an
individual resident of Texas; DONALD R. CARSON, JR.,
an individual resident of Texas; GREGORY T. WATSON,
an individual resident of North Carolina; WILLIAM LEE
COLEMAN, an individual resident of North Carolina;
PAIGE GIBSON, an individual resident of North Carolina,
AMANDA N. RUPPEL, an individual resident of Florida,
STEVE PAGE, an individual resident of Florida,
JOHN B. SUTTON, an individual resident of Florida, and
ALICIA APPEL, an individual resident of Florida,
jointly and severally.

      Defendants.
_____/

**MANTESE HONIGMAN, P.C.**
*Attorneys for Plaintiff*
Gerard V. Mantese (P34424)
Douglas L. Toering (P34329)
Kenneth R. Chadwell (P39121)
1361 E. Big Beaver Road
Troy, MI  48083
(248) 457-9200
gmantese@manteselaw.com
dtoering@manteselaw.com
kchadwell@manteselaw.com

## VERIFIED COMPLAINT AND JURY DEMAND

## VERIFIED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff BURNS & WILCOX, LTD. by and through its attorneys, Mantese Honigman, P.C. and for its VERIFIED COMPLAINT against Defendants DONALD RICHARD CARSON, SR., CRC INSURANCE SERVICES INC., SHEILA A. HAILEY, DONALD R. CARSON, JR., GREGORY T. WATSON, WILLIAM LEE COLEMAN, PAIGE GIBSON, AMANDA RUPPEL, STEVEN PAGE, JOHN B. SUTTON, and ALICIA APPEL, states as follows:

## INTRODUCTION

1.     As set forth more fully below, this case arises out of a targeted scheme: (1) to improperly solicit and hire employees from Plaintiff BURNS & WILCOX, LTD. ("BURNS & WILCOX"), one of North America's leading insurance wholesale brokers and underwriting managers, for the benefit of Defendant CRC INSURANCE SERVICES INC. ("CRC"), a direct competitor of BURNS & WILCOX; and (2) to wrongfully gain access to (and use) confidential, proprietary information and trade secrets belonging to BURNS & WILCOX, for the benefit of CRC and to the detriment of BURNS & WILCOX.

2.     On Friday morning, October 18, 2019, Defendant Donald Richard Carson, Sr. ("Carson, Sr.") was working at the Dallas/Ft. Worth office of BURNS & WILCOX.  He was serving as a corporate officer (Executive Vice President and

Managing Director) and had been employed at BURNS & WILCOX for more than 30 years.

3.     That afternoon Carson, Sr. stood up on a table at Burns & Wilcox's Dallas/Ft. Worth office and announced to the gathered employees that he was immediately resigning from BURNS & WILCOX, to work with the Dallas office of Defendant CRC.

4.     At that same meeting, two other key BURNS & WILCOX employees (Defendants Sheila Hailey and Don R. Carson, Jr.) from the Dallas/Ft. Worth office also announced their resignations to join Carson, Sr. at his new employer, the Dallas office of Defendant CRC.

5.     Just days previously, two other key BURNS & WILCOX employees from its Charlotte, North Carolina office had abruptly resigned to move to the CRC office in North Carolina, and three additional key employees from BURNS & WILCOX'S Tampa, Florida office also abruptly resigned, to join CRC's Florida office.

6.     One week later, two more BURNS & WILCOX employees abruptly resigned from BURNS & WILCOX: one more from the North Carolina office and one from the Tampa office.

7.     For the reasons set forth below, BURNS & WILCOX believes that Carson, Sr. has been and is continuing to improperly solicit BURNS & WILCOX

employees for CRC, is violating his fiduciary obligations to BURNS & WILCOX, is wrongfully providing to CRC confidential, proprietary information and trade secrets belonging to BURNS & WILCOX, is encouraging BURNS & WILCOX employees to violate their contractual obligations to BURNS & WILCOX, and that, unless stopped, he and other defendants will continue to improperly solicit and hire BURNS & WILCOX employees for CRC, and will wrongfully and improperly use confidential and proprietary business information belonging to BURNS & WILCOX to do so.

8.     Plaintiff BURNS & WILCOX demands trial by jury as to all issues and all parties as to which there has been no contractual waiver of the right to trial by jury.

## THE PARTIES, JURISDICTION AND VENUE

9.     Plaintiff **BURNS & WILCOX** is a large insurance wholesale broker and underwriting manager that specializes in securing insurance coverage for hard-to-place risks across the United States and Canada.

10.     BURNS & WILCOX is a Michigan corporation, and it maintains its principal place of business and corporate headquarters in Farmington Hills, Michigan.

11.     BURNS & WILCOX also maintains United States offices in: Birmingham, AL; Scottsdale, AZ; Little Rock, AR; Fresno, Los Angeles,

Sacramento, San Diego, San Francisco and Woodland Hills, CA; Denver and Fort Collins, CO; Daytona Beach, Orlando, and Tampa, FL; Atlanta, GA; Chicago, IL; Indianapolis, IN; Overland Park, KS; Baton Rouge, Monroe and New Orleans, LA; Baltimore, MD, Grand Rapids, MI, Minneapolis, MN, St. Louis, MO; Las Vegas NV; Parsippany, NJ; Albuquerque, NM; Charlotte, Morehead City and Wilmington, NC; New York City, NY; Cleveland, OH; Philadelphia and Pittsburgh, PA; Charleston and Myrtle Beach, SC; Nashville, TN; Dallas and North Dallas, Frisco, Houston, and San Antonio, TX; and Milwaukee, WI.

12.     BURNS & WILCOX employs approximately 995 employees across the United States.

13.     Defendant **CRC INSURANCE SERVICES INC.** operates as a wholesale insurance broker that offers property insurance for various risks.  CRC operates across the United States, and it has offices in many of the same locations that BURNS & WILCOX has offices.

14.     CRC is a competitor of BURNS & WILCOX.

15.     CRC is a subsidiary of BB&T Corporation, a bank holding company based in Winston-Salem, that operates branches in 15 states and offers banking, securities brokerage, asset management, mortgage and insurance products and services.

5

16.     Upon information and belief, CRC Insurance Services, Inc. is a citizen of the State of Alabama.

17.     Upon information and belief, CRC is an Alabama corporation, and its principal place of business and corporate headquarters is located at 1 Metroplex Drive Suite 400 Birmingham, AL 35209.

18.     According to its website, CRC maintains offices in at least the following locations in the United States: Chicago, IL; Denver, CO; Detroit, MI; Ft. Worth, San Antonio, and Houston, TX; Jackson, MS; Kansas City and St. Louis, MO; Little Rock, AR; Los Angeles, Sacramento, San Francisco, San Diego and Woodland Hills, CA; Minneapolis, MN; New Orleans, LA; Oxford, MS; Philadelphia PA; Salt Lake City, UT, and Scottsdale, AZ.

19.     Upon information and belief, CRC does business in the State of Michigan out of its "Detroit" office location at 40600 Ann Arbor Rd. E., Suite 201, Plymouth, MI 48170.

20.     CRC Insurance Services, Inc. carries on a continuous and systematic part of its general business within the State of Michigan.

21.     However, upon information and belief, CRC Insurance Services, Inc. is not a citizen of the State of Michigan.

22.     Upon information and belief, Defendant **DONALD RICHARD CARSON, SR**., is a citizen of the State of Texas.

6

23.     Before he resigned on October 18, 2019, Carson Sr. was a corporate officer of BURNS & WILCOX (Executive Vice President, Managing Director), one of only four executive vice presidents of BURNS & WILCOX.  Carson, Sr. had also been Managing Director for about 20 years prior to becoming Executive Vice President.

24.     For many of Carson Sr's 30+ years of employment with BURNS & WILCOX, he was the highest-paid employee in the company.

25.     Upon information and belief, Defendant **SHEILA A. HAILEY** is a citizen of the State of Texas.

26.     Until she resigned on October 18, 2019, Ms. Hailey was a corporate officer of Burn & Wilcox (Corporate Vice President & Director, Underwriting and Operations) and she worked at the Dallas/Ft. Worth BURNS & WILCOX office, along with Carson, Sr.

27.     On or about December 31, 2018, Ms. Hailey electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

> **7. <u>GENERAL PROVISIONS</u>** . . .
> **i. Choice of Law and Venue.**  This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules,

statutes or regulations. Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

28.     Upon information and belief, Defendant **DONALD CARSON, JR**. is a citizen of the State of Texas.

29.     Until he resigned on October 18, 2019, Donald Carson, Jr. ("Carson Jr.") worked at the Dallas/Ft. Worth office of BURNS & WILCOX, along with Carson, Sr., and Ms. Hailey.

30.     On or about December 31, 2018, Carson, Jr. electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

**7. <u>GENERAL PROVISIONS</u>** . . .
i. **Choice of Law and Venue.** This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations. Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland

8

County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

31. Upon information and belief, Defendant **GREGORY T. WATSON** is a citizen of the State of North Carolina.

32. Until October 9, 2019 when he resigned, Mr. Watson was the Managing Director at the three North Carolina offices of BURNS & WILCOX.

33. On or about March 18, 2019, Mr. Watson signed BURNS & WILCOX's Management Bonus Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

**7. <u>GENERAL PROVISIONS</u>** . . .
g. **Choice of Law and Venue.** This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations. Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of

Michigan. [**EX 2**, BURNS & WILCOX's 2018 Management Bonus Agreement, signed by Watson].

34. Upon information and belief, Defendant **WILLIAM LEE COLEMAN** is a citizen of the State of North Carolina.

35. Until he resigned on October 16, 2019, Mr. Coleman worked in the Charlotte, North Carolina office of BURNS & WILCOX.

36. On or about December 4, 2018, Mr. Coleman electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

> **7. <u>GENERAL PROVISIONS</u>** . . .
> i. **Choice of Law and Venue.** This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations. Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

37.    Upon information and belief, Defendant **PAIGE GIBSON** is a citizen of the State of North Carolina.

38.    Until she resigned on October 24, 2019, Ms. Gibson was an Underwriting Manager in the Charlotte, North Carolina office of BURNS & WILCOX.

39.    On or about January 10, 2019, Ms. Gibson electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

> **7. <u>GENERAL PROVISIONS</u>** . . .
> i. **Choice of Law and Venue.**  This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations.  Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division.   Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court.  Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [<u>**EX 1**</u>, BURNS & WILCOX's 2018 Individual Production Award Agreement].

40.    Upon information and belief, Defendant **AMANDA N. RUPPEL** is a citizen of the State of Florida.

11

41.     Until she resigned on or about October 16, 2019, she was the Managing Director at the Tampa office of BURNS & WILCOX.

42.     On or about May 24, 2019, Ms. Ruppel signed BURNS & WILCOX's Management Bonus Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

> **7. <u>GENERAL PROVISIONS</u>** . . .
> g. **Choice of Law and Venue.**  This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations.  Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division.  Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court.  Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**<u>EX 3</u>**, BURNS & WILCOX's 2018 Management Bonus Agreement, signed by Ruppel].

43.     Upon information and belief, Defendant **STEVE PAGE** is a citizen of the State of Florida.

44.     Until he resigned on or about October 17, 2019, he worked in the Tampa, Florida office of BURNS & WILCOX.

45.     On or about December 20, 2018, Mr. Page electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses

various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

> 7. <u>**GENERAL PROVISIONS**</u> . . .
> i. **Choice of Law and Venue.** This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations. Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

46.     Upon information and belief, Defendant **JOHN B. SUTTON** is a citizen of the State of Florida.

47.     Until Mr. Sutton resigned on or about October 17, 2019, he worked in the Tampa, Florida office of BURNS & WILCOX.

48.     On or about December 18, 2018, Mr. Sutton electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

**7. GENERAL PROVISIONS** . . .
i. **Choice of Law and Venue.** This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations. Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

49.     Upon information and belief, Defendant **ALICIA APPEL** is a citizen of the State of Florida.

50.     Until she resigned on October 25, 2019, Ms. Appel was a Senior Underwriter in the Tampa, Florida office of BURNS & WILCOX.

51.     On or about December 20, 2018, Ms. Appel electronically signed BURNS & WILCOX's Individual Production Award Agreement, which addresses various issues relevant to this lawsuit (including non-solicitation, confidential information and non-disclosure obligations), and which contains the following provision:

**7. GENERAL PROVISIONS** . . .
i. **Choice of Law and Venue.** This Agreement is made in Michigan and shall be governed in all respects under the laws of the State of Michigan without respect to any other state's choice of law rules, statutes or regulations. Venue of any action regarding the terms and

14

conditions of this Agreement or any action arising under this Agreement shall be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division. Employee waives any objections Employee may have to lack or [sic] personal jurisdiction or venue in any Michigan court. Both parties hereby waive any defense to lack of jurisdiction, improper forum, forum *non conveniens*, or improper venue, and waive any right to attempt to seek a change of venue or change of forum in the event an action is properly filed in the State of Michigan. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

52.     The amount in controversy in this matter exceeds an aggregate of $75,000.00 and BURNS & WILCOX also seeks equitable relief.

53.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1).

54.     Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

55.     Venue is proper in this Court pursuant to the terms of the agreements quoted above as to seven Defendants.

56.     Venue is proper in this Court as to all Defendants pursuant to 28 U.S.C. § 1391.

## **GENERAL ALLEGATIONS**

57.     BURNS & WILCOX operates, among other things, as national wholesalers in the insurance industry, both as a broker and managing general agent. This segment of the insurance industry is extremely competitive and most of the large companies in this industry operate offices in multiple states.

58.     In light of the highly competitive nature of this industry, BURNS & WILCOX has always taken steps to safeguard and protect its confidential and proprietary information and trade secrets. Among other things, BURNS & WILCOX has required its personnel to sign detailed agreements acknowledging these facts, and agreeing to protect and safeguard this material.

59.     In 2018, BURNS & WILCOX revised its agreements to ensure that its agreements conform to industry standards.

60.     As a result of the 2018 revisions, the terms of the two key Agreements at issue in this lawsuit (BURNS & WILCOX's Individual Production Award agreement and its Management Bonus Agreement), are consistent with similar agreements in effect in the large companies with whom BURNS & WILCOX competes. This includes specifically the non-solicitation, non-competition and non-disclosure clauses of BURNS & WILCOX's agreements.

61.     In relevant part, the BURNS & WILCOX Individual Production Award Agreement, provides as follows:

**5.        NON-SOLICITATION;        NON-COMPETITION; CONFIDENTIAL INFORMATION AND NON-DISCLOSURE**

**a. Confidentiality/Non-Disclosure Obligation.**

i. Employee shall not disclose to anyone in any way, directly or indirectly, Employer's Confidential Information or improperly make use of Employer's Confidential Information both during Employee's employment with Employer and at any time after Employee's employment with Employer terminates or expires, whether such

termination is voluntary or involuntary.  Specifically, but not by way of limitation, except as necessary for the performance of Employee's duties and responsibilities for Employer, at no time during or after Employee's employment with Employer, shall Employee directly or indirectly (nor instruct, request or encourage any other person or entity to directly or indirectly) use any trade secret or confidential or proprietary information (including, but not limited to, agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs, pricing and/or financial information) belonging to Employer. ** *

**b. Return of Company Property.**   Employee agrees that all Confidential Information, whether embodied in hard copy, electronic media, or other forms, or copies thereof, is the property of Employer exclusively.  Employee agrees that upon the termination or cessation of Employee's employment with Employer, whether voluntary or involuntary, that Employee will immediately return to Employer all Confidential Information, Company property, and client property, in any form, including, but not limited to, hard copy and electronic form, and in any media in which such information is recorded or stored. . . Employee agrees and acknowledges that any Confidential Information given to Employee by Employer or that Employee is permitted to use for Employee's employment Employer [sic] remains Employer's property and that Employee has no rights to keep such things, use them for non-Company use, retain them upon Employee's termination or cessation of Employee's employment with Employer, or use them in competition against Employer at any time.  * * *

**d. Restrictive Covenants.**  Employee agrees further that in order to preserve the confidentiality of the Confidential Information, to prevent the theft or misuse of the Confidential Information, to protect Employer's client and account relationships, with both its prospective and existing clients, to protect its client goodwill, and to protect Employer from improper or unfair competition, Employee shall not, directly or indirectly, during Employee's employment and for a period of two (2) years from the date Employee's employment with Employer ends, terminates or expires, for any reason whatsoever, whether such termination or expiration is voluntary or involuntary, perform any of the following activities.

**i. Non-Solicitation of Company Officers, Employees, or Contractors.** Employee will not, directly or indirectly, solicit, divert, or attempt to solicit or divert, from Employer any officer, employee, contractor or any person providing services to, or on behalf of, Employer, or influence any such person to no longer serve as an officer, employee or contractor, or provide services to, or for, Employer.

**ii. Non-Solicitation of Company Clients and Accounts.** Employee will not: (i) call upon, contact, solicit, divert, service, or accept any business from any Burns & Wilcox client or account for the purposes of directly or indirectly providing any services or products similar to those offered by Employer, including, but not limited to, distribution, underwriting, financing, claims, loss control and/or audits; (ii) directly or indirectly solicit, divert, service or accept on behalf of any new employer or new entity any insurance policy for a particular insured party for which insured party the Employee had provided such services or attempted to provide services in the two years prior to the end of Employee's employment with Employer. For the purposes of this Agreement, "client" or "account" shall include any insurance solicitor, insurance agent, insurance broker, insurance producer, insurance wholesaler, managing general agent, risk manager, third party administrator or otherwise with whom Employee had written, quoted or been asked to write or quote contracts and/or policies, facilitated placement or otherwise provided brokerage services to on behalf of Employer during the two (2) years preceding the date of Employee's termination and/or resignation from Employer. For the purposes of this Agreement, "account" shall include any insurance policy Employer had written, quoted or been asked to write or quote during the two (2) years preceding the date of Employee's termination and/or resignation from Employer.

**iii. Non-Competition.** During the Employee's employment with Employer, Employee shall not directly or indirectly engage in any action or provide support, assistance or services to any other person or entity, if such activity would constitute competition with Employer's business. This prescription shall not apply to solely passive investments to which Employee provides no advisory, employment or solicitation services. [**EX 1**, BURNS & WILCOX's 2018 Individual Production Award Agreement].

62.    On or about December 31, 2018, Defendant Hailey electronically signed this 2018 Individual Production Award Agreement. [**EX  4**, Hailey Acknowledgement Status Report].

63.     On or about December 31, 2018, Defendant Carson, Jr. electronically signed this 2018 Individual Production Award Agreement. [**EX  5,** Carson, Jr. Acknowledgement Status Report].

64.    On or about December 4, 2018, Defendant Coleman electronically signed this 2018 Individual Production Award Agreement. [**EX  6**, Coleman Acknowledgement and Status Report].

65.    On or about January 10, 2019, Defendant Gibson electronically signed this 2018 Individual Production Award Agreement. [**EX   7**, Gibson Acknowledgement and Status Report].

66.    On or about December 20, 2018, Defendant Page electronically signed this 2018 Individual Production Award Agreement. [**EX 8**, Page Acknowledgement and Status Report].

67.    On or about December 18, 2018, Defendant Sutton electronically signed this 2018 Individual Production Award Agreement. [**EX  9**, Sutton Acknowledgement and Status Report].

68.     On or about December 20, 2018, Defendant Appel electronically signed this 2018 Individual Production Award Agreement. [**EX 10**, Appel Acknowledgement and Status Report].

69.     In relevant part, the BURNS & WILCOX <u>Management Bonus Agreement</u> is almost identical to the above Agreement, and it provides as follows:

### 5.     NON-SOLICITATION;     NON-COMPETITION; CONFIDENTIAL INFORMATION AND NON-DISCLOSURE

**a. Confidentiality/Non-Disclosure Obligation.**

i. Employee shall not disclose to anyone in any way, directly or indirectly, Employer's Confidential Information or improperly make use of Employer's Confidential Information both during Employee's employment with Employer and at any time after Employee's employment with Employer terminates or expires, whether such termination is voluntary or involuntary. Specifically, but not by way of limitation, except as necessary for the performance of Employee's duties and responsibilities for Employer, at no time during or after Employee's employment with Employer, shall Employee directly or indirectly (nor instruct, request or encourage any other person or entity to directly or indirectly) use any trade secret or confidential or proprietary information (including, but not limited to, agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs, pricing and/or financial information) belonging to Employer. * * *

**b. Return of Company Property.** Employee agrees that all Confidential Information, whether embodied in hard copy, electronic media, or other forms, or copies thereof, is the property of Employer exclusively. Employee agrees that upon the termination or cessation of Employee's employment with Employer, whether voluntary or involuntary, that Employee will immediately return to Employer all Confidential Information, Company property, and client property, in any form, including, but not limited to, hard copy and electronic form, and in any media in which such information is recorded or stored. . .

20

Employee agrees and acknowledges that any Confidential Information given to Employee by Employer or that Employee is permitted to use for Employee's employment Employer [sic] remains Employer's property and that Employee has no rights to keep such things, use them for non-Company use, retain them upon Employee's termination or cessation of Employee's employment with Employer, or use them in competition against Employer at any time.  * * *

**d. Restrictive Covenants.**  Employee agrees further that in order to preserve the confidentiality of the Confidential Information, to prevent the theft or misuse of the Confidential Information, to protect Employer's client and account relationships, with both its prospective and existing clients, to protect its client goodwill, and to protect Employer from improper or unfair competition, Employee will  not, directly or indirectly, during Employee's employment and for a period of two (2) years from the date Employee's employment with Employer ends, terminates or expires, for any reason whatsoever, whether such termination or expiration is voluntary or involuntary, perform any of the following activities.

**i. Non-Solicitation of Company Officers, Employees, or Contractors.**  Employee will not, directly or indirectly, solicit, divert, or attempt to solicit or divert, from Employer any officer, employee, contractor or any person providing services to, or on behalf of, Employer, or influence any such person to no longer serve as an officer, employee or contractor, or provide services to, or for, Employer.

**ii. Non-Solicitation of Company Clients and Accounts.**  For the purposes of this Agreement, "Employee's Team" shall be defined as all persons who are supervised by Employee and all persons' performance upon which Employee's Management Bonus is based. Employee will not: (i) call upon, contact, solicit, divert, service, or accept any business from any Burns & Wilcox client or account for the purposes of directly or indirectly providing any services or products similar to those offered by Employer, including, but not limited to, distribution, underwriting, financing, claims, loss control and/or audits; (ii) directly or indirectly solicit, divert, service or accept on behalf of any new employer or new entity any insurance policy for a particular insured party for which insured party the Employee or any member of Employee's Team had provided such services or attempted to provide

services in the two years prior to the end of Employee's employment with Employer. For the purposes of this Agreement, "client" or "account" shall include any insurance solicitor, insurance agent, insurance broker, insurance producer, insurance wholesaler, managing general agent, risk manager, third party administrator or otherwise with whom Employee or any member of Employee's Team had written, quoted or been asked to write or quote contracts and/or policies, facilitated placement or otherwise provided brokerage services to on behalf of Employer during the two (2) years preceding the date of Employee's termination and/or resignation from Employer. For the purposes of this Agreement, "account" shall include any insurance policy Employer or any member of Employee's Team had written, quoted or been asked to write or quote during the two (2) years preceding the date of Employee's termination and/or resignation from Employer.

**iii. Non-Competition.** During the Employee's employment with Employer, Employee shall not directly or indirectly engage in any action or provide support, assistance or services to any other person or entity, if such activity would constitute competition with Employer's business. This prescription shall not apply to solely passive investments to which Employee provides no advisory, employment or solicitation services. [**EX 2 and 3**, BURNS & WILCOX's 2018 Management Bonus Agreement].

70. On or about March 18, 2019, Defendant Watson signed this 2018 Management Bonus Agreement. [**EX 2**, Watson Management Bonus Agreement].

71. On or about May 24, 2019, Defendant Ruppel signed this 2018 Management Bonus Agreement. [**EX 3**, Ruppel Management Bonus Agreement].

72. Despite the fact that Defendant Carson, Sr. was a corporate officer of BURNS & WILCOX (and was therefore charged with acting in the best interests of the corporation), he refused to sign the Management Bonus Agreement.

73.     The reason that Carson, Sr. refused to sign a 2018 document contractually obligating him to observe BURNS & WILCOX's non-solicitation, non-competition and non-disclosure clauses recently became obvious. Despite his 30+ year tenure with BURNS & WILCOX, he turned rogue and led at least the seven individual Defendants named in this lawsuit to leave BURNS & WILCOX and join him at CRC.

74.     Because of his status as an Executive Vice President of BURNS & WILCOX, Carson, Sr. had full access to all BURNS & WILCOX financial records. This included the production amounts of each producer or managing director in each of BURNS & WILCOX's offices.   He also had access to names of BURNS & WILCOX's clients and virtually every other confidential trade secret belonging to BURNS & WILCOX.   As one in the inner circle, he regularly received financial reports.

75.     As a result of Carson, Sr.'s unfettered access to BURNS & WILCOX information, Carson, Sr. knew who the highest performers in the company were, and what their compensation levels were.

76.     On or about October 18, 2019, Carson, Sr. stood on a table at the Ft. Worth/Dallas office of BURNS & WILCOX, and announced to the gathered employees that he was resigning effective immediately to go work with CRC.

77.    This announcement was made less than a week before BURNS & WILCOX's 50th anniversary leadership meeting, to be held in Michigan and attended by BURNS & WILCOX personnel from across the country.

78.    Over the course of the last few weeks, numerous BURNS & WILCOX employees report having been contacted by Carson, Sr. and others (including headhunters) working at his direction.  In several instances, Carson, Sr. or those working at his direction expressly solicited the BURNS & WILCOX employee to leave BURNS & WILCOX and join CRC.

79.    Unless stopped, Carson, Sr. will continue to directly or indirectly approach, solicit and hire BURNS & WILCOX employees, wrongfully violating his obligations to BURNS & WILCOX, and enticing and causing BURNS & WILCOX employees to violate their contractual obligations to BURNS & WILCOX, all for the purpose of making CRC successful to the detriment of BURNS & WILCOX.

80.    For its part, Defendant CRC is well aware of what Carson, Sr. is doing. It has recently announced that it intends to dramatically expand its small business lines, and this industry segment is one of the areas in which BURNS & WILCOX is particularly strong. CRC is improperly raiding the employees of a principal competitor, and it is doing so under the guidance and direction of a rogue defector who holds BURNS & WILCOX's private and confidential information and trade secrets.

## COUNT I
## <u>BREACH OF FIDUCIARY DUTY</u>
## (AGAINST DEFENDANT CARSON, SR.)

81.    Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

82.    At all relevant times prior to October 18, 2019, Defendant Carson, Sr. was a high-level corporate officer of BURNS & WILCOX.

83.    On October 17, 2019 Carson, Sr. held the position of Executive Vice President, Managing Director, of BURNS & WILCOX and he was the highest compensated employee of BURNS & WILCOX.

84.    At that time, he was one of only four executive Vice Presidents in the company, and he had access to virtually all of BURNS & WILCOX's confidential information and trade secrets.

85.    As a corporate officer of BURNS & WILCOX, Carson, Sr. owed strict fiduciary duties to BURNS & WILCOX.

86.    The fiduciary duties at issue here are both common law and statutory obligations.

87.    BURNS & WILCOX has standing to enforce its claim against Carson, Sr. for breach of fiduciary duties.

88.    The fiduciary duties at issue include the highest level of good faith, care, loyalty, and fair dealing, and among other things, they prohibit Carson, Sr. from

dealing dishonestly and in an underhanded fashion with BURNS & WILCOX, or in a way that deprives BURNS & WILCOX of the value or economic benefit of its business interests.

89.    While owing fiduciary duties to BURNS & WILCOX, Carson, Sr. breached these fiduciary duties by, inter alia:

    a.  Placing his own interests ahead of those of BURNS & WILCOX;

    b.  Failing to ensure that information he knew was to be treated as confidential and proprietary to BURNS & WILCOX, remained confidential;

    c.  Intentionally accessing internal, confidential training and test results of BURNS & WILCOX employees to select or target certain employees of BURNS & WILCOX to approach about leaving BURNS & WILCOX and moving to CRC;

    d.  Intentionally accessing internal confidential underwriting, sales, profits, and similar records of BURNS & WILCOX to select or target certain employees of BURNS & WILCOX to approach about leaving BURNS & WILCOX and moving to CRC;

    e.  Intentionally accessing internal compensation and bonus records of BURNS & WILCOX to select or target certain employees of BURNS & WILCOX to approach about leaving BURNS & WILCOX and moving to CRC; and

    f.  Upon information and belief, intentionally holding himself out to CRC as having access to internal, confidential information, including trade secrets, of BURNS & WILCOX, which made him appear valuable to CRC for employment.

90.    The actions of Carson, Sr. have proximately caused, and will continue to proximately cause, significant irreparable harm and monetary damages to BURNS

26

& WILCOX.  That is, as a direct and proximate result of Carson Sr.'s breaches of fiduciary duties, BURNS & WILCOX has been and will continue to be damaged.

91.    The conduct of Carson, Sr., including the misuse of BURNS & WILCOX's confidential information to further his own purposes at the expense of BURNS & WILCOX, has been intentional, wanton, malicious, and in bad faith, and therefore warrants imposition of exemplary and/or punitive damages.

92.    BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

93.    Accordingly, BURNS & WILCOX is entitled to:

   a.  An injunction to prevent any further violation of Carson, Sr.'s fiduciary duties to BURNS & WILCOX;

   b.  Damages for the actual loss caused by Carson, Sr.'s violation of his fiduciary duties to BURNS & WILCOX; and

   c.  Such other relief, including interest, costs and attorney's fees, as the Court deems just and equitable.

**COUNT II**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES**
**(AGAINST DEFENDANT CRC)**

94.    Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

95.    At all relevant times prior to October 18, 2019, Defendant Carson, Sr. was a corporate officer of BURNS & WILCOX.  Carson, Sr. held the position of

Executive Vice President, Managing Director, of BURNS & WILCOX. As a corporate officer of BURNS & WILCOX, Carson, Sr. owed strict fiduciary duties to BURNS & WILCOX.

96.     At all relevant times, Defendant CRC knew that Defendant Carson, Sr. was a corporate officer of BURNS & WILCOX, and that he thus owed fiduciary duties to BURNS & WILCOX.

97.     Defendant CRC aided and abetted Defendant Carson, Sr. in breaching his fiduciary duties to BURNS & WILCOX, by inter alia:

> a.  Communicating with Carson Sr. for the purpose of learning from him confidential information about various BURNS & WILCOX employees that BURNS & WILCOX treated as confidential and would not disclose, and which was not otherwise available to the public;
>
> b.  Acting on the confidential information that CRC obtained from Carson Sr. about various BURNS & WILCOX employees, that CRC would not otherwise know but for its communications with Carson, Sr. that violated his fiduciary duties to BURNS & WILCOX to share;
>
> c.  Encouraging and incentivizing Carson Sr. to place his own interests ahead of those of BURNS & WILCOX, for the purpose of benefitting CRC (by providing confidential and proprietary BURNS & WILCOX information to CRC that BURNS & WILCOX would not share with CRC, and which CRC would not otherwise have, but for Carson Sr.'s actions);
>
> d.  Knowingly receiving and using information that both Defendant Carson Sr. and Defendant CRC knew was to be treated as confidential and proprietary to BURNS & WILCOX, and knowing that the information had been improperly obtained;

e.  Knowingly receiving and intentionally using internal, confidential, training and test results of BURNS & WILCOX employees to select or target certain employees of BURNS & WILCOX to approach about leaving BURNS & WILCOX and moving to CRC;

f.  Knowingly using internal confidential underwriting, sales, profits, and similar records of BURNS & WILCOX procured by Carson, Sr. to select or target certain employees of BURNS & WILCOX to approach about leaving BURNS & WILCOX and moving to CRC;

g.  Knowingly using confidential internal compensation and bonus records of BURNS & WILCOX procured by Carson, Sr. to select or target certain employees of BURNS & WILCOX to approach about leaving BURNS & WILCOX and moving to CRC;

h.  Hiring Carson, Sr. while he owed fiduciary duties to BURNS & WILCOX for the purpose of benefiting from his access to internal, confidential information, including trade secrets, of BURNS & WILCOX; and

i.  Hiring at least seven of the nine former BURNS & WILCOX employees named in this lawsuit.

98.    These actions proximately caused irreparable harm and serious damage to BURNS & WILCOX.

99.    "Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary." *LA Young Spring & Wire Corp v. Falls*, 307 Mich. 69, 106 (1943).

100.   The Michigan Supreme Court has stated that a person who knowingly joins a fiduciary in an enterprise where the personal interest of the fiduciary is or may be antagonistic to his trust becomes jointly and severally liable with the

fiduciary for the profits of the enterprise. *Echelon Homes, LLC v. Carter Lumber Co.*, 261 Mich. App 424, 445; rev'd in part on other grounds 472 Mich. 192 (2005).

101.  As a third party who participated in and benefited from Defendant Carson, Sr.'s breaches of fiduciary duty, Defendant CRC will be required to disgorge any and all amounts and profits it received as a result of Carson Sr.'s breaches of fiduciary duties.

102.  Third parties who participate in an agent's or fiduciary's breaches of his duties and receive a benefit from such breach may be liable for unjust enrichment. *Haves-Albion v Kuberski*, 421 Mich 170 (1984); see also *PSA Quality Systems (Toronto), Inc v Sutcliffe*, 256 FSupp2d 698 (ED Mich 2003).

103.  The actions of CRC in aiding and abetting Carson Sr.'s breach of fiduciary duties has proximately caused, and will continue to proximately cause, significant monetary damages and irreparable injury to BURNS & WILCOX.  That is, as a direct and proximate result of Carson, Sr.'s breaches of fiduciary duties and CRC's aiding and abetting in those breaches, BURNS & WILCOX has been and will continue to be damaged and irreparably injured.

104.  The conduct of CRC, including the knowing and intentional misuse of BURNS & WILCOX's confidential information to further CRC's business at the expense of BURNS & WILCOX has been intentional, wanton, malicious, and in bad faith, and therefore warrants imposition of exemplary and/or punitive damages.

105. BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

106. Accordingly, BURNS & WILCOX is entitled to:

    a. An injunction to prevent further aiding and abetting of Carson, Sr.'s breach of his fiduciary duties to BURNS & WILCOX;

    b. Damages for the actual losses caused by CRC's aiding and abetting of Carson, Sr.'s breach of his fiduciary duties to BURNS & WILCOX;

    c. Such other relief, including interest, costs and attorney's fees, as the Court deems just and equitable.

## COUNT III
## TORTIOUS INTERFERENCE
### (AGAINST CRC AND CARSON, SR.)

107. Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

108. BURNS & WILCOX has consistently invested more time and money in training and developing its personnel than other insurance wholesale brokers do, including CRC.

109. BURNS & WILCOX has also consistently taken steps to protect its investment in its personnel by keeping its confidential and proprietary information from being disclosed, including its training programs, test results, underwriting details, customer records and reports (including sales, profits, compensation and bonus records), all as alleged above.

110.   BURNS & WILCOX therefore has a reasonable expectation of an ongoing business relationship with its own employees, without improper interference from CRC, and CRC was at all relevant times aware of BURNS & WILCOX's expectation of an ongoing business relationship with its own employees.

111.   CRC nonetheless intentionally and improperly interfered with this business relationship by using information that CRC knew was improperly procured by Carson, Sr. from BURNS & WILCOX, for the purpose of interfering with, disrupting and otherwise severing BURNS & WILCOX's business (employment) relationships with many of its employees and inducing breaches of their employment relationships.

112.   CRC acted knowing that its conduct was certain or substantially certain to cause BURNS & WILCOX to lose its continued business relationships with at least some of its employees.

113.   CRC's acts proximately caused BURNS & WILCOX damages.

114.   BURNS & WILCOX is aware that, as a competitor, CRC is entitled to fairly compete with BURNS & WILCOX for the best talent in the industry. CRC is not, however, privileged to use improper means to secure confidential and proprietary information about BURNS & WILCOX from a rogue BURNS & WILCOX insider, and to knowingly use that information to cherry-pick BURNS & WILCOX's top talent from BURNS & WILCOX's private vaults.

115.   In addition, BURNS & WILCOX has a reasonable expectation of continued business with its clients, and as a competitor in the same industry, CRC is intimately aware of this fact.

116.   As alleged above, BURNS & WILCOX has consistently taken steps to protect its confidential and protected information, including information relating to its customer and client relationships, by (among other things) entering into agreements with its employees, which include non-competition, non-solicitation and non-disclosure provisions.

117.   BURNS & WILCOX therefore has a reasonable expectation of an ongoing business relationship with its customers, without improper interference from CRC (which improperly accessed internal confidential and proprietary information).

118.   CRC nonetheless intentionally and improperly interfered with these business relationships by using information that it knew was improperly procured by Carson, Sr. from BURNS & WILCOX, for the purpose of disrupting BURNS & WILCOX's expectancies, relationships, business and existing contracts with its clients.

119.   CRC acted knowing that its conduct was certain or substantially certain to cause BURNS & WILCOX to lose its continued business relationship with at least some of its clients.

120.   CRC's acts proximately caused BURNS & WILCOX irreparable injury and damages.

121.   BURNS & WILCOX is aware that, as a competitor, CRC is entitled to fairly compete with BURNS & WILCOX for a share of industry clients.   CRC is not, however, privileged to use improper means to secure confidential and proprietary information about BURNS & WILCOX from a rogue BURNS & WILCOX insider, and to knowingly use that information to cherry-pick the best clients for itself from BURNS & WILCOX's private vaults.

122.   BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

123.   Accordingly, BURNS & WILCOX is entitled to:

    a.   An injunction to prevent any further tortious interference with BURNS & WILCOX's business relationships with its employees;

    b.   An injunction to prevent any further tortious interference with BURNS & WILCOX's business relationships with its clients;

    c.   Damages for the actual loss caused by CRC's and Carson, Sr.'s tortious interference with BURNS & WILCOX's business relationships with its employees;

    d.   Damages for the actual loss caused by CRC's and Carson, Sr.'s tortious interference with BURNS & WILCOX's business relationships with its clients;

    e.   Such other relief, including interest, costs and attorney's fees, as the Court deems just and equitable.

## COUNT IV
## UNJUST ENRICHMENT AND/OR QUANTUM MERUIT
### (AGAINST CRC AND CARSON, SR.)

124.   Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

125.   As a result of Defendant Carson Sr.'s improper direct and indirect solicitation of employees of BURNS & WILCOX, CRC has already hired Carson, Sr. and at least seven of the nine key former employees of BURNS & WILCOX named in this lawsuit.

126.   CRC has thus acquired these top-flight employees, not as a result of legitimate competitive means, but through back-door channels from a rogue BURNS & WILCOX defector.  CRC thus avoided the costs and time normally attendant to developing its own talent or procuring such employees from a competitor lawfully. By relying on Carson Sr.'s knowledge about whom to pursue, CRC has drastically diminished the possibility that it has hired any non-performers, and correspondingly increased the likelihood that it will hire only top performers.

127.   CRC has not only acquired these new employees, but it has also acquired the confidential and proprietary information belonging to BURNS & WILCOX that each of them holds.

128.   Defendant CRC has therefore been unjustly enriched as a result of its conduct and scheme with Carson Sr., and it has benefited from an inequity by retaining benefits that rightfully belong to BURNS & WILCOX.

129.   The loss of these employees has irreparably harmed BURNS & WILCOX, and also caused direct injury, requiring that BURNS & WILCOX bear the cost and expense of finding other personnel to replace these individuals.

130.   Because Carson Sr. breached his fiduciary duties to BURNS & WILCOX for his own benefit (and for the benefit of CRC), Carson and CRC are accountable for all benefits that they obtained through their breaches of fiduciary duties, and they should be required to disgorge any amounts received or enjoyed as a result of their improper actions.

131.   These actions by Defendants have caused BURNS & WILCOX damages.

132.   BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

133.   Accordingly, BURNS & WILCOX is entitled to:

    a.  Damages for the amount of all benefits wrongfully obtained and enjoyed by CRC and/or Carson as a result of their improper actions;

    b.  Damages for the cost to BURNS & WILCOX to replace the individuals wrongfully solicited and hired; and

    c.  Such other relief, including interest, costs and attorney's fees, as the Court deems just and equitable.

## COUNT V
## ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS (DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836) (AGAINST CARSON, SR. AND CRC)

134.   Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

135.   Prior to his abrupt departure from BURNS & WILCOX, Carson, Sr. had access to all BURNS & WILCOX confidential information.  This included agent producer financial information (the "book of business" that specific producers and office managing directors from BURNS & WILCOX have), client lists, expirations, renewals, business plans, costs, pricing and/or financial information, and overall Company financial data belonging to BURNS & WILCOX.  Such access was due in large part to his status as an Executive Vice President of BURNS & WILCOX.

136.   On information and belief, Carson, Sr. improperly used confidential information belonging to BURNS & WILCOX prior to leaving the Company.

137.   On information and belief, Carson, Sr. did this for the following reasons, among others:

    a.  To make Carson, Sr. appear valuable for employment with CRC;

    b.  To identify top producers and office managing directors at BURNS & WILCOX;

    c.  To directly or indirectly solicit top producers and office managing directors at BURNS & WILCOX for employment at CRC;

    d.  To enable CRC to acquire a competitive edge against BURNS & WILCOX;

    e.  To enable Carson, Sr. to have a competitive edge against BURNS & WILCOX in pricing;

    f.  To enable Carson, Sr. to have confidential information of BURNS & WILCOX clients, which in turn, enables Carson, Sr. to solicit clients and employees away from BURNS & WILCOX; and

    g.  Overall, to unjustly benefit himself and CRC at the expense of BURNS & WILCOX.

138.  The confidential information used by Carson, Sr. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

139.  Further, BURNS & WILCOX has consistently taken reasonable measures to keep its confidential and proprietary information secret. The measures taken by BURNS & WILCOX include:

    a.  Requiring that managing directors and producers sign agreements protecting the confidentiality of such documents; and

    b.  Limiting access to such information to those who have a "need to know" such information. In general, this is done by granting electronic access to employees (such as office managing directors or producers) on a need-to-know basis.

140.   Thus, this information is a trade secret within the meaning of 18 U.S.C. § 1839(3).

141.   This information is also related to a product or service used in, or intended for use in, interstate or foreign commerce (namely, the placement of insurance policies across state lines and in foreign countries).

142.   On information and belief, Carson, Sr. willfully and maliciously misappropriated, and continues to threaten to misappropriate, BURNS & WILCOX trade secrets by, among other things:

     a.  Acquiring BURNS & WILCOX trade secrets while knowing or having reason to know that he was acquiring those trade secrets for improper means;

     b.  Using improper means to acquire knowledge of BURNS & WILCOX trade secrets and then improperly disclosing them or using those trade secrets without BURNS & WILCOX's express or implied consent;

     c.  Knowing or having reason to know, at the time that he disclosed and/or used Plaintiff's trade secrets without BURNS & WILCOX's express or implied consent, that his knowledge of those trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use;

     d.  Using such trade secrets to solicit top producers and managing directors from BURNS & WILCOX and steering them, directly or indirectly, to employment at CRC;

     e.  Providing such trade secrets to CRC to enable CRC to have a competitive edge against BURNS & WILCOX;

     f.  Misappropriating such trade secrets to enable Carson, Sr. and CRC to have a competitive edge against BURNS & WILCOX in pricing and in attracting clients; and

     g.  Misappropriating such trade secrets to enable himself to have confidential information about BURNS & WILCOX clients, which in turn, enables Carson, Sr. to continue to solicit and attract both employees and clients away from BURNS & WILCOX.

143.  On information and belief, the misappropriation of trade secrets by Carson, Sr. was done with the agreement, knowledge and/or consent of CRC.

144.  The misappropriation of BURNS & WILCOX's trade secrets by Carson, Sr. was done to wrongfully benefit both Carson, Sr. and CRC, and each individually.

145.  On information and belief, Carson, Sr. wrongfully used such trade secrets for a considerable period of time prior to his abrupt resignation.

146.  On information and belief, during such time, Carson, Sr. used such information for the competitive advantage of Carson, Sr. himself and CRC and to the competitive disadvantage of BURNS & WILCOX.

147.  The actions of Carson, Sr. and CRC in misappropriating BURNS & WILCOX trade secrets were done in bad faith.

148.  BURNS & WILCOX has been irreparably harmed, and absent injunctive relief, will continue to be irreparably harmed by Carson, Sr.'s and CRC's willful and malicious misappropriation of BURNS & WILCOX trade secrets.

40

149.   BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

150.   Accordingly, BURNS & WILCOX is entitled to:

a.   An injunction to prevent any further actual or threatened misappropriation of BURNS & WILCOX trade secrets by Carson, Sr. and CRC;

b.   Damages for the actual loss caused by Carson, Sr.'s and CRC's misappropriation of BURNS & WILCOX trade secrets;

c.   Damages for unjust enrichment caused by Carson Sr.'s and CRC's misappropriation of BURNS & WILCOX's trade secrets that is not addressed in computing damages for actual loss;

d.   Exemplary damages in an amount not to exceed two times the amount of damages awarded under (b)-(c), above;

e.   Reasonable attorneys' fees; and

f.   Such other relief as the Court deems just and equitable, including reasonable royalties in the event BURNS & WILCOX so elects.

**COUNT VI**
**ACTUAL AND THREATENED**
**MISAPPROPRIATION OF TRADE SECRETS**
**MICHIGAN UNIFORM TRADE SECRETS ACT, MCL § 445.1901**
**(AGAINST CARSON, SR. AND CRC)**

151.   Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

152.   Prior to his abrupt departure from BURNS & WILCOX, Carson, Sr. had access to all BURNS & WILCOX confidential information.  This included agent

41

producer financial information (the "book of business" that specific producers and office managing directors from BURNS & WILCOX have), client lists, expirations, renewals, business plans, costs, pricing and/or financial information, and overall Company financial data belonging to BURNS & WILCOX.  Such access was due in large part to his status as an Executive Vice President of BURNS & WILCOX.

153.   On information and belief, Carson, Sr. improperly used confidential information belonging to BURNS & WILCOX prior to leaving the Company.

154.   On information and belief, this was done for the following reasons, among others:

    a.  To make Carson, Sr. appear valuable for employment to CRC;

    b.  To identify top producers and office managing directors at BURNS & WILCOX;

    c.  To solicit top producers and office managing directors at BURNS & WILCOX for employment at CRC;

    d.  To enable CRC to have a competitive edge against BURNS & WILCOX;

    e.  To enable Carson, Sr. to have a competitive edge against BURNS & WILCOX in pricing;

    f.  To enable Carson, Sr. to have confidential information of BURNS & WILCOX clients, which in turn, enables Carson, Sr. to solicit employees and clients away from BURNS & WILCOX; and

    g.  Overall, to unjustly benefit himself and CRC at the expense of BURNS & WILCOX.

155. The confidential information used by Carson, Sr. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

156. Further, BURNS & WILCOX has taken reasonable measures to keep said information secret. This includes:

    a. Requiring that managing directors and producers sign agreements protecting the confidentiality of such documents; and

    b. Limiting access to such documents to those who have a "need to know" such information. In general, this is done by granting computer access to employees (such as office managing directors or producers) on a need-to-know basis.

157. Thus, this information is a trade secret within the meaning of MCL § 445.1902(d).

158. On information and belief, Carson, Sr. willfully and maliciously misappropriated, and threatened to continue to misappropriate, BURNS & WILCOX trade secrets by, among other things:

    a. Acquiring BURNS & WILCOX trade secrets while knowing or having reason to know that he was acquiring those trade secrets by improper means;

    b. Using improper means to acquire knowledge of BURNS & WILCOX trade secrets and then disclosing them or using those trade secrets without BURNS & WILCOX's express or implied consent;

    c. Knowing or having reason to know, at the time that he disclosed and/or used Plaintiff's trade secrets without BURNS & WILCOX's express or implied consent, that his knowledge of those trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use;

    d. Using such trade secrets to solicit top producers and managing directors from BURNS & WILCOX and steering them, directly or indirectly, to employment at CRC;

    e. Providing such trade secrets to CRC to enable CRC to have a competitive edge against BURNS & WILCOX;

    f. Misappropriating such trade secrets to enable Carson, Sr. to have a competitive edge against BURNS & WILCOX in pricing; and

    g. Misappropriating such trade secrets to enable Carson, Sr., CRC and other Defendants to have confidential information of BURNS & WILCOX, which in turn, enables Carson, Sr. to solicit employees and clients away from BURNS & WILCOX.

159. On information and belief, the misappropriation of trade secrets by Carson, Sr. was done with the agreement, knowledge and/or consent of CRC.

160. The misappropriation of trade secrets by Carson, Sr. was done to wrongfully benefit both Carson, Sr. and CRC, and each individually.

161. On information and belief, Carson, Sr. improperly used such trade secrets for a considerable period of time prior to his abrupt resignation.

162. On information and belief, during such time, Carson, Sr. used such information for the competitive advantage of Carson, Sr. himself and CRC and to the competitive disadvantage of BURNS & WILCOX.

163. The actions of Carson, Sr. and CRC in misappropriating BURNS & WILCOX trade secrets were done in bad faith.

164. BURNS & WILCOX has been irreparably harmed, and absent injunctive relief, will continue to be irreparably harmed by Carson, Sr.'s and CRC's willful and malicious misappropriation of BURNS & WILCOX trade secrets.

165. BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

166. Accordingly, BURNS & WILCOX is entitled to:

a. An injunction to prevent any further actual or threatened misappropriation of BURNS & WILCOX trade secrets by Carson, Sr. and CRC;

b. Damages for the actual loss caused by Carson, Sr.'s and CRC's misappropriation of BURNS & WILCOX's trade secrets;

c. Damages for any unjust enrichment caused by Carson, Sr.'s and CRC's misappropriation of BURNS & WILCOX's trade secrets that is not taken into account in computing actual loss;

d. Reasonable attorneys' fees; and

e. Such other relief as the Court deems just and equitable, including reasonable royalties in the event BURNS & WILCOX so elects.

## COUNT VII
## BREACH OF CONTRACT
### (DEFENDANTS HAILEY, CARSON, JR., WATSON, COLEMAN, GIBSON, RUPPEL, PAGE, SUTTON, AND APPEL)

167. Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

168.    Each of the nine Defendants named in this Count executed a contractual Agreement with BURNS & WILCOX by which each of the nine Defendants agreed, *inter alia*:

a. That BURNS & WILCOX has a legitimate business purpose in the protection of its trade secrets, proprietary information, competitive position, methods of operation, processes, procedures and vendors. [**EX 1**, **EX 2**, **EX 3**, Section 5(g)].

b. That BURNS & WILCOX has a legitimate need to protect itself from improper or unfair competition and to protect its Confidential Information, as well as its client and account relationships with both its prospective and existing clients and accounts, and that the restrictions in those agreements are reasonable and necessary to protect BURNS & WILCOX's operations, legitimate competitive interests, and confidential information. [**EX 1**, **EX 2**, **EX 3**, Section 5(e)].

c. Not to disclose to anyone, directly or indirectly, or to improperly use any confidential information belonging to BURNS & WILCOX at any time, either before or after termination of employment with BURNS & WILCOX. [**EX 1**, **EX 2**, **EX 3**, Section 5(a)(i)].

d. Not to request or instruct directly or indirectly anyone to use any trade secret or confidential or proprietary information belonging to BURNS & WILCOX, at any time during or after their employment with BURNS & WILCOX, including "agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs, pricing and/or financial information" belonging to BURNS & WILCOX. [**EX 1**, **EX 2**, **EX 3**, Section 5(a)(i)].

e. That any confidential information given to him or her by BURNS & WILCOX remains BURNS & WILCOX's property and that Employee has no right to keep such things, use them for non-Company use, or use them in competition against BURNS & WILCOX at any time. [**EX 1**, **EX 2**, **EX 3**, Section 5(b)].

f.  For a period of two years after employment with BURNS & WILCOX ceases, not to "directly or indirectly, solicit, divert, or attempt to solicit or divert" from BURNS & WILCOX any employee, or to influence any person to no longer serve as an employee of BURNS & WILCOX. [**EX 1**, **EX 2**, **EX 3**, Section 5(d)(i)].

g.  For a period of two years after employment with BURNS & WILCOX ceases, not to "call upon, contact, solicit, divert, service, or accept any business" from any BURNS & WILCOX client or account for the purposes of directly or indirectly providing any services or products similar to those offered by BURNS & WILCOX.  [**EX 1**, **EX 2**, **EX 3**, Section 5(d)(ii)].

h.  During employment and for a period of two years thereafter,  not to directly or indirectly engage in any activity that constitutes competition with BURNS & WILCOX's business. [**EX 1**, **EX 2**, **EX 3**, Section 5(d)(iii)].

i.  For a period of two years following termination from BURNS & WILCOX, promptly to report the existence of this Agreement to any new employer, and provide to any new employer a copy of the relevant agreement and notify the new employer of the obligations in the agreement.  [**EX 1**, **EX 2**, **EX 3**, Section 5(g)].

169.   After the nine Defendants named in this Count left their employment at BURNS & WILCOX, BURNS & WILCOX personnel learned that several of these Defendants have reached out to current BURNS & WILCOX employees by LinkedIn, telephone, email, and other social media in an effort to solicit them to leave BURNS & WILCOX and join CRC.   This is a breach of the non-solicitation provision.

170.   Upon information and belief, most or all of the nine Defendants in this Count have made such overtures, in violation and breach of their contractual agreements.

171.   Upon information and belief, one or more of the nine Defendants in this Count may be improperly using BURNS & WILCOX's confidential proprietary information and trade secrets in violation of their contractual obligations.  This is a breach of the non-use provision.

172.   Upon information and belief, one or more of the nine Defendants in this Count may be attempting to solicit business and/or BURNS & WILCOX employees, on behalf of CRC (the new employer of all seven), in violation of their contractual obligations to BURNS & WILCOX.   This is a breach of the non-solicitation provision.

173.   Each of the nine Defendants in this Count has agreed that a violation of the restrictions in their Agreement would result in irreparable harm to BURNS & WILCOX, [**EX 1**, **EX 2**, **EX 3**, Section 5(e)], that if any of them breach their Agreement, remedies at law are inadequate and therefore that BURNS & WILCOX may seek injunctive relief as well as other remedies and damages upon a breach. [**EX 1**, **EX 2**, **EX 3**, Section 5(g)].

174.   BURNS & WILCOX has been damaged and irreparably injured by each discrete breach of contract committed by each Defendant named in this Count.

175.   Accordingly, BURNS & WILCOX is entitled to:

    a.   An injunction to prevent any further actual or threatened breach of contract by each of the nine Defendants in this Count;

    b.   Damages for the actual losses caused by each or any of the nine Defendants' breach of contract;

    c.   Damages for any unjust enrichment caused by each or any of the nine Defendants' breach of contract that is not taken into account in computing actual loss;

    d.   Such other relief, including interest, costs and reasonable attorney's fees, as the Court deems just and equitable.

## COUNT VIII
## CIVIL CONSPIRACY TO WRONGFULLY DEPRIVE BURNS & WILCOX OF ITS CONFIDENTIAL AND PROTECTED INFORMATION
### (ALL DEFENDANTS)

176.   Plaintiff re-alleges and incorporates by reference into this Count all allegations in all paragraphs prior to and after this Count.

177.   Upon information and belief, all of the Defendants have engaged in concerted action to wrongfully deprive BURNS & WILCOX of its confidential and protected information.

178.   Such actions are in violation of Carson Sr.'s fiduciary duties to BURNS & WILCOX, as alleged above, and in violation of the contractual obligations owed by each of the nine individual Defendants (other than Carson, Sr.) who signed agreements with BURNS & WILCOX agreeing to protect its confidential and protected information, as also alleged above.

49

179.   Upon information and belief, by various means, each member of the conspiracy intended to accomplish an unlawful purpose (i.e., deprive BURNS & WILCOX of its confidential and protected information) or to accomplish a lawful purpose by unlawful means (i.e., use of a rogue employee—Carson, Sr.—to unfairly compete for information and new employees).

180.   The civil conspiracy to wrongfully deprive BURNS & WILCOX of its confidential and protected information has in fact damaged and injured BURNS & WILCOX by allowing portions of its confidential and proprietary information that was previously-unknown to CRC to fall into CRC's hands for its use in competition against BURNS & WILCOX.

181.   BURNS & Wilcox requests trial by jury as to all issues and parties in this Count as to which the right to trial by jury has not been contractually waived.

182.   Accordingly, BURNS & WILCOX is entitled to:

    a.   An injunction to prevent further actual or threatened civil conspiracy to wrongfully deprive BURNS & WILCOX of its confidential and protected information, by all Defendants;

    b.   Damages for the actual losses caused by each and any Defendants' participation in the civil conspiracy to wrongfully deprive BURNS & WILCOX of its confidential and protected information;

    c.   Damages for any unjust enrichment caused by each and any Defendants' participation in the civil conspiracy to wrongfully deprive BURNS & WILCOX of its confidential and protected information that is not taken into account in computing actual loss;

    d.  Such other relief, including interest, costs and reasonable attorney's fees, as the Court deems just and equitable.

Respectfully Submitted,

**MANTESE HONIGMAN, P.C.**

_/s/Gerard V. Mantese_

Gerard V. Mantese (P34424)
Douglas L. Toering (P34329)
Kenneth R. Chadwell (P39121)
1361 E. Big Beaver Road
Troy, MI  48083
(248) 457-9200
gmantese@manteselaw.com
dtoering@manteselaw.com
kchadwell@manteselaw.com

October 28, 2019

## VERIFICATION

**The undersigned swears and affirms that the allegations in the above Complaint are true and accurate to the best of his knowledge, information and belief.**

**Date: October 28th, 2019**     **By:** _____

   Alan J. Kaufman,
   **CEO, BURNS & WILCOX, Ltd.**

Subscribed and sworn before me

This 28th day of October, 2019

_____
Notary Public

OAKLAND County,
State of Michigan
My Commission Expires: 06/03/2026

NELLI THOMAS
Notary Public, State of Michigan
County of Oakland
My Commission Expires 06-03-2026
Acting in the County of OAKLAND