## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

BURNS & WILCOX, LTD.,
a Michigan corporation,

     Plaintiff,

v.

[1] **CRC INSURANCE SERVICES INC.**,
an Alabama corporation;
[2] **DONALD RICHARD CARSON, SR**.,
an individual resident of Texas;
[3] **SHEILA A. HAILEY**, an individual
resident of Texas;
[4] **DONALD R. CARSON, JR**.,
an individual resident of Texas;
[5] **GREGORY T. WATSON**, an individual
resident of North Carolina;
[6] **WILLIAM LEE COLEMAN**, an
individual resident of North Carolina;
[7] **PAIGE GIBSON**, an individual resident
of North Carolina,
[8] **AMANDA N. RUPPEL**, an individual
resident of Florida,
[9] **STEVEN PAGE**, an individual resident
of Florida,
[10] **JOHN B. SUTTON**, an individual
resident of Florida,
[11] **ANDREW CARSON**, an individual
resident of Texas,
[12] **SANDRA KREBS**, an individual resident
of Texas,
[13] **NICHOLAS MCVAY**, an individual
resident of Texas,
[14] **DRAKE BURGER**, an individual resident
of Colorado,
[15] **JENNA WILTON**, an individual resident

Case No. 19-CV-13167-BAF-APP

HON. BERNARD A. FRIEDMAN

**PLAINTIFF'S
EMERGENCY MOTION
FOR A TEMPORARY
RESTRAINING ORDER
AND PRELIMINARY
INJUNCTION AND
OTHER RELIEF**

of Colorado,
[16] **LINDSEY DOYLE**, an individual resident
of Texas,
[17] **LARISSA FRIDDEL**, an individual resident
of Texas,
[18] **MATTHEW VAUGHN,** an individual
resident of Texas,
[19] **BEN ZHOU**, an individual resident of Texas,
[20] **COLE EHLINGER**, an individual resident
of Texas.
[21] **NORMA HERRERA**, an individual resident
of Florida,
[22] **ANTHONY CUGINI**, an individual resident of
Texas,
[23] **ADAM HENDERSON**, an individual resident
of Colorado,
[24] **PETER ULMER**, an individual resident of
Louisiana,
[25] **MATTHEW SWABY**, an individual resident
of Pennsylvania,
[26] **SETH MUCHNICK**, an individual resident
of Pennsylvania, and
[27] **SAM ZEGLINSKI**, an individual resident of Pennsylvania.
jointly and severally.

        Defendants.
_____


**MANTESE HONIGMAN, P.C.**
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Douglas L. Toering (P34329)
dtoering@manteselaw.com
Kenneth R. Chadwell (P39121)
kchadwell@manteselaw.com
1361 E. Big Beaver Rd.
Troy, MI 48083
248.457.9200
*Attorneys for Plaintiff*
_____

## <u>PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND OTHER RELIEF</u>

Plaintiff, Burns & Wilcox, Ltd., ("Plaintiff" or "Burns & Wilcox"), by and through its counsel, Mantese Honigman, P.C., and pursuant to Fed. R. Civ. P. 65 and Local Rule 65.1, hereby moves this Court to enter a Temporary Restraining Order ("TRO") and Preliminary Injunction and other relief against Defendants CRC Insurance Services, Inc., Donald Richard Carson, Sr., Sheila A. Hailey, Donald Richard Carson, Jr., Gregory T. Watson, William Lee Coleman, Paige Gibson, Amanda N. Ruppel, Steven Page, John B. Sutton, Andrew Carson, Sandra Krebs, Nicholas McVay, Drake Burger, Jenna Wilton, Lindsey Doyle, Larissa Friddell, Matthew Vaughn, Ben Zhou, Cole Ehlinger, Norma Herrera, Anthony Cugini, Adam Henderson, and Peter Ulmer (collectively, "Defendants"), in the form attached hereto as **EX 1**.

In support of this Motion, Burns & Wilcox relies upon Fed. R. Civ. P. 65, Local Rule 65.1, and the facts, law and analysis set forth in the attached Brief in Support and exhibits thereto, which are incorporated herein by this reference.

Pursuant to Local Rule 7.1(a), Plaintiff's counsel conferred with: (1) corporate counsel for Defendant CRC in person in New York City on Nov. 14, 2019 about many of the issues raised in this motion, and (2) counsel for Donald Carson Sr., neither of whom concur in the relief sought. Attorney Keefe Brooks (Brooks,

i

Wilkins, Sharkey & Turco) has stated that he will be representing CRC Insurance Services Inc. and some or all of the individual Defendants (other than Carson Sr.), but he has not agreed to the relief sought herein on behalf of any clients he will be representing.

WHEREFORE, Plaintiff Burns & Wilcox respectfully requests that its Motion for TRO and Preliminary Injunction be granted.

Respectfully submitted,

**MANTESE HONIGMAN, P.C.**
*Attorneys for Plaintiff*

By: */s/ Gerard V. Mantese*
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Douglas L. Toering (P34424)
dtoering@manteselaw.com
Kenneth R. Chadwell (P39121)
kchadwell@manteselaw.com
1361 E. Big Beaver Rd.
Troy, MI 48083
248.457.9200

Dated: November 26, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BURNS & WILCOX, LTD.,
a Michigan corporation,                    Case No. 19-CV-13167-BAF-APP

       Plaintiff,                        HON. BERNARD A. FRIEDMAN

v.                                         **BRIEF IN SUPPORT OF**
                                           **PLAINTIFF'S EMERGENCY**
[1] **CRC INSURANCE SERVICES INC.**,       **MOTION FOR A TEMPORARY**
an Alabama corporation;                    **RESTRAINING ORDER AND**
[2] **DONALD RICHARD CARSON, SR**.,        **PRELIMINARY INJUNCTION**
an individual resident of Texas;           **AND OTHER RELIEF**
[3] **SHEILA A. HAILEY**, an individual
resident of Texas;
[4] **DONALD R. CARSON, JR**.,
an individual resident of Texas;
[5] **GREGORY T. WATSON**, an individual
resident of North Carolina;
[6] **WILLIAM LEE COLEMAN**, an
individual resident of North Carolina;
[7] **PAIGE GIBSON**, an individual resident
of North Carolina,
[8] **AMANDA N. RUPPEL**, an individual
resident of Florida,
[9] **STEVEN PAGE**, an individual resident
of Florida,
[10] **JOHN B. SUTTON**, an individual
resident of Florida,
[11] **ANDREW CARSON**, an individual
resident of Texas,
[12] **SANDRA KREBS**, an individual resident
of Texas,
[13] **NICHOLAS MCVAY**, an individual
resident of Texas,
[14] **DRAKE BURGER**, an individual resident
of Colorado,
[15] **JENNA WILTON**, an individual resident
of Colorado,

[16] **LINDSEY DOYLE**, an individual resident of Texas,

[17] **LARISSA FRIDDEL**, an individual resident of Texas,

[18] **MATTHEW VAUGHN,** an individual resident of Texas,

[19] **BEN ZHOU**, an individual resident of Texas,

[20] **COLE EHLINGER**, an individual resident of Texas.

[21] **NORMA HERRERA**, an individual resident of Florida,

[22] **ANTHONY CUGINI**, an individual resident of Texas,

[23] **ADAM HENDERSON**, an individual resident of Colorado,

[24] **PETER ULMER**, an individual resident of Louisiana,

[25] **MATTHEW SWABY**, an individual resident of Pennsylvania,

[26] **SETH MUCHNICK**, an individual resident of Pennsylvania, and

[27] **SAM ZEGLINSKI**, an individual resident of Pennsylvania. jointly and severally.

    Defendants.

_____

**MANTESE HONIGMAN, P.C.**
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Douglas L. Toering (P34329)
dtoering@manteselaw.com
Kenneth R. Chadwell (P39121)
kchadwell@manteselaw.com
1361 E. Big Beaver Rd.
Troy, MI 48083
248.457.9200
*Attorneys for Plaintiff*

_____

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................ii-iv

ISSUE PRESENTED...........................................................................v

CONTROLLING AND MOST APPROPRIATE AUTHORITIES.......................vi

I.    INTRODUCTION .....................................................................1

II.   BACKGROUND FACTS ...........................................................2

    A.    Burns & Wilcox ..............................................................2

    B.    CRC .................................................................................4

    C.    Carson Sr. ........................................................................4

    D.    Burns & Wilcox's Confidential and Proprietary Information .................5

    E.    The Scheme ......................................................................7

    F.    The Departures..................................................................10

    G.    Procedural Background.......................................................11

III.  ANALYSIS .............................................................................13

    A.    Legal Standard .................................................................13

    B.    Burns & Wilcox Has a Strong Likelihood of Success on the Merits ....14

        1.    Breach of Fiduciary Duty ...........................................14

        2.    Aiding and Abetting Breach of Fiduciary Duty ............17

        3.    Breach of Contract ....................................................18

    C.    Burns & Wilcox Will Suffer Irreparable Injury
Without A TRO and Preliminary Injunction.............................21

    D.    A TRO and an Injunction Will Not Substantially Harm Others.............22

    E.    A Preliminary Injunction Will Serve the Public Interest .......................23

IV.   SUMMARY & RELIEF REQUESTED.........................................24

# INDEX OF AUTHORITIES

## Cases

*Alpha Capital Mgmt., Inc. v. Rentenbach*,
    287 Mich. App. 589 (2010) ...........................................................................14

*Bonds v. Philips Elect. N.A.,*
    2014 WL 222730 (E.D. Mich. 2014) ...........................................................17

*Central Cartage Co. v. Fewless*,
    232 Mich. App. 517 (1998) ...........................................................................16

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
    511 F.3d 535 (6th Cir. 2007) ......................................................13, 19, 20, 21

*Chem-Trend Inc. v. McCarthy*,
    780 F. Supp. 458 (E.D. Mich. 1991) ............................................................16

*Comedy Cottage, Inc. v. Berk*,
    145 Ill.App.3d 355 (1986) ............................................................................15

*Credit Suisse First Boston, LLC v Vender*,
    2004 WL 2806191 (N.D. Ill. 2004)...............................................................22

*Dowell v. Bitner*,
    273 Ill. App. 3d 681(1995) ...........................................................................14

*Hayes—Albion Corp. v. Kuberski*,
    421 Mich. 170, 180–81, (1985) ....................................................................17

*Henkel Corp. v. Cox*,
    386 F. Supp.2d 898 (E.D. Mich. 2005) .......................................................21

*Johnson Controls v. A.P.T. Critical Sys., Inc.*,
    323 F.Supp.2d 525 (S.D.N.Y. 2004) ...........................................................21

*Kelly Servs., Inc. v. Noretto*,
    495 F. Supp.2d 645 (E.D. Mich. 2007) .............................................16, 19, 22

*LA Young Spring & Wire Corp v. Falls*,
307 Mich. 69 (1943) ....................................................................................17

*Lowry Computer Prods., Inc. v. Head*,
984 F. Supp. 1111 (E.D. Mich. 1997) .........................................................20

*Merrill Lynch v. Bradley*,
756 F.2d 1048 (4th Cir 1985) ......................................................................22

*Merrill Lynch v. Ran*,
67 F. Supp.2d 764, 774 (E.D. Mich. 1999) ..................................................19

*Orbach v. Merrill Lynch, Inc.*,
1994 WL 900431 (E.D. Mich. Feb. 14, 1994) ...................................... 13-14

*Production Finishing Corp. v. Shields*,
158 Mich. App. 479 (1987) ..........................................................................14

*Shenzhen ANT Hi-Tech Ind'l Co. Ltd. v. Medical Imaging Solutions, Int'l*,
2016 WL 10592336 (E.D. Mich. 2016) .......................................................17

*Stryker Corp. v. Bruty*,
2013 WL 1962391 (W.D. Mich. 2013) .........................................................21

*Sunbeam Corp. v. Economy Distrib. Co.*,
131 F. Supp. 791 (E.D. Mich. 1955) ............................................................13

*T.A. Pelsue Co. v. Grand Entepr's, Inc.*,
782 F. Supp. 1476 (D. Colo. 1991) ..............................................................15

*In re Talmage*,
758 F.2d 162 (6th Cir. 1985) ........................................................................24

*Today Homes, Inc. v. Williams*,
272 Va. 462 (2006) .......................................................................................15

*Venture Exp., Inc. v. Zilly*,
973 S.W.2d 602 (Tenn. App. 1998) ..............................................................15

*Vicencio v. Ramirez,*
    211 Mich. App. 501 (1995) ............................................................................14

## <u>Statutes</u>

MCL 450.1541a .....................................................................................................14

## ISSUE PRESENTED

Plaintiff Burns & Wilcox is an insurance wholesaler that employs more than 1,300 people in multiple states. This case arises from a scheme by which another insurance wholesaler (a direct corporate competitor of Burns & Wilcox) targeted and raided Burns & Wilcox by hiring key senior employees (including Donald Carson Sr., a corporate officer).  Rather than taking the time to develop relationships with retail agents on its own, the competitor is aggressively soliciting Burns & Wilcox personnel who hold those critical relationships. Within weeks of Carson Sr.'s departure, almost 50 Burns & Wilcox employees abruptly resigned and immediately began working for the competitor. Burns & Wilcox believes that the competing company will continue improperly soliciting and hiring Burns & Wilcox employees, until ordered to stop doing so.

Carson Sr., as a former Burns & Wilcox Executive Vice President, has a strict fiduciary duty not to misuse Burns & Wilcox confidential information or to disclose that information to a competitor to the detriment of Burns & Wilcox.

All the individual Defendants are former Burns & Wilcox employees. Except for Carson Sr., each signed an agreement requiring the employee to protect Burns & Wilcox's confidential information, not to solicit employees from its employ, and not to solicit its clients.

> **Should the Court issue a temporary restraining order and preliminary injunction enjoining all Defendants from: (1) soliciting Burns & Wilcox's employees and retail agents; (2) using Burns & Wilcox's trade secrets; and (3) breaching their contractual agreements and fiduciary duties to Burns & Wilcox?**

> Plaintiff Burns & Wilcox, Ltd. answers:     "Yes"
> Defendants would answer:            "No."

v

## <u>CONTROLLING AND MOST APPROPRIATE AUTHORITIES</u>

Fed. R.Civ.P. 65 and Local Rule 65.1

*Certified Restoration Dry Cleaning Network*, *L.L.C. v. Tenke Corp.*,
      511 F.3d 535 (6th Cir. 2007)

*Dowell v. Bitner*,
      273 Ill. App. 3d 681(1995)

*LA Young Spring & Wire Corp v. Falls*,
      307 Mich. 69 (1943)

*Merrill Lynch v. Ran*,
      67 F. Supp.2d 764 (E.D. Mich. 1999)

## I.    __INTRODUCTION__

This case arises from a brazen, on-going, corporate poaching scheme to steal a competitor's employees and obtain an improper competitive advantage by improperly soliciting a competitor's clients and accounts. Plaintiff, Michigan-based Burns & Wilcox, Ltd., is one of North America's leading insurance wholesale brokers, employing more than 1,300 people in offices across the county. The predator, Defendant CRC Insurance Services, Inc. ("CRC"), is a direct competitor. Sometime prior to October 18, 2019, Burns & Wilcox's highest-paid employee (employed there 30+ years) connected with CRC, and together they orchestrated a mass exodus of Burns & Wilcox employees to CRC. Unless stopped, the raids will continue.

When the scheme began, Defendant Donald Carson Sr. was a Burns & Wilcox Executive Vice President. As a corporate officer, he owed strict fiduciary duties to the company to act for its benefit, and not for the benefit of himself or a competitor. The other 25 Defendants are individuals, each of whom signed a contract with Burns & Wilcox, agreeing to protect its confidential information, not to solicit its employees, and not to solicit its clients.

CRC knew that Carson owed fiduciary duties to Burns & Wilcox, and that the other 25 individuals owed contractual duties to Burns & Wilcox. But CRC and Carson Sr. ignored their legal obligations—CRC used high pressure tactics and

Carson Sr.'s insider knowledge to solicit Burns & Wilcox employees, so CRC could illicitly gain access to Burns & Wilcox's confidential and proprietary information.

In the last six weeks, CRC induced 46 Burns & Wilcox employees to resign and begin work at CRC, and more are expected. Unless this Court enjoins Defendants' actions, Burns & Wilcox will suffer further irreparable injury, including loss of confidential and proprietary information, personnel, clients, goodwill, and critical business relationships with retail agents.

## II. <u>BACKGROUND FACTS</u>

### A. **Burns & Wilcox**

In 1969, Herbert W. Kaufman established Burns & Wilcox in Michigan as an insurance wholesaler specializing in securing insurance coverage for unusual and hard-to-place risks.[1] **<u>EX 2</u>**, Aff. of Alan Jay Kaufman, ¶¶3, 4. The company remains in private hands, although it is now directed by Herbert Kaufman's son, Alan Jay Kaufman, who is the company's President and CEO. **<u>EX 2</u>**, ¶4. His CV is attached. **<u>EX 3</u>**. Alan's son, Daniel, is Burns & Wilcox's Chief Operating Officer. Alan's

---

[1] An insurance wholesaler is unique in the insurance world. Generally, when a company has a risk to be insured, its insurance agent will secure coverage from an insurance company offering a standard policy. However, when no policy is available, the agent will contact an insurance wholesaler to locate an insurer to cover the risk through the excess and/or surplus insurance lines insurance marketplace. This permits companies with unusual or high risks (such as transportation and marine) to procure insurance.

daughter, Jodie Kaufman Davis, is Senior V.P. & Managing Director of Burns & Wilcox Canada. **EX 2**, ¶7.

Burns & Wilcox is still headquartered in Michigan but its operations have grown; it operates more than 50 offices across the U.S. and Canada.[2] One of its largest and most profitable areas of business is its "small business" segment. **EX 2**, ¶8.

Burns & Wilcox has always devoted substantial resources to the recruitment, training, mentoring and compensation of its professional employees so that they can effectively keep clients and client referral sources satisfied. (Indeed, Burns & Wilcox has the reputation in the industry of investing more money training of its personnel than other companies.) **EX 2**, ¶¶9, 10. This emphasis is because the relationships that Burns & Wilcox personnel have with retail insurance agents are the company's most valuable asset. More specifically, when Burns & Wilcox places a policy with an insurance carrier that originated with a retail agent, the resulting policy and the continuing relationship with the retail agent become an asset of Burns

---

[2] Burns & Wilcox maintains U.S. offices in: Birmingham, AL; Scottsdale, AZ; Little Rock, AR; Fresno, Los Angeles, Sacramento, San Diego, San Francisco, Woodland Hills, CA; Denver, CO; Daytona Beach, Orlando, Tampa, FL; Atlanta, GA; Chicago, IL; Indianapolis, IN; Overland Park, KS; Baton Rouge, Monroe and New Orleans, LA; Baltimore, MD, Detroit/Farmington Hills, Grand Rapids, MI; Minneapolis, MN, St. Louis, MO; Oxford, MS, Las Vegas NV; Parsippany, NJ; Albuquerque, NM; Charlotte, Morehead City, Wilmington, NC; New York City, NY; Cleveland, OH; Philadelphia, Pittsburgh, PA; Charleston, Myrtle Beach, SC; Nashville, TN; Arlington (Dallas/Ft. Worth), North Dallas, Houston, San Antonio, TX; Salt Lake City, UT, and Milwaukee, WI.  **EX 2**, ¶ 5.

3

& Wilcox. **Burns & Wilcox's crucial relationships with its retail agents** are at the heart of this case. Rather than developing its own relationships with retail agents, CRC is stealing the relationships from a competitor by purloining the personnel who hold the hard-earned and well-established relationships with the retail agents on behalf of Burns & Wilcox.

### B.    CRC

CRC is a direct competitor of Burns & Wilcox. **EX 2**, ¶14. Although CRC is a larger company overall than Burns & Wilcox, CRC holds only a small portion of the market share in the "small business" space.[3]

### C.    Carson Sr.

Herbert Kaufman hired Carson Sr. more than 30 years ago. Carson Sr. was "rough around the edges" and did not fit the typical mold, but Herbert saw potential in him, vested him with great responsibility, and treated him like a son. **EX 2**, ¶15. When Herbert passed away in 2001, his son Alan took over Burns & Wilcox, and

---

[3] According to CRC's website, CRC maintains offices in at least the following U.S. locations: Chicago, IL; Denver, CO; Detroit, MI; Ft. Worth, San Antonio, Houston, TX; Jackson, MS; Kansas City, St. Louis, MO; Little Rock, AR; Los Angeles, Sacramento, San Francisco, San Diego, Woodland Hills, CA; Minneapolis, MN; New Orleans, LA; Oxford, MS; Philadelphia PA; Salt Lake City, UT, and Scottsdale, AZ.  CRC itself is an Alabama corporation. It is a subsidiary of BB&T Corporation, a bank holding company based in Winston-Salem, North Carolina, that operates branches in 15 states and offers banking, securities brokerage, mortgage, and insurance products.

Alan trusted Carson Sr. completely. Carson Sr. told people at that time that he was almost running the company. **EX 2**, ¶¶16, 17.

By 2019, Carson Sr. was an Executive Vice President, Managing Director of Burns & Wilcox, one of only four executive vice presidents. **EX 2**, ¶18. Because of his position, Carson Sr. had unfettered access to all Burns & Wilcox U.S. financial records, including time-sensitive financial reports. This included the production amounts of each producer and managing director in each Burns & Wilcox office. He also had access to names of Burns & Wilcox's clients, the retail agents, all commission rates, and virtually every other confidential trade secret. **EX 2**, ¶20.

As a result of Carson Sr.'s access to Burns & Wilcox's confidential, proprietary and trade secret information, he knew who the highest performers were, what their compensation levels were, and which agents they worked with; he also knew the employees' strengths and weaknesses, as well as who had critical relationships with which retail agents and clients. **EX 2**, ¶21. For many of Carson Sr.'s 30+ years at Burns & Wilcox, he was its highest-paid employee. **EX 2**, ¶17. With his vast knowledge of the company, Carson Sr. held the "keys to the kingdom." He is now unlocking the kingdom for CRC.

### D. Burns & Wilcox's Confidential and Proprietary Information

In light of the highly competitive nature of this industry and the value of its relationships with retail agents and others, Burns & Wilcox has consistently taken

steps to safeguard and protect its confidential and proprietary information, its trade secrets, and its relationships. **EX 2**, ¶22. Among other things, Burns & Wilcox has required its personnel to sign detailed contracts agreeing to protect and safeguard this information. In 2018, the company revised its agreements to ensure that they conform to industry standards. As a result of these revisions, the terms of the two key agreements at issue here ("Individual Production Award" agreement and "Management Bonus Agreement"), are consistent with similar agreements at its competitors. **EX 2**, ¶¶24-26.

All individual Defendants except Carson Sr. signed written agreements with Burns & Wilcox that included non-solicitation and non-disclosure clauses.[4] The Agreements each contain the following provisions:

> [E]xcept as necessary for the performance of Employee's duties and responsibilities for Employer, at no time during or after Employee's employment with Employer, shall Employee directly or indirectly (nor instruct, request or encourage any other person or entity to directly or indirectly) use any trade secret or confidential or proprietary information (including, but not limited to, agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs,

---

[4] Four individual Defendants entered into a Management Bonus Agreement, which contains these clauses. See **EX 4** Cugini; **EX 5** Ruppel; **EX 6** Swaby; **EX 7** Watson. In addition, 21 employees electronically signed a standard Individual Production Award agreement, which contains these clauses, **EX 8** (IPA form). See electronic acknowledgements for: **EX 9** (Burger); **EX 10** (Carson, Jr.); **EX 11** (Drew Carson); **EX 12** (Coleman); **EX 13** (Doyle); **EX 14** (Ehlinger); **EX 15** (Friddell); **EX 16** (Gibson); **EX 17** (Hailey); **EX 18** (Herrera); **EX 19** (Henderson); **EX 20** (Krebs); **EX 21** (McVay; **EX 22** (Muchnick); **EX 23** (Page); **EX 24** (Sutton); **EX 25** (Ulmer); **EX 26** (Vaughn); **EX 27** (Wilton); **EX 28** (Zeglinski); **EX 29** (Zhou).

pricing and/or financial information) belonging to Employer.   [**EX. 4, 5, 6, 7, and 8** at §5(a)(i) (underline added)]

**Restrictive Covenants**. Employee agrees further that in order to preserve the confidentiality of the Confidential Information, to prevent the theft or misuse of the Confidential Information, to protect Employer's client and account relationships, with both its prospective and existing clients, to protect its client goodwill, and to protect Employer from improper or unfair competition, Employee will not, directly or indirectly, during Employee's employment and for a period of two (2) years from the date Employee's employment with Employer ends … perform any of the following activities:

      i.     **Non-Solicitation of Company Officers, Employees, or Contractors**. Employee will not, directly or indirectly, solicit, divert, or attempt to solicit or divert, from Employer any officer, employee, contractor or any person providing services to, or on behalf of, Employer, or influence any such person to no longer serve as an officer, employee or contractor, or provide services to, or for, Employer.

      ii.     **Non-Solicitation of Company Clients and Accounts.** Employee will not: (i) call upon, contact, solicit, divert, service, or accept any business from any Burns & Wilcox client or account for the purposes of directly or indirectly providing any services or products similar to those offered by Employer, including, but not limited to, distribution, underwriting, financing, claims, loss control and/or audits; (ii) directly or indirectly solicit, divert, service or accept on behalf of any new employer or new entity any insurance policy for a particular insured party for which insured party the Employee [or any member of Employee's Team] had provided such services or attempted to provide services in the two years prior to the end of Employee's employment with Employer.  *** [**EX. 4, 5, 6, 7, and 8** at §5(d)(i)-(ii) (underline added)].

## E.    The Scheme

In the summer of 2019, Carson Sr. headed Burns & Wilcox's Dallas/Ft. Worth office, which employed 71 people. He was also responsible for Burns & Wilcox's

offices in Houston, San Antonio, St. Louis, Overland Park KS, Denver and Salt Lake City. A substantial portion of Carson Sr.'s compensation rested on the profitability of these offices. **EX 2**, Kaufman Aff., ¶19.

From Carson Sr.'s position of power and knowledge, he began to lay the foundation for the scheme by spreading falsehoods about Burns & Wilcox's business operations, claiming (falsely) that it was facing bankruptcy, that jobs would be outsourced if people did not quote new business, and therefore that many employees' continued employment was in jeopardy. On October 15, 2019, Sheila Hailey (a Corporate Vice President in the Dallas/Ft. Worth office) told a group of six employees that "outsourcing service work" by that office "would be required and that the only job that would be left for [the affiant underwriter] would be to quote" business. **EX 30,** Deborah Cummings Aff., ¶¶4,5. Carson Sr. did nothing to correct these false statements. **EX 30,** ¶6.

Three days later—on October 18, 2019—Carson Sr. abruptly climbed atop a table at the Burns & Wilcox Dallas/Ft. Worth office and announced to a gathering that he was departing for competitor CRC.[5] At the same meeting, Sheila Hailey and

---

[5] Carson timed his resignation so that the shock of his resignation reverberated during Burns & Wilcox's 50th Anniversary celebration at its annual leadership conference in Michigan the following weekend. **EX 2**, Kaufman Aff., ¶27.

Donald Carson, Jr. ("Carson Jr.") also announced their resignation from Burns & Wilcox to join Carson Sr. at the CRC Dallas office.

Certain Defendants have circulated rampant misrepresentations about Burns & Wilcox's ability to handle business in its Texas offices (from which CRC hired 25+ people in under one month). CRC, for its part, has fomented the false representations about Burns & Wilcox, and offered increased commissions designed specifically to attract retail agents away from Burns & Wilcox. See, e.g. **EX 31,** Nov. 1, 2019 CRC email to retail agent ("we anticipate servicing issues" at Burns & Wilcox arising from "serious turnover"; CRC is therefore offering "increased commission" of 14% on new business).

The scheme also involves high pressure solicitation of Burns & Wilcox employees. For example, a week after Ms. Hailey resigned, she called a former co-worker in the Burns & Wilcox Dallas/Ft. Worth office, Rebecca Walker, on Walker's personal cell phone and told her that Hailey's "new employer" had not yet received Walker's resume. **EX 32,** Walker Aff., ¶5. Although Walker told Hailey that she was not interested, CRC's Chief Operating Officer, Neil Kessler, called Walker a week later, and then texted her on November 5, to discuss "opportunities at CRC." **EX 32,** ¶¶6-8.

Numerous additional Burns & Wilcox employees have been contacted by Carson Sr., Kessler and others at CRC. CRC representatives made high pressure

employment offers to many Burns & Wilcox employees that contained one or more of these pressure points: (1) the offer had to be accepted in an unreasonably short time (i.e. hours, rather than days); (2) offer included cash wired immediately upon acceptance; (3) offer included exorbitant immediate over-market cash incentives; and (4) offer demanded employment be commenced at CRC the next day.

### F.    The Departures

As the scheme unfolded, the following people resigned from Burns & Wilcox to immediately commence work at a CRC office in the same city:

| | Employee | Title | Burns & Wilcox Office | Resign Date |
|---|---|---|---|---|
| [01] | Greg Watson | Associate VP | Charlotte, NC | 10/09/19 |
| [02] | Lee Coleman | Broker | Charlotte, NC | 10/16/19 |
| [03] | Amanda Ruppel | Managing Dir. | Tampa | 10/16/19 |
| [04] | Steven Page | Sr. Underwriter | Tampa | 10/17/19 |
| [05] | John Sutton | Sr. Underwriter | Tampa | 10/17/19 |
| [06] | Donald Carson Sr. | Executive VP | Dallas/Ft Worth | 10/18/19 |
| [07] | Donald Carson Jr. | Assoc. Managing Dir. | Dallas/Ft Worth | 10/18/19 |
| [08] | Sheila Hailey | Corporate VP | Dallas/Ft Worth | 10/18/19 |
| [09] | Paige Gibson | Underwriting Mgr. | Charlotte, NC | 10/25/19 |
| [10] | Jayson Alexander | Associate Broker | Dallas/Ft Worth | 10/29/19 |
| [11] | Nicholas McVay | Broker | Dallas/Ft Worth | 10/29/19 |
| [12] | Drake Burger | Senior Broker | Denver | 10/30/19 |
| [13] | Shay Hanson | Assoc Broker | Denver | 10/30/19 |
| [14] | Adam Henderson | Sr. Broker | Denver | 10/30/19 |
| [15] | Jenna Wilton | Product Manager | Denver | 10/30/19 |
| [16] | Alex Carson | Associate Broker | Dallas/Ft Worth | 10/30/19 |
| [17] | Drew Carson | Broker | Dallas/Ft Worth | 10/30/19 |
| [18] | Megan Caruso | Broker | Dallas/Ft Worth | 10/30/19 |
| [19] | Julia Davis | Assoc.  Broker | Dallas/Ft Worth | 10/30/19 |
| [20] | Hayden Ray | Assoc. Broker | Dallas/Ft Worth | 10/30/19 |
| [21] | Sandra Krebs | Broker | Dallas/Ft Worth | 10/30/19 |
| [22] | Lindsey Doyle | Assoc Managing Dir | Houston | 10/30/19 |

| [23] | Tony Cugini | VP Managing Dir | Houston | 10/31/19 |
|------|-------------|-----------------|---------|----------|
| [24] | Cole Ehlinger | Sales Associate | Houston | 11/01/19 |
| [25] | Johanna Mahfud | Sr. Assoc Underwriter | Tampa | 11/01/19 |
| [26] | Alexandra Ross | Ass't Underwriter | Denver | 11/01/19 |
| [27] | Ryan Voyles | Associate Broker | Atlanta | 11/01/19 |
| [28] | Cameron Tabor | Sales Associate | Dallas/Ft Worth | 11/04/19 |
| [29] | Sean Beatty | Sales Associate | Dallas/Ft Worth | 11/06/19 |
| [30] | Madison Harnist | Sales Associate | Dallas/Ft Worth | 11/06/19 |
| [31] | Kip Ulmer | Associate VP | New Orleans | 11/06/19 |
| [32] | Michelle Bates | Sr. Assoc Underwriter | Tampa | 11/06/19 |
| [33] | Larissa Friddel | Sales Associate | Houston | 11/11/19 |
| [34] | Matthew Marfisi | Sales Associate | Houston | 11/11/19 |
| [35] | Matthew Sease | Sales Associate | Houston | 11/11/19 |
| [36] | Tyler Webre | Associate Broker | Houston | 11/11/19 |
| [37] | Ben Zhou | Broker | Houston | 11/11/19 |
| [38] | Matthew Vaughn | Broker | Houston | 11/11/19 |
| [39] | Norma Herrera | Sales Associate | Houston | 11/13/19 |
| [40] | Seth Muchnick | Underwriter | Philadelphia | 11/13/19 |
| [41] | Sam Zeglinski | Underwriter | Philadelphia | 11/13/19 |
| [42] | Joseph Perese | Underwriter | Philadelphia | 11/13/19 |
| [43] | Timothy Sieger | Underwriter | Philadelphia | 11/13/19 |
| [44] | Matt Swaby | Assoc Managing Dir | Philadelphia | 11/13/19 |
| [45] | Jennifer McRae | Product Director | Houston | 11/14/19 |
| [46] | Matt Doyal | Associate Broker | Houston | 11/18/19 |

**EX 33,** Madigan Aff., Burns & Wilcox HR Manager, ¶5.

## G.   Procedural Background

Burns & Wilcox filed its Complaint on October 28, 2019, naming 11 Defendants, including CRC, Carson Sr., and 9 former Burns & Wilcox employees who resigned to move to CRC.[6]  Because the defections continued, Burns & Wilcox

---

[6] One named Defendant, Alicia Appel, did not begin employment at CRC; she was voluntarily dismissed on Nov. 6, 2019. [ECF 5; PageID.121].

filed a First Amended Complaint ("FAC") on November 19, 2019, naming 27 former Burns & Wilcox employees as Defendants (and identifying 16 more former employees who signed non-disclosure agreements, but who could not be parties because they had not consented to personal jurisdiction). The Complaint and the FAC are based on diversity jurisdiction, and contain eight counts: Count I (breach of fiduciary duty, Carson Sr. only); Count II (aiding and abetting breach of fiduciary duty, CRC); Count III (tortious interference, CRC and Carson Sr.); Count IV (unjust enrichment, CRC, Carson Sr.); Count V (Defend Trade Secrets Act, all Defendants); Count VI (Michigan Uniform Trade Secrets, all Defendants); Count VII (Breach of Contract, all Defendants other than Carson Sr.); and Count VIII (Civil Conspiracy to deprive Burns & Wilcox of confidential and protected information, all Defendants).

Burns & Wilcox seeks entry of a TRO and preliminary injunction against all Defendants on Counts I, II, V, VI, VII and VIII. Burns & Wilcox seeks to enjoin all Defendants from: (1) using its confidential and proprietary information; (2) directly or indirectly soliciting Burns & Wilcox employees to work at CRC; and (3) directly or indirectly contacting Burns & Wilcox retail agents and clients, and (4) otherwise causing Burns & Wilcox's business to go to CRC.

Further, as texts and emails will be critical to proving Defendants' improper conduct, and may be irretrievable at a later time, Burns & Wilcox also seeks an Order requiring each Defendant to turn over their cellular devices to Burns & Wilcox's IT

forensic experts immediately for copying of all emails and texts to or from Burns & Wilcox personnel. See **EX 34**, Affidavit of Larry Lieb, ¶5.

## III.  ANALYSIS

### A.  Legal Standard

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Certified Restoration Dry Cleaning Network*, *L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). "The status quo to be preserved by the issuance of a preliminary injunction is the last actual, peaceable, non-contested status which preceded the pending controversy." *Sunbeam Corp. v. Economy Distrib. Co.*, 131 F. Supp. 791, 793 (E.D. Mich. 1955). "Given this limited purpose, 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Certified*, 511 F.3d at 542.

> When considering a motion for preliminary injunction, a district court must balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. These four considerations are "factors to be balanced, not pre-requisites that must be met." "The district judge 'is not required to make specific findings concerning each of the four factors … if fewer factors are dispositive of the issue.'" *Certified*, 511 F.3d at 542 (citations omitted).

"In general, the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Orbach v.*

*Merrill Lynch*, *Inc*., 1994 WL 900431, at *5 (E.D. Mich. Feb. 14, 1994).  See **EX 35** (all unpublished cases cited in this brief).

**B.**      **Burns & Wilcox Has a Strong Likelihood of Success on the Merits**

**1.**      **Breach of Fiduciary Duty**

Burns & Wilcox has a substantial likelihood of prevailing on its claim against Carson Sr. for breach of fiduciary duty, occurring both before and after his resignation from Burns & Wilcox. "It is beyond dispute that in Michigan, directors and officers of corporations are fiduciaries who owe a strict duty of good faith to the corporation which they serve." *Prod. Finishing Corp. v. Shields*, 158 Mich. App. 479, 486 (1987). See also MCL 450.1541a. A corporate officer may not divert an opportunity from the corporation he serves to himself, for his own personal gain. *Id.,* 158 Mich. App. at 485-486 (citing authorities). A breach of fiduciary duty occurs "when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Vicencio v. Ramirez,* 211 Mich. App. 501, 508 (1995).

A corporate officer's fiduciary duty to use corporate information only for the company's benefit continues even after the officer resigns. See, e.g. *Dowell v. Bitner*, 273 Ill. App. 3d 681, 691 (1995) ("The resignation of an officer will not sever liability for transactions completed after termination of the officer's association with the corporation for transactions which began during the existence of the relationship,

or were founded on information acquired during the relationship."); *T.A. Pelsue Co. v. Grand Entepr's, Inc.,* 782 F. Supp. 1476, 1485–86 (D. Colo. 1991) ("Resignation or termination does not automatically free a director or employee from his or her fiduciary obligations. A former director breaches his or her fiduciary duty if he or she engages in transactions that had their inception before the termination of the fiduciary relationship or that were based on information obtained during that relationship."); *Venture Exp., Inc. v. Zilly,* 973 S.W.2d 602, 604–05 (Tenn. App. 1998) ("Resignation from an office or position burdened with a confidential or fiduciary obligation does not sever accountability for a transaction which had its inception prior to resignation. Were the rule otherwise, the fiduciary obligation would disintegrate by resignation of the fiduciary whenever the attraction of personal gain ... proved stronger than what would then be an unenforceable moral obligation.").[7]

---

[7] See also *Today Homes, Inc. v. Williams*, 272 Va. 462, 474 (2006) ("resignation or termination does not automatically free a director or employee from his or her fiduciary obligations … Liability post-termination continues only for those transactions completed after termination of the officer's association with the corporation, but which began during the existence of the relationship or that were founded on information gained during the relationship."); *Comedy Cottage, Inc. v. Berk*, 145 Ill.App.3d 355 (1986) ("Even assuming *arguendo* that defendant did not begin competing for the lease until after his resignation, defendant remained bound by his fiduciary duty because his acquisition of the lease was based upon knowledge acquired during his employment.").

15

This issue was indirectly addressed in *Chem-Trend Inc. v. McCarthy*, 780 F. Supp. 458, 463 (E.D. Mich. 1991), where Judge Newblatt enjoined a former employee from soliciting plaintiff's customers, explaining that "the basis for the injunction **is the continuing fiduciary duty that McCarthy owes to his former employer**; the duty 'not to take advantage of a still subsisting confidential relation created during the prior agency relation.'" (citing Restatement (Second) of Agency, §396(b)) (Emphasis added). See also *Kelly Svs.*, *Inc*. *v*. *Noretto*, 495 F. Supp.2d 645, 659 (E.D. Mich. 2007) (Gadola, J.) ("entirely unreasonable to expect Noretto to work for a direct competitor in a position similar to that which he held with Kelly and forego the use of the intimate knowledge of Kelly's business operations.")[8]

---

[8] See also *Central Cartage Co v Fewless*, 232 Mich. App. 517 (1998), where the plaintiff used "dry vans" to ship automotive parts, and sued its former regional vice president, Fewless, for breach of fiduciary duty. While still employed, Fewless repeatedly urged that the company to expand into temperature-controlled long-haul transport, but the company declined. 232 Mich. App. at 521. Later, while still employed at Central, Fewless established a logistics company, although he did not solicit business for it while with Central. At trial, the jury found that Fewless did not breach his fiduciary duty to Central after termination. 232 Mich. App. at 523-524.

On appeal, the Court examined the trial court's denial of Central's motion for JNOV on whether Fewless' post-termination acts breached his fiduciary duty to Central. The Court held that: "particularly in light of the fact than an agreement not to compete did not exist between Central and Fewless, reasonable minds could differ regarding the question whether, after Fewless was terminated and **Central was armed with all relevant facts surrounding the SKAN/Navajo situation**, Fewless and [his new company] were free to pursue these revenues." 232 Mich. App. at 525. (Emphasis added).

The key to *Fewless* is that: (1) the officer disclosed all relevant ideas; (2) the company declined to act on them, and (3) the officer disclosed his competing enterprise before he left. In contrast, Carson disclosed nothing to Burns & Wilcox.

Even in the absence of a contract, "former employees are bound at common law from using a former employer's trade secrets or confidential information for his own benefit or to compete against that former employer." *Bonds v. Philips Elect. N.A.,* 2014 WL 222730 at * 7 (E.D. Mich. 2014) (Rosen, J.), aff'd 613 Fed. Appx. 469 (6th Cir 2015), citing *Hayes—Albion Corp. v. Kuberski*, 421 Mich. 170, 180–81, (1985).

## 2.    Aiding and Abetting Breach of Fiduciary Duty

Michigan law recognizes the tort of aiding and abetting a breach of fiduciary duty. See, e.g., *Alpha Capital Mgmt., Inc. v. Rentenbach*, 287 Mich. App. 589, 631–32 (2010); *LA Young Spring & Wire Corp v. Falls*, 307 Mich. 69, 106 (1943) ("Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary.") As this Court held in *Shenzhen ANT Hi-Tech Ind'l Co. Ltd. v. Medical Imaging Solutions, Int'l,* 2016 WL 10592336, *5 (E.D. Mich. 2016), "the four elements of aiding and abetting a breach of fiduciary duty are: (1) a breach of fiduciary duty by a person; (2) knowledge by the defendant of the other person's breach of fiduciary duty; (3) substantial assistance or encouragement by the defendant to the person breaching the fiduciary duty; and (4) resulting harm."

---

His use of its confidential information (gained while an officer, but used after his departure), is improper.

Burns & Wilcox has a substantial likelihood of prevailing on its claim against CRC for aiding and abetting Carson Sr.'s breach of fiduciary duty. Here, Carson Sr. supervised Burns & Wilcox's Dallas/Ft. Worth, Houston and Denver offices. The fact that 14 people left the Dallas/Ft. Worth office, 13 people left the Houston office, and 5 left the Denver office, all within a one-month span, and that all 32 of them went to CRC strongly supports this claim. Also, Carson Sr.'s compensation at Burns & Wilcox was largely based on the success of these offices. It strains credibility to believe that CRC independently contacted all of these employees and convinced all 32 to defect, without Carson Sr.'s involvement.

### 3. Breach of Contract

Each individual Defendant other than Carson Sr. signed a contract with Burns & Wilcox agreeing never to disclose in any way "directly or indirectly" Burns & Wilcox's "trade secret or confidential or proprietary information." [**EX. 4, 5, 6, 7, and 8** at §5(a)(i)] This information specifically included "agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs, pricing and/or financial information." *Id.* These Defendants further agreed, while employed and for two years thereafter:

[1]   to protect Burns & Wilcox's client and account relationships with prospective and current clients, to protect its goodwill, and to protect it from improper and unfair competition [**EX. 4, 5, 6, 7, and 8** at §5(d)];

[2]   not to attempt to influence anyone to cease serving as an employee of Burns & Wilcox [**EX. 4, 5, 6, 7, and 8** at 5(d)(i)]; and

18

[3]   not to solicit or accept any business from any Burns & Wilcox client for anyone providing similar products or services to Burns & Wilcox, or accept on behalf of any new employer or entity any insurance policy for a party for which the employee had provided such services in the two years before leaving Burns & Wilcox [**EX. 4, 5, 6, 7, and 8** at 5(d)(ii)].

Non-solicitation clauses are enforceable under Michigan law. *Merrill Lynch v. Ran*, 67 F. Supp. 2d 764, 774 (E.D. Mich. 1999); *Kelly Servs*., *Inc. v. Noretto*, 495 F. Supp.2d 645, 657 (E.D. Mich. 2007). In evaluating such clauses for reasonableness, Michigan courts generally examine the clause's duration, geographic scope, and the type of employment prohibited. See *Certified Restoration Dry Cleaning Network*, *L.L.C. v. Tenke Corp*., 511 F.3d 535, 546 (6th Cir. 2007). "They also consider the reasonableness of the competitive business interests justifying the clause." *Id*.

**Duration**.  "With respect to duration, Michigan courts have not provided any bright line rules." *Certified*, 511 F.3d at 547. Rather, they have upheld non-solicitation agreements covering time periods of six months to three years. *Id*. The two-year duration here is reasonable.

**Geographic Scope.** Michigan courts do not impose strict limitations on geographic scope of restrictive covenants. Instead, geographic limitations must be tailored so that the restriction is no greater than reasonably necessary to protect the employer's legitimate business interests. *Certified*, 511 F.3d at 547. When an employer has business interests in several states, geographically-unlimited

19

restrictive covenants are reasonable. *See e.g.*, *Lowry Computer Prods.*, *Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (geographically-unlimited, one-year non-compete reasonable where employer "service[d] accounts in 48 states and in various foreign countries"). Here, because Burns & Wilcox has offices (and clients) in 28 states, **EX 2**, Kaufman Aff., ¶6, the scope of its clauses is reasonable.

**Type of Business.** Whether the type of business activity prohibited by contract is reasonable is largely determined by the competitive business interests that Plaintiff's clause is designed to protect. *Certified*, 511 F.3d at 547. "[It] must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *Id*. Here, Burns & Wilcox's restrictive covenants are reasonable in relation to its competitive business interests because the clauses are aimed at: (a) preventing outside use of Burns & Wilcox's trade secrets and confidential information in competition with Burns & Wilcox;[9] and (b) protecting the goodwill, agent, and client relationships that Burns & Wilcox has spent resources developing.[10] Burns &

---

[9] See *Certified*, 511 F.3d at 547 ("Reasonable covenants may protect such legitimate interests as trade secrets, confidential information, close contact with the employer's customers or customer lists, or cost factors and pricing.")

[10] See *Certified*, 511 F.3d at 548 (employer has a reasonable business interest in protecting its good will and, specifically, in restricting its former employees from enticing away the employer's old customers.)

Wilcox and CRC are indisputably competitors engaged in "similar business."

Burns & Wilcox has demonstrated a strong likelihood of success on the merits of its Breach of Contract claim against Defendants.

### C. Burns & Wilcox Will Suffer Irreparable Injury Without A TRO and Preliminary Injunction

The fact that 46 employees left Burns & Wilcox and went to CRC, taking retail relationship information belonging to Burns & Wilcox with them has caused irreparable harm to Burns & Wilcox. **EX 2,** Kaufman Aff., ¶28. The 25 Defendants who signed restrictive covenants agreed that, due to the highly competitive nature of Burns & Wilcox's business, violation of their agreement would cause irreparable harm. [**EX. 4, 5, 6, 7, and 8** at §5(e)]. Even in the absence of such agreement, however, actual or threatened use of confidential information constitutes irreparable harm sufficient for issuance of an injunction.[11]

Harm is especially devastating when employees moved to a direct competitor. *See e.g.*, *Kelly Servs.*, *Inc. v. Noretto*, 495 F. Supp.2d 645, 659 (E.D. Mich. 2007)

---

[11] *Stryker Corp. v Bruty*, 2013 WL 1962391 at *7 (W.D. Mich. 2013). See also *Henkel Corp. v. Cox*, 386 F. Supp.2d 898, 904 (E.D. Mich. 2005) (Feikens, J.) (where there is evidence of both threatened and actual misappropriation of trade secrets, without injunctive relief, company would likely suffer competitive losses and losses of customer goodwill, which losses are inherently difficult to calculate and are sufficient to support an injunction.); *Johnson Controls v. A.P.T. Critical Sys.*, *Inc.*, 323 F. Supp.2d 525, 533 (S.D.N.Y. 2004) (irreparable harm presumed where trade secret has been misappropriated).

(irreparable harm where Plaintiff "forced to labor under the burden of unfair competition as a result of the informational asymmetry presented by its direct competitor having an employee with intimate knowledge of its operations.") Even worse is the domino effect; one group of employees defect and then another.

The harm to Burns & Wilcox is also irreparable because the agreements here include non-solicitation clauses, and people cannot be "unsolicited" once a solicitous act has occurred. *Merrill Lynch v Bradley*, 756 F.2d 1048, 1054 (4th Cir 1985). That is, harm is irreparable once a former co-worker or a client has been approached; the only way to avoid such harm is to prevent it before it occurs.

Finally, the Court should consider the irreparable harm from Defendants continuing to solicit Burns & Wilcox employees for CRC. See *Credit Suisse First Boston, LLC v Vender*, 2004 WL 2806191, *3 (N.D. Ill 2004) ("court must also consider the potential for irreparable harm based on the impact defendants' actions could have in encouraging other CSFB employees, as well as the competitors who are tempted to employ them, to engage in similar behavior.")

### D.      A TRO and an Injunction Will Not Substantially Harm Others

The requested preliminary injunction will not cause harm to Defendants. Burns & Wilcox is not asking that its former employees be fired from CRC. Rather, it seeks to enjoin Defendants' use (and benefit from) Burns & Wilcox's confidential information, and their solicitation of, and interaction with, current Burns & Wilcox

22

employees and clients. It further seeks an injunction against CRC directly or indirectly contacting Burns & Wilcox employees and all Burns & Wilcox retail agents and clients that were formerly serviced by any of the defectors.

Note that 25 Defendants are already contractually obligated not to solicit Burns & Wilcox employees or clients for two years following employment at Burns & Wilcox. The preliminary injunction merely maintains the *status quo* by enforcing what is already required, while preventing further injury to Burns & Wilcox. Further, all former Burns & Wilcox employees, including Carson Sr., are obligated not to misuse Burns & Wilcox's confidential information; this obligation extends beyond the two-year contractual prohibitions. [**EX. 4, 5, 6, 7, and 8** at §5(a)(i); Carson Sr.'s continuing fiduciary duties].[12]

## E.        A TRO and an Injunction Will Serve the Public Interest

The public interest will not be harmed by issuance of an injunction.  Rather, as the Sixth Circuit reasoned in *In re Talmage*, 758 F.2d 162, 166 (6th Cir. 1985):

> We perceive no serious injury to the public in respect to the terms of a one-year covenant not to compete, although it is not limited in geographic scope, that is designed to protect the legitimate business interests of CAC, whether deemed confidential information, good will, trade secrets or established clientele lists.

## IV.   SUMMARY & RELIEF REQUESTED

---

[12] Note that 25 Defendants contractually agreed to inform any new employer of their contract with Burns & Wilcox. [**EX. 4, 5, 6, 7, and 8** at §5(g)]. If any did so, CRC was on notice of its complicity in inducing breach of these agreements. If the employees failed to do so, that would be a further breach of their agreements.

Carson Sr. was a four-star general for Burns & Wilcox. He is now in CRC's executive suite disseminating confidential information to CRC, helping CRC select and lure Burns & Wilcox employees in violation of contractual obligations. The fact that 45+ Burns & Wilcox employees left in the weeks surrounding Carson Sr.'s defection and joined CRC leads to one conclusion: Carson Sr. and CRC launched a frontal assault on Burns & Wilcox. CRC will not stop until the Court so orders.

Plaintiff respectfully requests that its Motion for a TRO and Preliminary Injunction be **granted in full** and that this Court order that:

**(1)** Defendant Carson, Sr. be enjoined from **directly or indirectly** using Burns & Wilcox's confidential, proprietary information and trade secrets that he learned when he was a corporate officer to harm or injure Burns & Wilcox, or for the benefit of himself or his new employer, CRC. This prohibition includes, but is not limited to, barring use of Burns & Wilcox's retail agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs, pricing and financial information.

**(2)** Defendants Hailey, Carson, Jr., Watson, Coleman, Gibson, Ruppel, Page, Sutton, Andrew Carson, Krebs, McVay, Burger, Wilton, Doyle, Friddell, Vaughn, Zhou, Ehlinger, Herrera, Cugini, Henderson, Ulmer, Swaby, Muchnick, and Zeglinski be enjoined from **directly or indirectly**: (A) using any Burns & Wilcox trade secret or confidential or proprietary information (including, but not limited to, retail agent lists, client lists, contract terms, ratings, expirations, renewals, business plans, costs, pricing and/or financial information); (B) soliciting, diverting, or attempt to solicit or divert, from Burns & Wilcox any officer, employee, contractor or any person providing services to, or on behalf of, Burns & Wilcox, or influencing any such person to no longer serve as an officer, employee or contractor, or provide services to, or for, Burns & Wilcox; (C) calling upon, contacting, soliciting, diverting, servicing, or accepting any business from any Burns & Wilcox client or account for the purpose of directly or indirectly providing any services or products similar to those offered by Burns & Wilcox, including, but not limited to, distribution, underwriting, financing, claims, loss control and/or audits; or (D)

24

soliciting, diverting, servicing or accepting on behalf of CRC or any related entity any insurance policy for a particular insured party for which the Defendant or any member of Defendant's Burns & Wilcox team had provided such services or attempted to provide services in the two years prior to the end of Defendant's employment with Burns & Wilcox.

(**3**) Defendant CRC be enjoined from **directly or indirectly** aiding, abetting, counseling, commanding, inducing or procuring any of the above actions.

(**4**) ALL DEFENDANTS preserve, during the pendency of this action, all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) that are relevant this action, and/or that may lead to the discovery of relevant information, and to notify their employees, agents, contractors and clients that they are required to do the same.

(**5**) ALL INDIVIDUAL DEFENDANTS immediately turn over their cellular devices to Plaintiff's forensic experts, who may copy all emails and texts to or from Burns & Wilcox personnel.

**Plaintiff also requests that the Court order expedited discovery to begin immediately, and that Defendants be produced for deposition forthwith.**

**MANTESE HONIGMAN, P.C.**
*Attorneys for Plaintiff*

By: */s/ Gerard V. Mantese*
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
1361 E. Big Beaver Rd. Troy, MI 48083
Dated: November 26, 2019          248.457.9200

## CERTIFICATE OF SERVICE

I hereby certify that, on November 26, 2019, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of the same to all counsel of record and via U.S. Mail and Email upon the following:

Keefe A. Brooks (P31680)
**Brooks Wilkins Sharkey & Turco PLLC**
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
brooks@bwst-law.com
*Attorney for Defendant CRC Insurance*
*Services Inc. and Other Individual*
*Defendants to be determined*

Gregory M. Clift
**Rogge Dunn Group, PC**
500 N. Akard St., Suite 1900
Dallas, TX 75201
clift@roggedunngroup.com
*Attorney for Defendant Donald Richard*
*Carson, Sr.*

*/s/ Sherri Sikorski*
Sherri Sikorski
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Rd.
Troy, Michigan 48083
Telephone: (248) 457-9200
ssikorski@manteselaw.com

26