# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

BURNS & WILCOX, LTD.
A Michigan corporation,

     Plaintiff,

                                   Case No. 19-cv-13167

v

                                   Hon. Bernard A. Friedman

CRC INSURANCE SERVICES, INC.,
et al.,

     Defendants.

---

## DEFENDANT CRC INSURANCE SERVICES, INC.'S RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TRO (DKT. 16)

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..................................................................................... iv

STATEMENT OF ISSUE PRESENTED ................................................................ vi

MOST APPROPRIATE AUTHORITY ................................................................. vii

PREFACE .................................................................................................................... 1

INTRODUCTION .................................................................................................... 2

STATEMENT OF FACTS ........................................................................................ 4

ARGUMENT ............................................................................................................. 7

I.   Plaintiff has failed to provide any factual or legal basis that would support
     this Court granting the extraordinary remedy of a preliminary injunction or
     temporary restraining order .............................................................................. 7

   A.   Plaintiff has failed to meet its burden of showing a "strong or
        substantial" likelihood of success on the merits of its breach of fiduciary
        duty, aiding and abetting, or breach of contract claim ................................ 8

      (1)   Plaintiff cannot prevail on its breach of fiduciary duty claim
            against Mr. Carson as he owed no post-employment duties to
            Plaintiff and is free to compete with a former employer ............. 9

      (2)   In addition to failing to articulate any breach of fiduciary duty by
            Mr. Carson, Plaintiff has failed to articulate how CRC Insurance
            substantially assisted or encouraged such a breach, or any harm
            resulting therefrom ................................................................... 11

      (3)   Plaintiff has failed to show that any former employee breached
            their contracts with it .............................................................. 13

   B.   Plaintiff has failed to articulate any "certain and immediate" irreparable
        harm to support its request for injunctive relief, which should be rejected
        based on unreasonable delay alone ............................................................ 15

      (1)   Plaintiff's motion should be denied for undue delay alone ......... 15

      (2)   Plaintiff has failed to show certain and immediate harm ........... 16

C.  The balance of harms favors denying this motion and issuance will also effectively cause substantial harm to others.................................................18

D.  The public interest will not be served by issuing an injunction.................19

II.  Plaintiff's proposed order – and request for relief – have virtually no relationship to the claims asserted and purported irreparable harm .................20

CONCLUSION .................................................................................................. 23

# INDEX OF AUTHORITIES

## Cases

*Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511 Fed. Appx. 398 (6th Cir. 2013) ......................................................... v, 15

*Arthur J. Gallagher & Co. v. Anthony*, 2016 WL 4523104 (N.D. Ohio Aug. 30, 2016) ......................................................................................... 14

*Bachi-Reffitt v. Reffitt*, 2017 WL 5998112 (W.D. Mich. Dec. 4, 2017) ................... 2

*Chem-Trend, Inc. v. McCarthy*, 780 F. Supp. 458 (E.D. Mich. 1991) ................... 10

*CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052 (E.D. Mich. 2011) ........ 19

*Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809 (E.D. Mich. 2013) ...................................................................................... 16-17

*Creelgroup v. Brieden*, 2010 WL 3023815 (E.D. Mich. July 29, 2010) ............... 10

*Daneshvar v. Kipke*, 266 F. Supp. 3d 1031 (E.D. Mich. 2017) ............................. 10

*Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872 (6th Cir. 1972) ....................................................................................... 8

*El Camino Resources, Ltd. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875 (W.D. Mich. 2010) ...................................................................................... 12

*Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323 (E.D. Mich. 2011) .. 11

*Global Generation Group, LLC v. Mazzola*, 2014 WL 1772417 (E.D. Mich. May 2, 2014) ....................................................................................................... 15

*Gonzales v. Nat'l Bd. Of Medical Examiners*, 225 F.3d 620 (6th Cir. 2000) ........... 9

*Hayes-Albion v. Kuberski*, 421 Mich. 170; 364 N.W2d 609 (1981) ............ 10-11, 20

*In re NM Holdings Co., LLC*, 411 B.R. 542 (E.D. Mich. 2009) ............................. 12

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) ................................................... 8

*Lucero v Detroit Public Schools*, 160 F Supp 2d 767 (ED Mich 2001) ................. 17

*Malloy v Watchtower Bible & Tract Soc'y*, 2017 WL 3542498 (ED Mich Aug 17, 2017) ................................................................................................. 20

*Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670 (E.D. Mich. 2015) ............................. 13

iv

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991) ................................................................ 16

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) ........................ 9

*Northern Michigan Title Co. of Antrim-Charlevoix v. Bartlett*, 2005 WL 599867 (Mar. 15, 2005) ...................................................................... 10

*Ohio Contractors Ass'n v. City of Akron*, 2014 WL 1761611 (N.D. Ohio May 1, 2014) ........................................................................ 15

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566 (6th Cir. 2002) ...................................................................... 7-8

*Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112 (E.D. Mich. 2019) ................................................................... v, 16-17

*Raymond James & Assoc., Inc. v. Leonard & Co.*, 411 F. Supp. 2d 689 (E.D. Mich. 2006) ................................................................. v, 9-10

*Riley v. California*, __ U.S. __; 134 S. Ct. 2473, 2490 (2014) .............................. 22

**Rules**

Fed. R. Civ. P. 11 ...................................................................... 2

## STATEMENT OF ISSUE PRESENTED

Whether this Court should deny Plaintiff's Thanksgiving eve request for this Court to provide it with the extraordinary remedy of injunctive relief despite the absence of any factual or legal support, including the absence of any evidence that:

- Any former employee of Plaintiff took any confidential information when they changed jobs;
- Any former employee of Plaintiff disclosed any confidential information to CRC Insurance at any time;
- Any former employee of Plaintiff has solicited any employee of Plaintiff in violation of any "agreement" with Plaintiff;
- Any former employee of Plaintiff has solicited any customers of Plaintiff in violation of any "agreement" with Plaintiff;
- Any former employee of Plaintiff has engaged in any actionable conduct of any kind;
- Plaintiff has lost business or otherwise been damaged by any conduct of any former employee of Plaintiff; and
- Plaintiff has suffered anything even remotely resembling the kind of "irreparable injury" that could support the extraordinary relief sought in this emergency motion.

## MOST APPROPRIATE AUTHORITY

*Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566 (6th Cir. 2002).

*Raymond James & Assoc., Inc. v. Leonard & Co.*, 411 F. Supp. 2d 689 (E.D. Mich. 2006)

*Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511 Fed. Appx. 398 (6th Cir. 2013)

*Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112 (E.D. Mich. 2019)

# PREFACE

Unfortunately, this baseless lawsuit – and more particularly this frivolous motion – are the sad manifestation of the grudge held by the principals of Plaintiff Burns & Wilcox, Ltd., Alan and Daniel Kaufman ("Kaufmans"), against a former employee, Defendant Donald Carson, Sr. ("Carson"), for leaving their employ to join a successful competitor, Defendant CRC Insurance Services, Inc. ("CRC Insurance"), after over 30 years of service to Burns & Wilcox. The timing of this motion alone demonstrates the rancor held by the Kaufmans against Mr. Carson.

The original Complaint in this matter was filed over a month ago on October 28, 2019, and the Amended Complaint was filed on November 19. ECF #1, ECF #12. No motion for injunctive relief was filed in conjunction with either pleading.

Rather, Plaintiff and its counsel waited until just before the Thanksgiving holiday, November 26, to file this motion. ECF #16. Further, no notice of any hearing on the motion was provided to anyone until well after the close of business on November 27. Indeed, at *6:58 p.m. on Thanksgiving eve*, Plaintiff's counsel emailed all named Defendants[1] a "Notice of Hearing" in the form of a letter from Attorney Gerard Mantese. (Email of Douglas Toering and appended Letter of Gerard Mantese, 11/27/19, **Ex. 1**). The timing – and lack of substance – of this

_____

[1] By agreement of counsel, all named Defendants have until December 20, 2019 to respond to the Amended Complaint.

motion demonstrate that its sole purpose was to unwarrantedly interfere with this valuable holiday time for Defendants, their counsel, and all of their families.

A cursory reading of Plaintiff's motion reveals that it is completely devoid of any factual or legal support. However, this motion has accomplished its sole, intended purpose of harassing Defendants.[2] For the reasons discussed more fully below, this motion should be summarily denied and Plaintiff's counsel should be sanctioned – as it has been in the past – for utilizing legal proceedings solely to harass an opposing party and their counsel.

## INTRODUCTION

As a preliminary matter, Plaintiff Burns & Wilcox's motion fails to identify any "emergency." In short, the sky was not falling over this past holiday weekend.

---

[2] Regrettably, utilization of frivolous legal proceedings to harass opposing parties is a familiar tactic employed by Plaintiff's counsel. In *Bachi-Reffitt v. Reffitt*, 2017 WL 5998112, at *4 (W.D. Mich. Dec. 4, 2017), Plaintiff's counsel asserted a RICO claim on behalf of their client against her *former spouse*. The Hon. Gordon Quist, in addition to granting the defendant's motion to dismiss, also sanctioned the same firm representing Plaintiff in this case for violation of Fed. R. Civ. P. 11. *Id.* at *10-11. Undaunted, Plaintiff's Counsel filed a motion for reconsideration of the sanction order. On May 5, 2018, Judge Quist issued an opinion denying that motion as well. (Western District of Michigan Case No. 1:17-cv-00263 Docket Page (**Ex. 2**), Order Regarding Defendants' Motion to Dismiss and Motion for Rule 11 Sanctions, 12/4/17 (**Ex. 3**), and Opinion Denying Plaintiff's Motion for Reconsideration, 5/5/18, (**Ex. 4**)).

About two years earlier, on January 27, 2016, Plaintiff's counsel was sanctioned by the Hon. James Alexander for the filing of a motion for temporary restraining order, including attorney's fees of $12,500.00. (Order Regarding Sanctions in Oakland County Circuit Court Case No. 2015-150003-CB, 1/27/16, **Ex. 5**).

According to Plaintiff's web site, Burns & Wilcox has over 60 offices nation-wide and employs over *2000 individuals*.[3] The Affidavit of Tracy Madigan, attached to Plaintiff's motion, identifies 47 former employees that are now employed by CRC Insurance. ECF #16-34, PgID 482-484. For perspective, this represents .023 of Plaintiff's entire workforce.

As recent as September 23, 2019, Plaintiff's Chairman, President and CEO Alan Kaufman provided a filmed interview during which he stated the following:

> Talent is shorter today than it was a couple of years ago though it's not only our company that's feeling the pressure but other competitors. **So, everybody is taking from somebody else, you wake up one day and you have an individual or team gone <u>and we've taken people</u> and it goes back and forth and it's not a very collegiate atmosphere.**[4]

In short, it is permissible when Mr. Kaufman's company has "taken people" but it is not permissible for employees to leave Plaintiff and join a competitor. Further, the Kaufmans appear to view Mr. Carson as an indentured servant whose "fiduciary duties" belong solely to Plaintiff for the rest of his life.

The truth of this matter is, as alleged by Plaintiff, Plaintiff and CRC Insurance are competitors. ECF #16, ¶16, PgID 141. All that has happened is that a

---

[3] See the duties of  Daniel Kaufman, Plaintiff's Chief Operating Office, listed at https://www.burnsandwilcox.com/leadership/.

[4] Emphasis added. Entire interview available at the following link: http://www.ambest.com/video/MediaArchive.aspx?lid=6074510152001&vid=6089186217001

small group of employees decided to change jobs for personal reasons unique to each individual. That's it. There is no "conspiracy," "scheme," or "raid" and certainly nothing actionable in any court.

### STATEMENT OF FACTS

Plaintiff's pleadings and instant motion, while long on girth, are bereft of any factual support for a motion of this ilk. First, none of Plaintiff's pleadings are verified. Second, while the motion attaches five affidavits, none of them even arguably provide factual support for the extraordinary relief sought in this motion.

After simply reciting background on Burns & Wilcox and Mr. Carson for 27 paragraphs, the affidavit of Alan Kaufman ends with a conclusory statement that the loss of employees has caused "irreparable harm." ECF #16-3, PgID 384-388. The above conclusory assertion fails to provide factual support of any kind.

As noted above, the affidavit of Tracy Madigan does nothing other than identify former employees currently employed by CRC Insurance. ECF #16-34, PgID 482-484. No facts of any kind in support of the motion are offered.

Next, the one-page affidavit of Deborah Cummings claims Defendant Sheila Hailey, now Grannan, made a statement about "outsourcing" of service work from Plaintiff's Arlington office, and that Mr. Carson did not state that her comment was false. ECF #16-31, PgID 471. While not supporting the instant motion in any

4

respect, the fact is that the above statement was true. See attached Declaration of Sheila Grannan, ¶¶ 13-14, **Ex. 6**).

Next, the affidavit of Rebecca Walker, who apparently still works for Plaintiff, alleges that Neil Kessler from CRC tried to recruit her. ECF #16-33, PgID 476-477. While her statements are false (see Ex. 6, ¶¶ 8-9; Attached Declaration of Andrew Carson, 11/29/19, **Ex. 7**, ¶ 15), Mr. Kessler is not a former employee of Plaintiff. Consequently, even if he had attempted to recruit Ms. Walker, there would be nothing actionable about such action.

Next, Plaintiff attaches an e-mail that an Underwriter at CRC Insurance sent to a couple of her contacts. ECF #16-32 PgID 474. However, this e-mail does not support the accusation that "Certain Defendants" – or that CRC Insurance – are "fomenting the [allegedly] false representations". ECF #16 PgID 359. Instead, the Underwriter who prepared the e-mail did so based on her own knowledge and without direction or guidance from superiors. Furthermore, the offer of reduced commissions was approved and similar to past conduct. (See Declaration of Candace Cavanaugh, **Ex. 8**, ¶¶ 6-7)

Last is an affidavit from Laurence Lieb, a purported computer forensics and electronically stored information expert, who wants to take the lifeline of all Defendants – their cellphones – for a week to rummage through them. ECF #16-35, PgID 486-487. This request amounts to nothing more than an effort to harass

and invade the privacy of former employees who decided to leave Plaintiff's employ. Neither Plaintiff nor Mr. Lieb provide any basis for this request and further, provide absolutely no basis for the motion. Indeed, one would expect an expert like Mr. Lieb to have already examined the computers formerly used by Defendants before making this outrageous demand. Like the affidavits of the "factual" witnesses, Mr. Lieb offers no evidence of any actionable conduct.[5]

In summary, Plaintiff filed an "amended" 83-page, 275-paragraph pleading that is not verified. ECF #12. While having first filed this action on October 28, Plaintiff then waited until Thanksgiving eve to seek this so-called "emergency" relief. Despite the fact that this matter has been pending for over a month, there is no affidavit, declaration or other evidence of any kind before this Court that:

- Any former employee of Plaintiff took any confidential information when they changed jobs;

- Any former employee of Plaintiff disclosed any confidential information to CRC Insurance at any time;

- Any former employee of Plaintiff has solicited any employee of Plaintiff in violation of any "agreement" with Plaintiff;

---

[5] Please note that anyone who has left Plaintiff's employ has of course been requested to preserve all data, and any relevant data can be obtained in the ordinary course of discovery. As to anyone who has not left Plaintiff's employ, Plaintiff can obviously obtain any communications from its own personnel.

- Any former employee of Plaintiff has solicited any customers of Plaintiff in violation of any "agreement" with Plaintiff;

- Any former employee of Plaintiff has engaged in any actionable conduct of any kind;

- Plaintiff has lost business or otherwise been damaged by any conduct of any former employee of Plaintiff; and

- Plaintiff has suffered anything even remotely resembling the kind of "irreparable injury" that could support the extraordinary relief sought in this emergency motion.

Content to again rely on girth alone, Plaintiff's 190-page motion submission offers no factual support for the extraordinary relief being sought in this motion – because there is no support for this abusive motion. Consequently, this motion should be denied, and sanctions assessed against Plaintiff's counsel.

## ARGUMENT

I. **Plaintiff has failed to provide any factual or legal basis that would support this Court granting the extraordinary remedy of a preliminary injunction or temporary restraining order.**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "There is no power the exercise of which

requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction." *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 875 (6th Cir. 1972). When

> … determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Overstreet,* 305 F.3d at 573. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. . . ." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "This is because the preliminary injunction is an 'extraordinary remedy involving the exercise of far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it.'" *Id.* (citation omitted). Even a cursory examination of the four factors establishes that Plaintiff has failed to meet its burden of putting forth evidence that would support this extraordinary relief.

A. **Plaintiff has failed to meet its burden of showing a "strong or substantial" likelihood of success on the merits of its breach of fiduciary duty, aiding and abetting, or breach of contract claim.[6]**

---

[6] While Plaintiff has also admittedly asserted claims for tortious interference, unjust enrichment, violations of the Defend Trade Secrets Act, Michigan Uniform Trade Secrets Act, and Civil Conspiracy, ECF #16, it does not even bother to try to argue a likelihood of success on any of these baseless claims.

"For the first factor to favor the granting of an injunction, 'a plaintiff must demonstrate a strong or substantial likelihood of success on the merits.'" *Raymond James & Assoc., Inc. v. Leonard & Co.*, 411 F. Supp. 2d 689, 693-694 (E.D. Mich. 2006) (citation omitted). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. Of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). "While, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

> **(1)      Plaintiff cannot prevail on its breach of fiduciary duty claim against Mr. Carson as he owed no post-employment duties to Plaintiff and is free to compete with a former employer.**[7]

"A breach of fiduciary duty claim under Michigan law has three elements: (1) a duty arising from a fiduciary relationship, (2) a failure to observe that duty,

---

[7] Plaintiff presents its legal arguments presuming – but not establishing – that Michigan substantive law will universally apply in this case. Yet Plaintiff's 'breach of fiduciary duty' claim (Count I) is pled against a citizen of the State of Texas, acting only in the State of Texas. And Plaintiff's 'aiding and abetting' claim (Count II) is pled against a citizen of the State of Alabama, allegedly assisting that citizen of the State of Texas. It is highly unlikely that Michigan law will apply to either of those claims.

and (3) an injury proximately caused by that failure." *Daneshvar v. Kipke*, 266 F. Supp. 3d 1031, 1053 (E.D. Mich. 2017).

> However, the act of preparation to compete during current employment does not constitute a breach of fiduciary duty. [*Raymond James*, 411 F. Supp. 2d at 699] ("Preparations, of themselves, do not support a breach of fiduciary duty, given 'the public policy of Michigan … of protecting and encouraging the right of the individual to pursue his livelihood in the vocation he chooses, including the right to migrate from one job to another.'" (quoting *Hayes-Albion v. Kuberski*, 421 Mich. 170, 188; 364 N.W2d 609 (1981))). Post-employment, a former employee is free to compete with [a] former employer using his general skills and knowledge, but he may not use [a] former employer's trade secrets. *Hayes-Albion*, 421 Mich. at 180 [8]… An employer cannot maintain a claim for post-employment breach of fiduciary duty based on solicitation of former clients unless the parties executed an appropriate non-competition agreement. *Id.*…

*Creelgroup v. Brieden*, 2010 WL 3023815, at *3 (E.D. Mich. July 29, 2010).[9] "In general, there is nothing improper in an employee establishing his own business

---

[8] However, "the mere fact that defendants have or at one time had [confidential] information in their minds is not sufficient to support" a claim "that they must necessarily be using or disclosing it if they are working for" a competitor. See *Northern Michigan Title Co. of Antrim-Charlevoix v. Bartlett*, 2005 WL 599867, at *6 (Mar. 15, 2005).

[9] Rather than cite Michigan authority or authority from a jurisdiction that might apply to this case, Plaintiff randomly cites cases from other jurisdictions in an effort to create "post-employment" duties that do not exist in Michigan. See ECF 16, PgID 364-365. Further, while Plaintiff cites *Chem-Trend, Inc. v. McCarthy*, 780 F. Supp. 458 (E.D. Mich. 1991), the district court in that case "found egregious behavior" that included defendant manufacturing competitive products, marketing those products exclusively to plaintiff's existing clients, and actually consummating bulk sales *several weeks before leaving his former employer*. *Id.* at 461. There are no allegations, let alone evidence, that Mr. Carson engaged in such conduct and thus, *Chem-Trade* has no application to this case.

and communicating with customers for whom he had formerly done work in his previous employment." *Hayes-Albion*, 421 Mich. at 183.

First, Plaintiff has failed to cite any authority establishing any applicable, post-employment "fiduciary" duty by Mr. Carson to his former employer. Indeed, Plaintiff admits it has no written agreement with Mr. Carson (though it effectively asks this Court to create one). See ECF #16, PgID 356. Further, other than inferring – without evidence – that Mr. Carson solicited other employees to join CRC Insurance, Plaintiff fails to explain how Mr. Carson breached any fiduciary duty – let alone provide evidence of any such breach. Finally, Alan Kaufman's own recorded statements confirm his admitted view that the migration of employees is simply the nature of the business as "everybody is taking from someone else." Given former employees are free to compete with their former employers absent an agreement to the contrary, Plaintiff has not, and cannot, establish a "strong or substantial" likelihood of success on this claim.

> **(2)    In addition to failing to articulate any breach of fiduciary duty by Mr. Carson, Plaintiff has failed to articulate how CRC Insurance substantially assisted or encouraged such a breach, or any harm resulting therefrom.**

"The Michigan Supreme Court has not recognized a cause of action for aiding and abetting the breach of a fiduciary duty." *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1346 (E.D. Mich. 2011). However, federal courts have recognized the existence of such a claim with the following elements: "(1)

11

breach of a fiduciary duty by a person, (2) the defendant's knowledge[10] and substantial assistance or encouragement of the person's breach of fiduciary duty, and (3) resulting harm." *In re NM Holdings Co., LLC,* 411 B.R. 542, 551 (E.D. Mich. 2009). Establishing substantial assistance or encouragement "'requires the plaintiff to show that the secondary party proximately caused the violation, or, in other words, the encouragement or assistance was a substantial factor in causing the tort.'" *El Camino Resources, Ltd. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 910 (W.D. Mich. 2010). "But for causation is insufficient" to establish resulting harm as the "plaintiff must demonstrate that its injury was a direct and reasonably foreseeable result of the conduct." *Id.*

As previously discussed, Plaintiff has failed to offer any evidence of any breach of fiduciary duty by Mr. Carson. Likewise, Plaintiff does not even allege that CRC Insurance had knowledge of such a breach or articulate how CRC Insurance supposedly assisted or encouraged such a breach. Again, Plaintiff conclusively states that CRC Insurance solicited Plaintiff's employees (without evidence), that it "strains credibility to believe" CRC Insurance did so without Mr. Carson's assistance, and that the above somehow constitutes aiding and abetting a breach of fiduciary duty. ECF # 16, PgID 368. Given Plaintiff admittedly has no

---

[10] As to the knowledge component, "actual knowledge is required to prove a claim for aiding and abetting tortious conduct under Michigan law." *El Camino Resources Ltd. v. Huntington Nat. Bank*, 712 F.3d 917, 922-923 (6th Cir. 2013).

12

evidence to support a breach of fiduciary duty or aiding and abetting (if such a claim exists under applicable law), it has no likelihood of succeeding on this claim.

### (3)   Plaintiff has failed to show that any former employee breached their contracts with it.

"The elements of a valid contract in Michigan are 1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).[11] In Michigan, "non-competition agreements 'are disfavored as restraints of commerce and are only enforceable to the extent they are reasonable.'" *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 677 (E.D. Mich. 2015).

> "The burden of demonstrating the validity of the agreement is on the party seeking enforcement"—in this case, Plaintiff. Further, "'[b]ecause the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition.'" "'To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill.'" Thus, "Michigan law commands the courts to narrowly construe restrictive covenants."

---

[11] While Plaintiff immediately "jumps" to the reasonableness of the restrictive covenants, it completely fails to address the requisite elements of an enforceable contract. By way of example, the Individual Production Award agreements provide that Plaintiff "reserves the right to modify or terminate the Agreement[s] at any time in its sole discretion" (though accrued rights are not impaired). ECF #16-9, ¶ 7(e), PgID 425. Such a provision undermines both consideration and mutuality.

*Id.* (citations omitted). A non-compete is enforceable only if it: "(a) protects the employer's reasonable competitive business interests, and (b) is reasonable in duration, geographical scope, and type of employment or line of business." *Id.*

Along with the existence of a valid contract, a claim for breach in Michigan requires evidence "that the defendant breached the terms of the contract, and that the breached caused the plaintiff's injury." *Brown*, 342 F.3d 620 at 628.

Setting aside questions regarding the validity of the restrictive covenants at issue, Plaintiff fails to even attempt to articulate how 24 of the 25 individuals that signed agreements allegedly breached them. Indeed, there are no allegations – let alone evidence – directed at the individual Defendants identified as Defendants [4] through [27].[12] Plaintiff also fails to identify the "irreparable harm" these individual Defendants have or are likely to cause it.

As to the last individual Defendant, Sheila Grannan (Hailey), Plaintiff offers the affidavit of Rebecca Walker, who effectively contends that Ms. Grannan tried to solicit her to work at CRC Insurance on October 25. See ECF #16-33, ¶ 5, PgID 476. First, Ms. Grannan disputes the allegations of Ms. Walker. Ex. 6, ¶ 9. Second, see the attached Declaration of Andrew Carson, Ex. 7, ¶ 15 for additional information disputing Ms. Walker's "story." Third, Plaintiff fails to explain why it

---

[12] See *Arthur J. Gallagher & Co. v. Anthony*, 2016 WL 4523104, at *20 (N.D. Ohio Aug. 30, 2016) (refusing to grant injunctive relief when Plaintiff failed to provide evidence that any customer broke a contract with Plaintiff).

waited over a month – from October 25 – to file a motion for "emergency" injunctive relief on the eve of Thanksgiving. Fourth, Plaintiff fails to identify any employees that were successfully solicited by any Defendant.

**B.** **Plaintiff has failed to articulate any "certain and immediate" irreparable harm to support its request for injunctive relief, which should be rejected based on unreasonable delay alone.**

**(1)** **Plaintiff's motion should be denied for undue delay alone.**

As an initial matter, [u]ndue delay, standing alone, constitutes grounds for rejecting a motion for preliminary injunction." See *Global Generation Group, LLC v. Mazzola*, 2014 WL 1772417, at *6 (E.D. Mich. May 2, 2014) (citation omitted). Indeed, any "unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm." *Id.* (quoting *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 511 Fed. Appx. 398, 405 (6th Cir. 2013)); See *Ohio Contractors Ass'n v. City of Akron*, 2014 WL 1761611, at *8 (N.D. Ohio May 1, 2014).

In *Ohio Contractors*, the plaintiff filed a verified complaint for injunctive and declaratory relief alleging that the defendant's hiring policy violated constitutional equal protection provisions. *Id.* at *1. Plaintiff sought to enjoin enforcement of the policy and opening bids on a city project. *Id.* at *3. Addressing irreparable harm, the district court noted the plaintiff had been aware of the hiring quotas at issue for two months and "waited until the eve of bidding to seek

15

injunctive relief." *Id*. at *8. Though it found no irreparable harm, the court observed that the "unconscionable delay in bringing this lawsuit diminishes whatever irreparable harm might exist." *Id*.

In this case, Plaintiff filed its Complaint on October 28. However, it then waited *nearly a month* before filing this motion on the eve of the Thanksgiving Weekend - November 26. Given the undue delay in bringing this motion, this Court should deny Plaintiff's request for injunctive relief for this reason alone.

### (2)   Plaintiff has failed to show certain and immediate harm.

Next, Plaintiff "must demonstrate that it is likely to suffer irreparable harm in the absence of an injunction." *Radiant Glob. Logistics, Inc. v. Furstenau*, 368 F. Supp. 3d 1112, 1134 (E.D. Mich. 2019). A "party moving for a preliminary injunction must establish more than mere monetary injury." *Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 817 (E.D. Mich. 2013). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

> "The 'key word' in determining the extent of an injury sufficient to support the award of injunctive relief is 'irreparable.' Mere injuries, however substantial, are not enough. Rather, 'the harm alleged must be both certain and immediate, rather than speculative or theoretical.'"

*Radiant Glob.*, 368 F. Supp 3d at 1134 (citations omitted). Indeed, "[t]o constitute irreparable harm, an injury must be *certain, great, and actual.*" *Lucero v. Detroit Public Schools*, 160 F. Supp. 2d 767, 801 (E.D. Mich. 2001).

"In addition, and of critical importance, 'the irreparable harm requirement contemplates the inadequacy of alternate remedies available to the plaintiff.'" *Contech Casting*, 931 F. Supp. 2d at 817 (citation omitted). "'[I]rreparable harm will not be found where alternatives already available to the plaintiff make an injunction unnecessary.'" *Id*. (citation omitted).

In its motion, Plaintiff claims 47 employees have left Plaintiff to join CRC Insurance and speculates that additional employees will leave if an injunction is not granted.[13] Of these 47, 38 had left more than two weeks before Plaintiff filed this motion. ECF #16-34, PgID 482-484. In fact, 46 of the 47 had already left before Plaintiff filed its amended complaint on November 19. *Id*.; See ECF #12. Yet, Plaintiff waited another week, until the eve of Thanksgiving on November 26, to file this "emergency" motion for injunctive relief on the purported basis that "[u]nless stopped, the [purported] raids will continue." ECF #16, PgID 351. As the Court can see from the affidavit of Tracy Madigan (signed five days before the

---

[13] Although Plaintiff also suggests that it has suffered "irreparable harm" caused by the employees who have already left, it does not seek to preclude their continued employment with CRC Insurance and thus, any such harm is unrelated to the requested preliminary injunction."

motion was filed), only two employees have left Plaintiff to join CRC Insurance since November 14, (i.e., 12 days before the motion). ECF #16-34, PgID 484.

First, the purported harm is neither certain nor immediate, especially when one considers that Plaintiff filed this action nearly a month ago and amended on November 19. Second, Plaintiff fails to explain how any losses associated with migrating employees are "irreparable" and cannot be compensated through monetary damages. Third, Alan Kaufman has admitted that such migrations are commonplace in the industry – "you wake up one day and you have an individual or team gone and we've taken people and it goes back and forth." In other words, Plaintiff admittedly has an alternate remedy through the acquisition of employees from its competitors. Finally, while Plaintiff cites authority regarding confidential information and customer relationships, it fails to provide any evidence that any confidential information has even been disclosed - let alone used - or evidence of lost customers.[14]

### C. The balance of harms favors denying this motion and issuance will also effectively cause substantial harm to others.

---

[14] Although Plaintiff also suggests that the identity of its employees are somehow confidential, employee data can be found right on Plaintiff's website by office: https://www.burnsandwilcox.com/office-listing/. One need only click on an office and then "meet the team" to see a list of employees, their positions, their email addresses, and their telephone numbers – including that of Ms. Walker. See e.g., Printout of Arlington, Texas office, **Ex. 9**.

"In considering this factor, the Court must (1) balance the harm Plaintiff would suffer if its request for a preliminary injunction were denied against the harm Defendant would suffer if an injunction were to issue, and (2) assess the impact the preliminary injunction might have on relevant third parties." *CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1073 (E.D. Mich. 2011).

As previously discussed, Plaintiff has failed to articulate any harm that it will suffer other than possible migration of additional employees to CRC Insurance – which Mr. Kaufman claims is common in the industry as his firm has also admittedly "taken people" from competitors. On the other hand, Defendants will suffer irreparable harm to their reputations by having a baseless injunction entered against them despite the complete absence of any evidence of wrongdoing by any of them. (Indeed, Mr. Kaufman is already publicly commenting on Plaintiff's filings). Third, the injunction will cause harm to others by effectively chilling employees from pursuing a livelihood in the vocation they choose, including the right to migrate from one job to another (which Plaintiff hopes to accomplish).[15]

### D.    The public interest will not be served by issuing an injunction.

First, Michigan public policy "protect[s] and encourage[s] the right of the individual to pursue his livelihood in the vocation he chooses, including the right

---

[15] Indeed, over a month ago, Plaintiff circulated a copy of its original complaint to all of its "2000 associates," making it clear that if they dare to leave, they too will be sued.

to migrate from one job to another." *Hayes-Albion*, 421 Mich at 188. Therefore, Plaintiff's attempt to undermine this right – absent any contract that restricts the migration of employees – does not serve the public interest.

Second, the preamble to the civility principles adopted in the Eastern District of Michigan recognize: "Conduct that may be characterized as uncivil, abrasive, abusive, hostile or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully and efficiently. Such conduct tends to delay, and often deny, justice." Consequently, attorneys practicing in the district agree, among other things, that: "We will not time the filing or service of motions or pleadings in any way that unfairly limits another party's opportunity to respond." Civility Principle Among Attorneys No. 12. In short, filing an action on October 28 and then filing an "emergency" motion on the eve of Thanksgiving (November 26) conflicts not only with these principles but further undermines the public's view of attorneys.

## II. Plaintiff's proposed order – and request for relief – have virtually no relationship to the claims asserted and purported irreparable harm.

While self-evident, a plaintiff must demonstrate that it is "likely to prevail on the merits of the relief [it] is seeking in the motion." *Malloy v. Watchtower Bible & Tract Soc'y*, 2017 WL 3542498, at \*2 (E.D. Mich Aug. 17, 2017).[16]

---

[16] All unpublished cases have been appended at **Ex. 10**.

Although the focus of Plaintiff's motion is the migration of employees away from the company, it then surreptitiously presents this Court with a proposed order – and proposed remedy – that is entirely unrelated to the substance of the motion.

For example, the second paragraph of the proposed order proposes to enjoin Mr. Carson from using Plaintiff's trade secrets and confidential information when it has offered no evidence that the above has occurred or even been threatened. Further, it also attempts to preclude him from using agent lists that are available on its own website. (See Ex. 9).

Further, the third paragraph of the proposed order proposes to enjoin the other 25 individuals from using Plaintiff's trade secrets and confidential information and soliciting Plaintiff's customers despite failing to present evidence that any such conduct has occurred or is even threatened.

The fourth paragraph then proposes to enjoin CRC Insurance from "aiding and abetting" any of the above activities – even though there is no claim for aiding and abetting a breach of contract – since no such claim exists under Michigan law.

The fifth paragraph purports to mandatorily require only Defendants to preserve evidence even though there isn't even a hint of spoliation. Notably, Plaintiff excludes itself from this requirement.

The sixth paragraph proposes that all individual Defendants turn over their cellular telephones to Plaintiff's purported forensic expert for examination for *5*

*business days* without restriction. As the U.S. Supreme Court has recognized,

today many of the "more than 90% of American adults who own cell phones keep

on their person a digital record of nearly every aspect of their lives." *Riley v.*

*California*, __ U.S. __; 134 S. Ct. 2473, 2490 (2014).[17] Plaintiff does not even

---

[17] The Supreme Court observed that

> The storage capacity of cell phones has several interrelated
> consequences for privacy. First, a cell phone collects in one place
> many distinct types of information—an address, a note, a prescription,
> a bank statement, a video—that reveal much more in combination
> than any isolated record. Second, a cell phone's capacity allows even
> just one type of information to convey far more than previously
> possible. The sum of an individual's private life can be reconstructed
> through a thousand photographs labeled with dates, locations, and
> descriptions. . . . Third, the data on a phone can date back to the
> purchase of the phone, or even earlier. A person might carry in his
> pocket a slip of paper reminding him to call Mr. Jones; he would not
> carry a record of all his communications with Mr. Jones for the past
> several months, as would routinely be kept on a phone.

> Finally, there is an element of pervasiveness that characterizes
> cell phones but not physical records. Prior to the digital age, people
> did not typically carry a cache of sensitive personal information with
> them as they went about their day. Now it is the person who is not
> carrying a cell phone, with all that it contains, who is the exception.
> According to one poll, nearly three-quarters of smart phone users
> report being within five feet of their phones most of the time, with
> 12% admitting that they even use their phones in the shower. A
> decade ago police officers searching an arrestee might have
> occasionally stumbled across a highly personal item such as a diary.
> But those discoveries were likely to be few and far between. Today,
> by contrast, it is no exaggeration to say that many of the more than
> 90% of American adults who own a cell phone keep on their person a
> digital record of nearly every aspect of their lives—from the mundane
> to the intimate. Allowing [someone] to scrutinize such records on a

bother to cite authority that would allow for such an unlawful seizure of Defendants' personal property so that it may rummage through "nearly every aspect of their lives – from the mundane to the intimate." See *id.*

The last paragraph proposes the immediate commencement of discovery – including document requests and depositions. Discontent with filing this motion on the eve of Thanksgiving, Plaintiff and their counsel appear motivated to repeat this conduct during the upcoming December holidays.[18]

As stated at the outset, there is no factual or legal support for the outrageous relief sought by Plaintiff and its attorneys – after this matter had been pending for nearly a month.

## CONCLUSION

Defendants and their counsel sincerely hope that the Court was able to enjoy the past holiday weekend with family and friends. Given this matter was pending for nearly a month at the time this motion was filed, there was no reason for an "emergency filing" on Thanksgiving eve primarily intended to interrupt the holiday for Defendants and their counsel – and by extension their families.

_____

routine basis is quite different from allowing them to search a personal item or two in the occasional case.

*Id.* at 2489-2490 (citations omitted).

[18] And if discovery were to commence outside of the normal course, the first discovery permitted should be a Rule 30(b)(6) deposition of the Plaintiff, to ascertain if it had or has *any* actual evidence to support this abusive action.

23

However, the one illuminating take away from this motion is that the Court can quickly discern the fact that this matter is nothing but the manifestation of a grudge against Mr. Carson and anyone else who chooses to leave Plaintiff to work elsewhere.

Respectfully submitted,

/s/ Keefe A. Brooks
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
(248) 971-1800
*Attorney for Defendant CRC Insurance Only*
brooks@bwst-law.com
P31680

/s/ Martin C. Brook
Ogletree, Deakins, Nash, Smoak & Stewart, PLLC
34977 Woodward, Suite 300
Birmingham, Michigan 48009
(248) 723-6128
*Co-Counsel for Defendant CRC Insurance Only*
martin.brook@ogletree.com
P55946

Dated:  December 2, 2019

24

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of the filing to all counsel of record.

/s/ Keefe A. Brooks
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
248.971.1800
*Co-Counsel for Defendant CRC Insurance Services, Inc.*
brooks@bwst-law.com
P31680

## LOCAL RULE CERTIFICATION

I certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).[19]

s/ Keefe A. Brooks
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
248.971.1800
*Co-Counsel for Defendant CRC Insurance Services, Inc.*
brooks@bwst-law.com
P31680

---

[19] Incidentally, it is worth noting that Plaintiff's filing fails to comply with this and other local rules in multiple respects.