UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BURNS & WILCOX, LTD.,

Case No. 19-CV-13167-BAF-APP

          Plaintiff,

Hon. BERNARD A. FRIEDMAN

v.

CRC INSURANCE SERVICES INC. et al,

          Defendants.

_____/

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF A TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

On October 28, 2019, Plaintiff Burns & Wilcox filed its Complaint after a wave of recent employee defections to competitor CRC Insurance Services (CRC). The corporate raid of Burns & Wilcox continued unabated, notwithstanding the employees' contracts not to solicit Plaintiff's employees or contractors and not to solicit, divert or service Plaintiff's prospective or existing clients. On November 14, 2019, at Plaintiff's suggestion, the principals of CRC and Burns & Wilcox, and counsel, met in New York City to attempt to resolve the matter without further expense. The matter did not resolve. Three business days later, Plaintiff filed its First Amended Complaint adding 17 additional defendants on November 19, 2019. Five business days after that, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction seeking to maintain the status quo by

requiring compliance with contractual and fiduciary obligations during the pendency of this case and expedited discovery.  There was no inordinate delay.  Plaintiff filed its motion as soon as it was ready and its only intent was to prevent irreparable harm to the company and not to interfere with anyone's Thanksgiving Holiday.

Elsewhere, on November 25, 2019, U.S. District Judge Jorge Alonso issued a temporary restraining order in *Aon Risk Services Cos., Inc. v. Alliant Insurance Services, Inc.,* 2019 WL 6307648 (N.D. Ill. 2019) (**Exhibit A**) against employees who had left Aon to work for competitor Alliant.  Judge Alonso found that the likelihood of success on the merits was "far from a slam dunk" but more than negligible and that Aon "'can rely on circumstantial evidence to prove misappropriation' because 'direct evidence of theft and use of trade secrets is often not available.'"  *Id.* at * p. 3.  The Court, therefore, ordered the former Aon employees (1) not to directly or indirectly solicit business from Aon clients with whom they had any connection during the 24 months preceding departure; (2) not to use Aon confidential and trade secret information; (3) to return all confidential and trade secret information to Aon; (4) to preserve  documents and electronically stored information; and (5) one of the defendants to turn over her iPhone passcode.  *See* Temporary Restraining Order (**Exhibit B**).

In issuing a TRO, Judge Alonso reasoned in part that,

given the Defendant Employees' relatively recent departure, the loss of business that Aon has suffered and may continue to suffer as a

2

> result of Defendant Employees' alleged actions, "are unquantifiable at this time, and it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury "irreparable.'" Accompanying the unquantifiable losses are "other 'intangible' damages," such as the loss of Aon's competitive position in the industry . . . .

*Aon* at * p. 5.  Likewise here, a temporary restraining order is necessary to protect Burns & Wilcox from irreparable injury in the form of solicitations to its employees, clients, and prospective clients, which will inevitably result in the loss of additional employees, business relationships and good will.  The situation is particularly urgent given that two of the defectors, Donald Carson, Sr. and Sheila Hailey Grannan, are former Burns & Wilcox corporate officers and fiduciaries who are privy to Plaintiff's most sensitive confidential, proprietary and trade secret information.

Sheila Hailey Grannan has actively solicited Burns & Wilcox employees since before she resigned.  On October 15, 2019, while still a Corporate Vice President of Burns & Wilcox, Ms. Hailey claimed to Deborah Cummings, Megan Caruso, Mona Swain, Marcia Fatkin, Marie Green and Diana Garcia that service work at Burns & Wilcox would be outsourced in the future.  (**Exhibit 30** to TRO motion).  On the day before announcing her departure, Hailey invited several select employees out to lunch, "my treat."  (**Exhibit C**).  Two of these invitees (Alex Carson and Megan Caruso) resigned from Burns & Wilcox less than two weeks later on October 30, 2019.  The obvious intent was to plant the seeds of solicitation before she left.  A

third invitee to the Hailey lunch (Connor Farquharson) was also later solicited twice by Carson, Sr. during a telephone call on October 21, 2019 and in a coded Fantasy Football message on November 1, 2019. (**Exhibit D**).

On October 25, 2019, seven days after leaving her Corporate Vice President post, and with 1 year and 358 days left on her contract not to solicit Burns & Wilcox employees and clients, Sheila Hailey Grannan invited Rebecca Walker to join CRC. (**Exhibit 32** to TRO motion).[1]  This solicitation was followed up "one final time," by CRC's Chief Operating Officer, Neil Kessler, who sent texts to Ms. Walker's private mobile phone on November 5, 2019.  When she mentioned Sheila Hailey, Kessler claimed not to have coordinated his solicitation with Hailey, providing no answer as to how he obtained Walker's name or personal mobile number.  (**Id.**).  By showing an aversion to the mention of Hailey, Kessler, who is a licensed attorney, demonstrated that he knew his coordination with a former fiduciary with a contract not to solicit was wrong and carried legal consequences.[2]

---

[1]  The affidavits of Sheila Hailey and Andrew Carson attached to CRC's response allege that Rebecca Walker was soliciting them for a move to CRC.  This is preposterous given the written text wherein Ms. Walker recounts her conversation with Hailey and turns down an overture from the Chief Operating Officer at CRC, Neil Kessler.  Kessler's non-answer to the question of: *how did you get my name and number if you are not coordinating with Sheila Hailey,* is an admission by silence.  (**Exhibit 32** to TRO motion).

[2]  Faced with direct evidence of solicitation, CRC tries to deflect attention by engaging in *ad hominem* attacks against counsel and referring to unrelated cases.

In addition to the above solicitations which are emblematic of CRC's methods, the ongoing forensic audit by Tyger Forensics, Inc. has discovered that, a few days before departing Burns & Wilcox, Donald Carson, Sr. accessed and stole proprietary and highly sensitive information belonging to Burns & Wilcox. Carson, Sr. did so utilizing a USB Drive and by logging in as an "administrator" rather than with his company-assigned user account name. Carson, Sr. thereafter unsuccessfully tried to cover up his activities by moving a folder to his laptop trash bin and then emptying the trash bin. (**Exhibit E**). Additionally and preliminarily, Plaintiff's forensic expert reported to counsel today that he has found evidence that Donald Carson, Jr. and Anthony Cugini may have accessed large amounts of Burns & Wilcox data prior to their departure. He is attempting to confirm this preliminary assessment. Plaintiff believes that expedited discovery will establish the full extent of CRC's machinations with respect to Burns & Wilcox fiduciaries and employees under contract in purloining confidential, proprietary and trade secret information, and using this information to solicit Burns & Wilcox employees and clients.

Emergency injunctive relief has become even more necessary as Plaintiff's counsel just received notice that three defendants in this case have filed suit in North Carolina to try to avoid this Court's jurisdiction by seeking injunctive relief against

---

CRC's choosing to spend a good portion of its response in misdirection speaks for itself.

Burns and Wilcox in North Carolina, and scheduling the hearing in North Carolina for 11:00 a.m. EST. (See attached **Exhibit F**).  In so filing an abusive second suit, and improperly seeking to avoid this court's jurisdiction, these defendants have misrepresented to the North Carolina court that Burns and Wilcox is "attempt[ing] to place Plaintiffs out of work for two years on a worldwide basis." (See **Exhibit F,** Memorandum at p. 12).  This is false.  Burns and Wilcox is only asking that Defendants honor their contractual duties and common duties not to use trade secrets against Burns & Wilcox.  Burns and Wilcox has at no time sought to restrain any defendant from working, and has expressly so stated.  The North Carolina lawsuit is all the more inappropriate given the employees' express agreement that:  "Venue of any action regarding the terms and conditions of this Agreement or any action arising under this Agreement **shall** be brought in the State courts of Michigan in Oakland County, Michigan or in the Federal court for the Eastern District of Michigan, Southern Division.  Employee waives any objections Employee may have to lack or personal jurisdiction or venue in any Michigan court."   Therefore, this Court's TRO and Preliminary Injunction should include enjoin any Defendant from filing suit in another case.

WHEREFORE, Plaintiff Burns & Wilcox respectfully requests that its Motion for Temporary Restraining Order and Preliminary Injunction be granted.

Respectfully submitted,

**MANTESE HONIGMAN, P.C.**
*Attorneys for Plaintiff*

By: */s/Gerard V. Mantese*
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Douglas L. Toering (P34424)
dtoering@manteselaw.com
Kenneth R. Chadwell (P39121)
kchadwell@manteselaw.com
1361 E. Big Beaver Troy, MI 48083
(313) 457-9200

Dated: December 2, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 2, 2019 I electronically filed the foregoing

papers with the Clerk of the Court using the ECF system which will send electronic

notices of same to all counsel of record.

*/s/Leah A. Jackson*
Leah A. Jackson
Mantese Honigman, P.C.
1361 E. Big Beaver Rd.
Troy, Michigan 48083
(248) 457-9200
ljackson@manteselaw.com