## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

BURNS & WILCOX, LTD.,

        Plaintiff,

Case No. 19-CV-13167

Hon. Bernard A. Friedman

v.

CRC INSURANCE SERVICES INC.,
DONALD RICHARD CARSON, SR., et al,

        Defendants.

_____/

> **PLAINTIFF'S COMBINED RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT DONALD CARSON, SR.'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

**MANTESE HONIGMAN, P.C.**
*Attorneys for Plaintiff*
Gerard V. Mantese (P34424)
Douglas L. Toering (P34329)
Kenneth Chadwell (P39121)
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200
GMantese@manteselaw.com
DToering@manteselaw.com
KChadwell@manteselaw.com

**ROGGE DUNN GROUP, PC**
*Attorneys for Defendant Carson, Sr.*
Gregory M. Clift
500 N. Akard, Suite 1900
Dallas, Texas 75201
(214) 888-5000
clift@RoggeDunnGroup.com

**BROOKS WILKINS, SHARKEY & TURCO PLLC**
*Attorneys for Defendant CRC Ins.*
Keefe A. Brooks (P31680)
Michael T. Price (P57229)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
(248) 971-1800
brooks@bwst-law.com
price@bwst-law.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PLLC**
*Attorneys for Defendants except Carson, Sr.*
Martin C. Brook (P55946)
Nicholas Huguelet (P74933)
34977 Woodward Ave., Suite 300
Birmingham, MI 48009
(248) 593-6400
martin.brook@ogletree.com
nicholas.huguelet@ogletree.com

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................... ii-v

ISSUE PRESENTED.............................................................................vi

CONTROLLING AND MOST APPROPRIATE AUTHORITY........................ vii

INTRODUCTION ...............................................................................1

FACTUAL SUMMARY .......................................................................2

LEGAL STANDARD...........................................................................6

LEGAL ARGUMENT..........................................................................9

   A. Carson, Sr. Owes Burns & Wilcox a Fiduciary Duty .....................................9

   B. Carson, Sr. Breached His Fiduciary Duties to Burns & Wilcox ..................11

      1.  Trade Secrets and Confidential Information .............................................11

      2.  Client Solicitation, Employee Solicitation, and Mass Raids...................14

      3.  Plaintiff Pled Breaches of Fiduciary Duties.............................................16

   C. Plaintiff Has Pled that Carson, Sr.'s Actions Have Caused Damages ..........19

   D. Carson, Sr.'s Motion for a More Definite Statement Should be Denied ......20

A FINAL NOTE .................................................................................22

CONCLUSION ..................................................................................23

i

# INDEX OF AUTHORITIES

## *Cases*

*Allis-Chalmers Mfg. Co. v. Contl. Aviation & Engr. Corp.*,
    255 F. Supp. 645 (E.D. Mich. 1966) ............................................................14

*ASDI, Inc. v. Beard Research, Inc.*,
    11 A.3d 749 (Del. 2010) ...............................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................7

*B.G. Balmer & Co., Inc. v. Frank Crystal & Company, Inc.*,
    148 A.3d. 454 (Penn. Super. 2016) .......................................................15, 20

*Beard Research, Inc. v. Kates*,
    8 A.3d 573 (Del. Ch. 2010) ....................................................................14, 19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6, 7

*Chem-Trend, Inc. v. McCarthy*,
    780 F. Supp. 458 (E.D. Mich. 1991) ....................................................13, 15

*CNH America v. UAW*,
    645 F.3d 785 (6th Cir. 2011) ..........................................................................6

*Communities for Eq. v. Michigan High Sch. Athletic Ass'n*,
    26 F. Supp. 2d 1001 (W.D. Mich. 1998).....................................................22

*Conley v. Gibson*,
    355 U.S. 41 (1957)..........................................................................................6

*Creelgroup v. Brieden*,
    2010 WL 3023815 (E.D. Mich. 2010) .........................................................12

*Delphi Auto. PLC v. Absmeier*,
    167 F. Supp. 3d 868 (E.D. Mich. 2016) ........................................................9

*Directv, Inc. v. Treesh,*
    487 F.3d 471 (6th Cir. 2007) ............................................................................7

*Electronic Planroom Inc. v. McGraw-Hill Companies, Inc.,*
    135 F.Supp.2d 805 (E.D. Mich. 2001) ...............................................10, 13, 14

*Fabian v. Fulmer Helmets, Inc.,*
    628 F.3d 278 (6th Cir. 2010) ....................................................................7, 19

*Fed. Ins. Co. v. Webne,*
    513 F. Supp. 2d 921 (N.D. Ohio 2007) ..........................................................21

*Follmer, Rudzewicz & Co. v. Kosco,*
    420 Mich. 394 (1984) ....................................................................................12

*Gerald L. Pollack & Associates, Inc. v. Pollack,*
    2015 WL 339715 (Mich. App. Jan. 27, 2015) ...............................................10

*Giasson Aerospace Science, Inc. v. RCO Engineering, Inc.,*
    680 F. Supp. 2d 830 (E.D. Mich. 2010) .......................................................13

*Glancy v. Taubman Centers, Inc.,*
    373 F.3d 656 (6th Cir. 2004) .......................................................................15

*Glucol Mfg. Co. v. Schulist,*
    214 N.W. 152 (Mich. 1927) ..........................................................................12

*Hayes-Albion v. Kuberski,*
    364 N.W.2d 609 (Mich. 1984) ................................................................ 11-12

*Hayes-Albion v. Kuberski,*
    421 Mich. 170 (1984) ....................................................................................13

*Henkel Corp. v. Cox,*
    386 F. Supp. 2d 898 (E.D. Mich. 2005) .......................................................20

*In re Sullivan,*
    305 B.R. 809 (Bankr. W.D. Mich. 2004) ......................................................11

*Johnson Controls v. A.P.T. Critical Sys., Inc.,*
    323 F. Supp.2d 525 (S.D.N.Y. 2004) ............................................................20

*Kelly Services, Inc. v. Noretto,*
    495 F. Supp. 2d 645 (E.D. Mich. 2007) ......................................................13

*Laethem Equip. Co. v. Deere & Co.,*
    2007 WL 2433980 (E.D. Mich. Aug. 14, 2007) ..........................................12

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.,*
    755 F.Supp. 635 (D. Del. 1991) ..................................................................22

*Luis v. Yang,*
    833 F.3d 619 (6th Cir. 2016) ........................................................................8

*Mayer v. Mylod,*
    988 F.2d 635 (6th Cir. 1993) ......................................................................19

*Michigan Crown Fender Co. v. Welch,*
    211 Mich. 148 (1920) ..................................................................................10

*Moore v. Paducah,*
    790 F.2d 557 (6th Cir. 1986) ......................................................................23

*Nieman v. NLO, Inc.,*
    108 F.3d 1546 (6th Cir. 1997) ......................................................................8

*Petroleum Enhancer, LLC v. Woodward,*
    690 F.3d 757 (6th Cir. 2012) ......................................................................10

*Prod. Finishing Corp. v. Shields,*
    158 Mich. App. 479 (1987) ........................................................................10

*Raymond James & Associates, Inc. v. Leonard & Company,*
    411 F.Supp.2d 689 (E.D.Mich.2006) ..........................................................11

*Rippy ex rel. Rippy v. Hattaway,*
    270 F.3d 416 (6th Cir. 2001) ..................................................................7, 19

*Saglioccolo v. Eagle Ins. Co.*,
    112 F.3d 226 (6th Cir. 1997) ........................................................................7

*Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*,
    2015 WL 4945240 (N.D. Ill. Aug. 19, 2015)................................................22

*Schattilly v. Daugharty*,
    2015 WL 5215956 (E.D. Mich. Aug. 31, 2015) ...........................................8

*Schattilly v. Daugharty*,
    656 Fed. Appx. 123 (6th Cir. 2016) ..............................................................8

*Shwayder Chem. Metallurgy Corp. v. Baum*,
    206 N.W.2d 484 (Mich. App. 1973) ....................................................15, 18

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004) ........................................................................6

*Stephenson v. Golden,*
    279 Mich. 710 (1937) ..................................................................................13

*Stryker Corp v. Bruty*,
    2013 WL 1962391 (W.D. Mich. May 10, 2013)..........................................20

*Teadt v. Lutheran Church Mo. Synod*,
    237 Mich. App. 567 (1999) ..........................................................................10

*T–Mobile USA, Inc. v. Huawei Device USA, Inc*.,
    115 F.Supp.3d 1184 (W.D. Wash. 2015) .....................................................22

### *Rules*
Federal Rule of Civil Procedure 8 ........................................................................6
Federal Rule of Civil Procedure 12(b)(6)....................................................2, 7, 8, 19
Federal Rule of Civil Procedure 12(e)..........................................................20, 21
Rule 15(a)(2).........................................................................................................23

### *Treatises*
3 Fletcher Cyclopedia of the Law of Corporations ..............................................10
5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.).........................................................8
5C Fed. Prac. & Proc. Civ. § 1377 (3d ed.).........................................................21

## ISSUE PRESENTED

Defendant Donald Carson, Sr. was an officer and the highest paid employee of Plaintiff Burns & Wilcox, Ltd. As an officer, Carson, Sr. had strict fiduciary duties to Burns & Wilcox, including duties not to (1) misappropriate trade secrets or confidential information; (2) solicit employees or clients; or (3) assist a competitor in conducting a corporate raid on Burns & Wilcox.

After disparaging the company for weeks, Defendant Carson, Sr. dramatically resigned from Burns & Wilcox on October 18, 2019, announcing that he would be joining Defendant CRC Insurance Services, Inc., a direct competitor of Burns & Wilcox. (In fact, Defendant Carson, Sr. is part of a now-59-person mass resignation, all of whom immediately began work with the same competitor).

Defendant Carson, Sr. attacks Count I (Breach of Fiduciary Duty) of Burns & Wilcox's First Amended Complaint, alleging that it fails to plead breaches of Carson, Sr.'s fiduciary duty to Burns & Wilcox.

Viewing Burns & Wilcox's operative pleadings and all inferences therefrom in the light most favorable to Burns & Wilcox (the non-moving party), should Defendant Carson, Sr.'s Partial Motion to Dismiss be denied?

**Plaintiff Burns & Wilcox, Ltd. answers:   Yes.**

**Defendant Carson, Sr. would answer:      No.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

*CNH America v. UAW*, 645 F.3d 785 (6th Cir. 2011)

*Directv, Inc. v. Treesh,* 487 F.3d 471 (6th Cir. 2007)

*Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416 (6th Cir. 2001)

*Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757 (6th Cir. 2012)

*Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868 (E.D. Mich. 2016)

*Hayes-Albion v. Kuberski*, 364 N.W.2d 609 (Mich. 1984)

*Follmer, Rudzewicz & Co. v. Kosco,* 420 Mich. 394 (1984)

## INTRODUCTION

*"I've listened to both sides. Both sides have lots of arguments, all of which I think should be addressed at a trial in this matter, and through discovery and so forth."* [Court, December 3, 2019 Preliminary Injunction Hearing TR, RE 46, PageID.945]

Plaintiff, Michigan-based Burns & Wilcox, Ltd. ("Burns & Wilcox") is a privately-held leading insurance wholesale broker which employs more than 1,300 people in offices across the country and in Canada. Defendant Donald Carson, Sr. ("Carson, Sr.") was employed by Burns & Wilcox for over 30 years, rising to the highest-level officer position of Executive Vice President and Managing Director.

On October 18, 2019, after weeks of disparaging the company and sowing seeds of dissension among employees, Carson, Sr. abruptly and dramatically announced his departure from the company to join CRC Insurance Services, Inc. ("CRC"), a direct competitor of Burns & Wilcox. Before and after his departure, Carson, Sr. and others assisted CRC in orchestrating a mass raid of Burns & Wilcox's employees on a national scale, causing 58 employees to leave Burns & Wilcox.

Carson, Sr., CRC, and the other Defendants, also misappropriated Burns & Wilcox's confidential information, trade secrets, and proprietary information, and are now targeting the company's customers and retail agents.

In exchange for his misconduct, Carson, Sr. obtained a top leadership position at CRC, and is now listed as the Vice Chairman, Commercial Solutions.

1

On October 28, 2019, Burns & Wilcox filed suit against Carson, Sr. (and others) alleging, among other things, breach of his fiduciary duties owed to Burns & Wilcox as a former corporate officer (Count I of First Amended Complaint). Carson, Sr. has moved to dismiss Burns & Wilcox's Breach of Fiduciary claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons addressed herein, Defendant Carson, Sr.'s motion should be denied.

## **FACTUAL SUMMARY**

In Carson, Sr.'s position as Executive Vice President, Managing Director of Burns & Wilcox (one of only four executive vice presidents in the company), he had unfettered access to Burns & Wilcox's most sensitive and confidential documents and information. This included: (1) financial records, such as time-sensitive financial reports [RE 12, PageID.176 ¶145]; (2) the identities of the best Burns & Wilcox employees based upon their production statistics and personal performance; (3) which employees had the largest and most profitable books of business; (4) the identities and needs of clients and retail agents; (5) pricing; (6) compensation; and (7) virtually every other confidential trade secret possessed by Burns & Wilcox. *Id.* Specifically, as set forth in the FAC, Carson, Sr. had access to the following:

> Agent producer financial information (the "book of business" that specific producers and office managing directors from Burns & Wilcox have), retail agent lists, client lists, expirations, renewals, business plans, costs, pricing and/or financial information, and overall Company financial data; information concerning the manner and details of Burns & Wilcox's operation, organization and management; financial

information and/or documents and nonpublic policies, procedures and other printed or written material generated or used in connection with its business; its business plans and strategies; the identities of Burns & Wilcox's customers and the specific individual customer representatives with whom it works; the details of its relationship with such customers, contractors and customer representatives; the identities of distributors, contractors and vendors utilized in its business; the details of its relationship with such distributors, contractors insurance carriers, insurance agents, brokers, managing general agents; contractors and vendors; the nature of fees and charges made to its customers; insurance programs; pricing to insurers and clients, agents and insureds; customer lists; expiration lists; nonpublic forms, contracts used in its business; the nature and content of computer software used; insurance underwriting guidelines unique to Burns & Wilcox and all other information concerning its concepts, prospects, customers, employees, contractors, earnings, products, services, equipment, systems and/or prospective and executed contracts and other business arrangements.

[RE 12; FAC; ¶ 238-242].

With his vast knowledge of the company, Carson, Sr. held the "keys to the kingdom," including every detail a competitor like Defendant CRC would want to know in conducting a raid of Burns & Wilcox's employees and business. [RE 12, PageID.176-77 ¶146.] Part of this "kingdom" was Burns & Wilcox's "small business" segment.

Burns & Wilcox's "small business" segment is its largest and most profitable area of business. [RE 16-3, PageID.385, ¶8.] Burns & Wilcox has been fostering this critical area of its company for decades, including the 30 years that Carson, Sr. has been with the company. In order to cultivate this important business sector, along with its other successes, Burns & Wilcox devoted substantial resources to the

recruitment, training, mentoring and compensation of its employees so that these employees could effectively keep clients and client referral sources satisfied. [RE 12, FAC, ¶ 113.] Indeed, Burns & Wilcox has a reputation in the industry of investing more money on training its personnel than other companies. [FAC ¶ 113.]

In comparison, although Defendant CRC is a larger company overall, it holds only a small portion of the "small business" market, and in this segment, CRC has been unable on its own to achieve the success that Burns & Wilcox has. [RE 16, PageID.354.] After Carson, Sr. defected from Burns & Wilcox with the company's confidential information and trade secrets, CRC suddenly announced that it intended to dramatically expand its "small business" lines. [RE 12, PageID.180 ¶156.]

How could CRC create in *weeks* what it took Burns & Wilcox *decades* to build? Because Carson, Sr., one of the highest-level officers in Burns & Wilcox, had access to the "secrets of Burns & Wilcox's success" and handed those secrets over to Defendant CRC in exchange for a high-ranking position.

Trade secrets and confidential information were not all that Carson, Sr. promised to steal for CRC. When Carson, Sr. abruptly announced his resignation from Burns & Wilcox, he did so by climbing on top of a table during a gathering of Burns & Wilcox's Arlington, Texas office, and announced dramatically to a group of employees that he was leaving to join CRC. [*Id.* at Pg ID 136-37]. This came after he and another Defendant (Sheila Hailey) spent weeks misrepresenting the state

of affairs at Burns & Wilcox, suggesting jobs were in jeopardy, and soliciting employees. [RE 12, FAC, ¶¶ 147-151; 168(g); 168(h); 207-209].

The disparagement and solicitation worked.  On the same day Carson, Sr. resigned to join CRC, two other high-ranking employees from the same office – Defendants Donald Carson, Jr. and Sheila Hailey – also abruptly resigned to join CRC.  (*Id.* at Pg ID 137).  The record reveals that at least 46 employees left Burns & Wilcox and went to CRC, taking retail relationships and information belonging to Burns & Wilcox. [R. 16; PageID.371; R. 12; Pg ID.182-84].[1]

To summarize, Burns & Wilcox has pleaded that Carson, Sr. willingly and knowingly: [1] stole information and trade secrets from Burns & Wilcox for his new employer;[2] [2] otherwise competed with Burns & Wilcox; and [3] solicited away employees and [4] clients, all in breach of his fiduciary duties.

---

[1] In addition to the facts set forth in the FAC, as of today's date a total of **59** Burns & Wilcox employees have resigned (without notice) to immediately began working at the competing CRC office located in the location as their Burns & Wilcox office: 15 employees from Burns & Wilcox's Arlington (Dallas/Ft. Worth) office; 13 from its Houston office; 5 from its various North Carolina offices; 5 from its Denver office; 7 from its Tampa office; 4 from its New Orleans office; 1 from its Atlanta office; 3 from its Little Rock office; and 6 from its Philadelphia office (virtually shuttering this Burns & Wilcox location).

[2] After the FAC was filed, Carson, Sr.'s actions were preliminarily confirmed by the ongoing forensic audit by Tyger Forensics, Inc. which "revealed the theft of significant Burns & Wilcox information and a failed effort on Mr. Carson's part to conceal his activities." [RE 25-6, PageID.763]. Specifically, "over a period of three days, spanning 10/16/2019 through 10/18/2019, Donald Carson, Sr. accessed and then deleted in a failed attempt to hide his activities, multiple [Burns & Wilcox] files containing proprietary and highly sensitive [Burns & Wilcox] information, after

Despite Plaintiff's well-pled First Amended Complaint, and the already mounting record evidence, Defendant Carson, Sr. has brought this Partial Motion to Dismiss, seeking dismissal of Plaintiff's claim for Breach of Fiduciary Duty. As discussed herein, Plaintiff has sufficiently pled its claim, and Carson, Sr.'s motion should be denied.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) sets forth "modest notice-pleading requirements" that are to be liberally construed. *CNH America v. UAW*, 645 F.3d 785, 794 (6th Cir. 2011); *see also Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004) (applying the "liberal pleading standards of Federal Rule of Civil Procedure 8").

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the [opponent] fair notice of what the * * *claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

copying the files to his USB Drive as well as uploading his [Burns & Wilcox] Microsoft Outlook contacts to his personal email accounts." [*Id.*] Carson, Sr. accomplished this theft by logging into his computer as an "administrator" rather than with his company-assigned user account name. Carson, Sr. thereafter unsuccessfully tried to cover up his activities by moving a folder to his laptop trash bin and then emptying the trash bin. [RE 25-6, PageID.762-766] Plaintiff's counsel has requested that defense counsel provide their own expert's report, per this Court's suggestion at page 49 of the preliminary injunction hearing transcript, but defense counsel has failed to provide it. *See* Exhibit 1.

A complaint need not contain "detailed factual allegations" in order to state a claim upon which relief can be granted within the meaning of Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Rather, the complaint must merely allege a "plausible" claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining facial plausibility, a complaint is to be construed "in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997). As long as the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged, a plaintiff's claims must survive a motion to dismiss." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010).

In evaluating a motion to dismiss, the Court may consider "the complaint and any exhibits attached thereto, public records, ***items appearing in the record of the case*** and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein."[3] *Luis v. Yang,* 833 F.3d 619, 626 (6th Cir. 2016) (Emphasis added).[4]

As such, in evaluating Defendant Carson, Sr.'s 12(b)(6) Motion to Dismiss, the Court may consider: (1) Plaintiff's First Amended Complaint and any exhibits attached thereto; (2) public records; (3) Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction and Other Relief ("Plaintiff's Emergency Motion for TRO") (DKT. 16) including exhibits; (4) Defendant CRC Insurance Services, Inc's Response and Brief in Opposition to Plaintiff's Emergency Motion for TRO (DKT. 23); and (4) Plaintiff's Reply in support of Plaintiff's Emergency Motion for TRO (DKT. 25) including exhibits.

Count I of the First Amended Complaint alleging a breach of fiduciary duty by Carson, Sr. states a claim for relief that "is plausible on its face," *Iqbal,* 556 U.S. at 678, and in fact Plaintiff surpasses this standard. Burns & Wilcox has alleged

---

[3] All emphasis added unless otherwise stated.

[4] See also § 1357 Motions to Dismiss—Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) (In deciding motions to dismiss, courts may consider items appearing in the record of the case); *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997); *Schattilly v. Daugharty,* 2015 WL 5215956, at *4 (E.D. Mich. Aug. 31, 2015), *aff'd,* 656 Fed. Appx. 123 (6th Cir. 2016) (A court can consider "documents that form part of the case's record.").

"enough facts to raise a reasonable expectation that discovery will reveal evidence of the requisite elements" of Carson, Sr.'s breach of fiduciary duty. *Id*.

## LEGAL ARGUMENT

Carson, Sr.'s Motion to Dismiss seeks to dismiss Burns & Wilcox's Count I, Breach of Fiduciary Duty. Under Michigan law, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages. [5] *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016).

Carson, Sr.'s Motion fails to address the first or third factor of this analysis. He therefore concedes that Burns & Wilcox has sufficiently pled that Carson, Sr. owes a fiduciary duty to Burns & Wilcox, and that Burns & Wilcox has suffered damages as a result of his breaches. Burns & Wilcox will therefore focus on the second element – pleading the **breach** of fiduciary duty – but will briefly discuss the remaining two factors.

### A. Carson, Sr. Owes Burns & Wilcox a Fiduciary Duty.

"Under Michigan law, a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 765–66 (6th Cir.

---

[5] Carson, Sr. assumes, for purposes of his motion, that Michigan law applies to Count I.  (R. 55: Motion to Dismiss, at Pg ID 978).

2012) (quoting *Teadt v. Lutheran Church Mo. Synod*, 237 Mich. App. 567, 580–81 (1999)).

High-level employees of a corporation, including officers, are strict fiduciaries of the companies which they serve. *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 766 (6th Cir. 2012) ("It is beyond dispute that in Michigan, directors and officers of corporations are fiduciaries who owe a strict duty of good faith to the corporation which they serve.") *citing Prod. Finishing Corp. v. Shields,* 158 Mich. App. 479 (1987); *Michigan Crown Fender Co. v. Welch,* 211 Mich. 148, 159 (1920) ("Where the agent is also an officer of a corporation for which he is acting, there is added reason for rigidly adhering to the rule.").

These fiduciary duties are grounded in Michigan statute and common law and exist separate and apart from – and regardless of – any contract. *Gerald L. Pollack & Associates, Inc. v. Pollack,* 2015 WL 339715, at *22 (Mich. App. Jan. 27, 2015).

In this case, as alleged in Count I, Carson, Sr. was an Executive Vice President, Managing Director, of Burns & Wilcox, with full access to confidential information and trade secrets. As such, he was a fiduciary of the highest order, with strict fiduciary duties. *See Electronic Planroom Inc. v. McGraw-Hill Companies, Inc.,* 135 F.Supp.2d 805 (E.D. Mich. 2001) (vice-president of sales was fiduciary); *3 Fletcher Cyclopedia of the Law of Corporations* 846 p. 1 ("An officer's fiduciary duties appear coextensive with those of directors."); *In re Sullivan,* 305 B.R. 809,

819 (Bankr. W.D. Mich. 2004) ("Michigan common law imposes a fiduciary duty of loyalty on all employees of a corporation that forbids them from taking action contrary to the interests of their employers."); *Chem Trend v. McCarthy,* 780 F. Supp. 458, 461 (E.D.Mich.1991) (defendant was fiduciary due to agency relationship).

## B. Carson, Sr. Breached His Fiduciary Duties to Burns & Wilcox.

As a fiduciary and agent, ***prior to his resignation*** from Burns & Wilcox, Carson, Sr. was "subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." *Raymond James & Associates, Inc. v. Leonard & Company,* 411 F.Supp.2d 689, 699 (E.D.Mich.2006). This rule "forbids the doing of acts in competition with the principal and the acquisition of interests adverse to him." *Id.* As it applies to trade secrets, confidential information, and using such information to harm Burns & Wilcox, this duty continued on ***even following*** his departure from Burns & Wilcox.

As discussed herein, these duties therefore prohibited Carson, Sr. from stealing confidential information, soliciting employees, soliciting clients, and assisting a competitor in conducting a corporate raid on Burns & Wilcox.

### 1. *Trade Secrets and Confidential Information.*

"Although one has the right to change jobs and use his learned skills, ***he does not have the right to disclose trade secrets***." *Hayes-Albion v. Kuberski*, 364 N.W.2d

609, 614 (Mich. 1984). "It is a well-settled doctrine that, where one obtains a trade secret of another, either under contract not to divulge the same, *or because of a relation of confidence*, or through his *employment*, he will not be permitted, afterwards, to make use of such secret for his own benefit, or to disclose it to others, without the consent of the original possessor of the secret." *Glucol Mfg. Co. v. Schulist*, 214 N.W. 152, 153 (Mich. 1927).

"Michigan courts have recognized that confidential information, including information regarding customers, constitutes property of the employer and may be protected [by either contract or common law duty]." *Laethem Equip. Co. v. Deere & Co.*, 2007 WL 2433980, at *18 (E.D. Mich. Aug. 14, 2007).

As such, it is true that a fiduciary such as Carson, Sr. may decide to take other employment that competes with Burns & Wilcox using his *general* skills and knowledge. *Creelgroup v. Brieden,* 2010 WL 3023815, at *3 (E.D. Mich. 2010). However, Carson, Sr. may not use Burns & Wilcox's *trade secrets* or valuable *confidential* information entrusted to him by Burns & Wilcox to compete with or otherwise harm Burns & Wilcox. *Id.* As the Michigan Supreme Court explained in *Follmer, Rudzewicz & Co. v. Kosco,* 420 Mich. 394 (1984):

> While an employee is entitled to the unrestricted use of general information acquired during the course of his employment or information generally known in the trade or readily ascertainable, confidential information, including information regarding customers, constitutes property of the employer and may be protected by contract. <u>Even in the absence of a contract, an employee has a duty not to use or</u>

> _disclose confidential information acquired in the course of his_
> _employment._ Such information is often treated as a "trade secret."

_Id._ at 362 (emphasis added).

Neither an employee, nor a fiduciary, can lawfully "take advantage of the knowledge acquired of his principal's business to make profit for himself at his principal's expense." _Stephenson v. Golden,_ 279 Mich. 710, 736 (1937). _See Hayes-Albion v. Kuberski_, 421 Mich. 170, 184 (1984) ("Specific information regarding resolution of the problems of particular customers is a trade secret."); _Giasson Aerospace Science, Inc. v. RCO Engineering, Inc.,_ 680 F. Supp. 2d 830, 843 (E.D. Mich. 2010) (Cleland, J.) ("Knowledge of vendors, vendor capabilities, and pricing" can be a trade secret under Michigan law, as well as detailed customer information.); _Electronic Planroom v. McGraw-Hill Cos.,_ 135 F. Supp. 2d 805, 819-20 (E.D. Mich. 2001) (Rosen, J.).

Accordingly, Carson, Sr. cannot simply leave the employ of Burns & Wilcox and do whatever he wants with the valuable, confidential information he learned at Burns & Wilcox claiming that he no longer has a fiduciary duty to Burns & Wilcox not to use its information. Carson, Sr.'s fiduciary duties relating to trade secrets and confidential information continue long after his employment with Burns & Wilcox terminates. _Chem-Trend, Inc. v. McCarthy,_ 780 F. Supp. 458 (E.D. Mich. 1991). _See also Kelly Services, Inc. v. Noretto,_ 495 F. Supp. 2d 645 (E.D. Mich. 2007) (Court granted preliminary injunction barring former employee from working for

13

competitor, holding that, "it is entirely unreasonable to expect [defendant] to work for a direct competitor in a position similar to that which he held with [plaintiff], and forego the use of the intimate knowledge of [plaintiff's] business operations."); *Allis-Chalmers Mfg. Co. v. Contl. Aviation & Engr. Corp.*, 255 F. Supp. 645, 653 (E.D. Mich. 1966) (Trade secret protection is a "protection against breach of faith and reprehensible means of learning another's secret."); *Electronic Planroom Inc. v. McGraw-Hill Companies, Inc.,* 135 F.Supp.2d 805 (E.D. Mich. 2001) (Rosen, J.) (taking of trade secrets can be breach of fiduciary duty).

### 2. *Client Solicitation, Employee Solicitation, and Mass Raids.*

Solicitation of employees and clients and engaging or assisting in mass raids of employees is also a breach of an officer's fiduciary duties. Indeed in *Beard Research, Inc. v. Kates*, 8 A.3d 573, 602 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010), the Delaware Court of Chancery explicitly recognized that an officer breaches his fiduciary duty in the following ways: "A **breach of fiduciary duty** occurs when a fiduciary commits an unfair, fraudulent, or wrongful act, including **misappropriation of trade secrets**, misuse of **confidential information**, **solicitation** of employer's customers before cessation of

14

employment, **conspiracy to bring about mass resignation** of an employer's key employees, or usurpation of the employer's business opportunity."[6]

Additionally, in *Shwayder Chem. Metallurgy Corp. v. Baum*, 206 N.W.2d 484 (Mich. App. 1973), the Court held that, although the specific process plaintiff sought to protect did not constitute a trade secret, defendant stood in a fiduciary and confidential relationship to his former employer, and he breached the duties and obligations arising from that relationship by using confidential information, soliciting employees, and competing, and was therefore liable to his former employer for damages. *Id.*

Further, in *Chem-Trend, Inc. v. McCarthy,* 780 F. Supp. 458 (E.D. Mich. 1991), Judge Newblatt enjoined a former employee from soliciting plaintiff's customers based upon "the **continuing** fiduciary duty that McCarthy owes to his former employer; the duty 'not to take advantage of a still subsisting confidential relation created during the prior agency relation.'" *Id.* at 463.

Lastly, in *B.G. Balmer & Co., Inc. v. Frank Crystal & Company, Inc.* 148 A.3d. 454 (Penn. Super. 2016), the appellate court affirmed an award of *$7 million* to the plaintiff insurance brokerage firm against former executives and officers for breach of contract, breach of fiduciary duties, and tortious interference, where

---

[6] Michigan courts may look to Delaware on matters of corporate law. *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 674 (6th Cir. 2004).

defendants moved several of the firm's employees and clients over to the defendants' new employer. *Balmer*, is on point.  There, the defendants, while yet employed with their former employer, met with the new employer (a larger insurance brokerage firm) to discuss opening an office in Philadelphia (a city where the new employer did not then maintain an office). *Id.* at 466. Additionally, one of the defendants disclosed to the new employer confidential information about the plaintiff regarding the plaintiff's clients and customers who could potentially be moved to the new employer, along with the identities of employees that the defendant wished to join him at the new employer. *Id.* Certain of the defendants also stole confidential information when they left plaintiff's employ. *Id.*

### 3. *Plaintiff Pled Breaches of Fiduciary Duties.*

Consistent with the above cases, the First Amended Complaint alleges that Carson, Sr. violated the fiduciary duties he owed to Burns & Wilcox, causing injury. Specifically, and among other things, Burns & Wilcox has alleged that Carson, Sr., both ***while employed*** at Burns & Wilcox, and ***after leaving*** Burns & Wilcox's employment:

(1)   **stole,** (by – among other things – secret and impermissible downloading and deletion), confidential information, secret proprietary information, and trade secrets belonging to Burns & Wilcox for the purpose of providing that

information to his new employer (CRC) in order to benefit himself and his new employer and to harm Burns & Wilcox [RE 25-6, PageID.762-766];

  (2) <u>**utilized**</u> that confidential information, secret proprietary information, and trade secrets to:

    a. ***undermine*** Burns & Wilcox's employees [RE 12, FAC, ¶¶ 147-151; 168(g); 168(h); 207-209];

    b. ***sow seeds of dissension*** within the company to weaken Burns & Wilcox as a competitor of CRC [RE 12, FAC, ¶¶ 147-151; 168(g); 168(h); 207-209];

    c. ***disparage*** Burns & Wilcox to retail agents and others to encourage those agents to contact CRC instead of Burns & Wilcox [RE 12, FAC, ¶ 168(i); 207-209];

    d. ***gain knowledge*** of Burns & Wilcox's key employees (and those employee's relationships with retail agents) to know which employees to ***target for solicitation*** for CRC including during a ***mass corporate raid*** on Burns & Wilcox [RE 12, FAC, ¶¶ 144-146; 152-154; 168(d); 168(e); 168(f);]

    e. ***obtain*** information about Burns & Wilcox's clients and retail agents to know which to target for solicitation [RE 12, FAC, ¶¶ 168(i); 168(j)];

<div align="center">17</div>

f. *ensure* that Defendant Carson, Sr. was an attractive and valuable asset for CRC to hire [RE 12, FAC, ¶¶ 145-147; 156; 168(m)];

(3) <u>**solicited**</u> employees of Burns & Wilcox to encourage them to leave Burns & Wilcox, in breach of their contractual obligations, and join CRC, including during a mass corporate raid on Burns & Wilcox [RE 12, FAC, ¶¶ 168(k); 168(l)];

(4) <u>**contacted and/or solicited**</u>, either directly or indirectly, retail agents with whom Burns & Wilcox has relationships to encourage such retail agents to place their business with CRC [RE 12, FAC, ¶¶ 168(j)]; and

(5) has <u>**provided and is providing**</u> confidential information, secret proprietary information, and trade secrets to CRC – all in breach of his fiduciary duties to Burns & Wilcox. [RE 12, FAC, ¶¶ 7].[7]

The above alleged facts, taken as true, demonstrate a breach of fiduciary duty by Carson, Sr., including the stealing and misappropriation of trade secrets and confidential information, the solicitation of clients and employees, and a coordinated, and ongoing, mass corporate raid of Burns & Wilcox. *See also Shwayder Chem. Metallurgy Corp.*, 206 N.W.2d at 487 (former officer breached fiduciary duties by stealing confidential information, using such information to

---

[7] Defendant Carson, Sr. maintains in his motion that Plaintiff *only* alleges that Carson, Sr. "prepared to compete" while still employed by Plaintiff, and then competed with Plaintiff "after he left" Plaintiff's employ. [RE 55, PageID.977.] On the contrary, Burns & Wilcox has pleaded that he did significantly more.

detriment of former employer, and soliciting clients and employees); *Beard Research, Inc*, 8 A.3d at 603 (former officer breached fiduciary duties by stealing confidential information, inducing employees to resign from employer, and planning to steal clients from employer); *Am. Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 897, 914 (2d Cir. 1998) (such a continuing duty may, in appropriate circumstances, include the specific duty not to divert business in which a former employer has the requisite "tangible expectancy," and the duty not to exploit to the former employer's detriment ***specific information obtained during the employment*** that was either technically confidential or that was available to the fiduciary only because of the employment.).[8]

In considering Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, this Court acknowledged the following:

---

[8] *Tatintsian v. Vorotyntsev*, 12019 WL 1746004, at *7 (S.D.N.Y. Apr. 18, 2019) (Denying motion to dismiss under both New York and Delaware law: "Tatintsian argues that ShopLink's claims involving Khmaladze should be dismissed because any fiduciary relationship that he had with ShopLink ended when he stopped working for ShopLink. However, ***a fiduciary duty may continue after the termination of an employment relationship***. And here, some of the alleged improper conduct by Khmaladze took place on the same day that he submitted his letter of resignation. On these facts, the Court cannot conclude as a matter of law that Khmaladze did not have ***continuing fiduciary duties*** at the time of his alleged breach."); *Today Homes, Inc. v. Williams*, 272 Va. 462, 474 (2006) ("It is true that [r]esignation or termination ***does not automatically free a director or employee from his or her fiduciary obligations***. Liability post-termination continues only for those "transactions completed after termination of the officer's association with the corporation, but which began during the existence of the relationship or that were ***founded on information gained during the relationship***.").

> Both sides have lots of arguments, ***all of which I think should be addressed at a trial in this matter, and through discovery and so forth***. I have to first look at whether or not there's not a likelihood of success, but I think the standard is a little bit higher than that, and the standard I think is substantial or strong likelihood of success, and I can't make that decision right now. I've listened to both sides. ***I think both sides have a position***, and so I can't say that there's a strong or substantial likelihood of success or not success.

[Court, RE 46, PageID.945 (Emphasis added)].  The First Amended Complaint and the record demonstrate that "plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). For these reasons, Plaintiff's Count I survives.  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010).

### C. Plaintiff Has Pled that Carson, Sr.'s Actions Have Caused Damages.

As stated, Carson, Sr. does not challenge the sufficiency of Burns & Wilcox's pleading of damages flowing from his breach of fiduciary duty.  This is because Burns & Wilcox's First Amended Complaint plainly alleged damages from this activity (e.g., that as a result of Carson, Sr.'s actions, numerous employees left Burns & Wilcox for CRC. [RE 12, FAC, ¶ 6]).  In addition, the record after the First Amended Complaint reveals that at least 46 employees left Burns & Wilcox and went to CRC, taking retail relationships and information belonging to Plaintiff. [R. 16; PageID.371; R. 12; Pg ID.182-84]; *B.G. Balmer & Co., Inc. v. Frank Crystal & Co., Inc.* 148 A.3d. 454 (Penn. Super. 2016) (corporate raiding resulted in damages

amounting to more than $7 million). (And, as stated in footnote 1, this number continues to grow).

The FAC and record also reveal that Carson, Sr.'s breach of fiduciary duty caused additional damage for Burns & Wilcox. He accessed and stole proprietary and highly sensitive information belonging to Burns & Wilcox, and then attempted to cover his tracks through deletion. [R. 25; PageID.742].[9]

### D. **Carson, Sr.'s Motion for a More Definite Statement Should be Denied.**

Carson, Sr. requests, in the alternative, a more "definitive" statement. Although Carson, Sr. does not cite the federal rule under which he makes his request, he apparently does so under Federal Rule of Civil Procedure 12(e):

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed *but which is so vague or ambiguous that the party cannot reasonably prepare a response*. The motion must be made before filing a responsive pleading and *must point out the defects complained of and the details desired*.

Fed. R. Civ. P. 12(e). (Emphasis added).

Such requests are generally disfavored. *See Fed. Ins. Co. v. Webne*, 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007) ("A motion for a more definite statement should

---

[9] Plaintiff's expert is still investigating the extent of the theft and damage caused by Carson, Sr.'s exploits on Burns & Wilcox's computers leading up to his departure. Theft of confidential information and trade secrets is irreparable harm. *See Stryker Corp v. Bruty*, 2013 WL 1962391, at *7 (W.D. Mich. May 10, 2013); *Henkel Corp. v. Cox*, 386 F. Supp. 2d 898, 904 (E.D. Mich. 2005); *Johnson Controls v. A.P.T. Critical Sys., Inc.,* 323 F. Supp.2d 525, 533 (S.D.N.Y. 2004).

not be used as a substitute for discovery."). The "proportion of Rule 12(e) requests granted by the district courts appears" to remain quite low. §1377 Motion for a More Definite Statement—Current Practice Under Rule 12(e), 5C Fed. Prac. & Proc. Civ. § 1377 (3d ed.). Indeed, such a motion is only proper "when the pleading to which it is addressed *is so vague* that it cannot be responded to[.]" *Id.*

Carson, Sr. has not met his burden to show that Burns & Wilcox's First Amended Complaint "is so vague or so ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

Carson, Sr. instead insists – with zero legal authority – that Plaintiff *must plead* precise dates of each wrongful act committed by Carson, Sr., in addition to each confidential document stolen, each person Carson, Sr. provided the stolen document to, and the circumstance in which each document was provided. [RE. 55, PageID.980]. Although Plaintiff's First Amended Complaint and the record do provide examples of many of these, Carson, Sr. fails to cite *any legal authority* for his proposition that Plaintiff must satisfy this heightened pleading standard. In fact, there is significant legal authority to the contrary especially where, as here, Defendants have opposed expedited discovery, taking the position that they will not cooperate in discovery even after the upcoming February 7, 2020 Rule 26 discovery conference, as they wish to wait until all initial motions are ruled upon. *See* **Exhibit 2.** *See Leucadia, Inc. v. Applied Extrusion Techs., Inc*., 755 F.Supp. 635, 636 (D.

Del. 1991) ("Trade secrets need not be disclosed in detail in the complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets.").[10]

Carson, Sr.'s arguments fail, and his motion for a more definite statement should be denied. *Communities for Eq. v. Michigan High Sch. Athletic Ass'n*, 26 F. Supp. 2d 1001, 1009 (W.D. Mich. 1998) ("Defendants' Motion for a More Definite Statement will be denied. These motions are disfavored, and their purpose is better served by discovery.")

## A FINAL NOTE

Solely in the event that this Court disagrees with Burns & Wilcox's position on the sufficiency of the allegations in its First Amended Complaint or its ability to rely on the record to date, Burns & Wilcox would respectfully request leave to file a Second Amended Complaint setting forth more detail of the activities of Carson, Sr. and Defendants.[11] ***However, Burns & Wilcox's damages from this corporate raid***

---

[10] *See also T–Mobile USA, Inc. v. Huawei Device USA, Inc*., 115 F.Supp.3d 1184, 1193 (W.D. Wash. 2015) "Because it is the defendant who knows what it misappropriated, a plaintiff should not be compelled to divulge with specificity all of its possible trade secrets (especially not to a defendant who it believes has already misappropriated at least one of them) in order to proceed to discovery." *Scan Top Enter. Co., Ltd. v. Winplus N. Am., Inc.*, 2015 WL 4945240, at *3 (N.D. Ill. Aug. 19, 2015). ("Plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms…Courts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases.)

[11] Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires. The rule is to be liberally construed in favor of allowing

*are mounting by the day—the unlawful conspiracy has now resulted in 59 employees, including, recently, the second highest producer in the entire company, being solicited away to CRC, and Burns & Wilcox seeks to avoid delay and begin discovery so it can secure justice.*

Defendants have advised that they will not allow discovery, even after the Rule 26 conference scheduled on February 7, 2020. *See* **Exhibit 2.** They have also failed to honor the Court's December 3, 2019 directive to provide their expert report to Plaintiff. **Exhibit 1.**  Even though this Court held on December 3, 2019 that at that time, the damage sustained by Burns & Wilcox was compensable by money and not irreparable, the number of defections continues unabated and Burns & Wilcox believes that its injuries (including lost business) has indeed become irreparable.

## CONCLUSION

Construing the allegations contained in Count I of the First Amended Complaint "in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff,"  Burns & Wilcox has alleged a facially plausible claim of breach of fiduciary duty under Michigan law against Defendant Donald Carson, Sr. *See Treesh,* 487 F.3d at 476.

---

amendments, and reinforces the principle that cases "should be tried on their merits." *See, e.g., Moore v. Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

Accordingly, Carson, Sr.'s motion to dismiss should be denied so that discovery can immediately be commenced to establish all the evidence to support this claim.

WHEREFORE, Plaintiff Burns & Wilcox requests that Defendant Donald Carson, Sr.'s Partial Motion to Dismiss be denied.

<div style="margin-left: 50%;">

Respectfully submitted,

**MANTESE HONIGMAN, P.C.**
*Attorneys for Plaintiff*

By: */s/Gerard V. Mantese*
Gerard V. Mantese (P34424)
gmantese@manteselaw.com
Douglas L. Toering (P34424)
dtoering@manteselaw.com
Kenneth R. Chadwell (P39121)
kchadwell@manteselaw.com
Fatima M. Bolyea (P80082)
fbolyea@manteselaw.com
1361 E. Big Beaver
Troy, MI 48083
(248) 457-9200

</div>

Dated: January 30, 2019

25

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 30, 2019 I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send electronic notices of same to all counsel of record.

<div align="right">

*/s/Gerard V. Mantese*
Gerard V. Mantese
Mantese Honigman, P.C.
1361 E. Big Beaver Rd.
Troy, Michigan 48083
(248) 457-9200
gmantese@manteselaw.com

</div>